## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY VELEZ, SONIA KLINGER, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, STEPHANIE CATES, WENDY PINSON and ROBERTA VONLINTEL, **Individually and on Behalf of Others Similarly Situated,** Plaintiffs, v. NOVARTIS CORPORATION and NOVARTIS PHARMACEUTICAL CORPORATION, Defendants. | **ANSWER OF NOVARTIS CORPORATION TO AMENDED CLASS ACTION COMPLAINT** **04 Civ. 09194 (GEL)** |

## ANSWER OF NOVARTIS CORPORATION
## TO AMENDED CLASS ACTION COMPLAINT

Defendant Novartis Corporation ("Novartis Corp.") answers Plaintiffs' Amended Class

Action Complaint as follows:

## I.    NATURE OF THIS ACTION

## ALLEGATION NO. 1:

Twelve women who work or have worked for Novartis in twelve states and Washington, D.C. bring this action against Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation (jointly "Novartis" or "Defendants") to redress gender discrimination in employment. Specifically, Amy Velez, Sonia Klinger, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Stephanie Cates, Wendy Pinson and Roberta VonLintel, the Class Representatives ("Class Representatives"), all of whom are present or former employees of Novartis, bring this amended class action against Novartis on behalf of themselves and all other female employees of Novartis

1

who are similarly situated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII"). The Class Representatives have worked and/or continue to work for Novartis throughout the United States in twelve states: Alabama, Arkansas, California, Connecticut, Illinois, Kansas, Maryland, Missouri, New York, Oregon, Tennessee, and Virginia, and in Washington, D.C.

**ANSWER:**

Novartis Corp. admits that the twelve plaintiffs have filed a lawsuit under Title VII but denies that it employed any of the plaintiffs and thus states that it lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph. Further answering, Novartis Corp. assumes that, unless otherwise clarified, references to "Novartis" throughout the Complaint refer to Novartis Pharmaceuticals Corporation ("NPC").

**ALLEGATION NO. 2:**

The Class Representatives seek to represent female employees of Novartis who have been subjected to one or more aspects of the systemic gender discrimination described in this Complaint, including, but not limited to: discriminatory policies, practices and/or procedures in selection, promotion and advancement; disparate pay; differential treatment; and gender hostility in the workplace. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

**ANSWER:**

Novartis Corp. admits the twelve plaintiffs seek to represent other female employees of NPC, but deny the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 3:**

The Class Representatives are seeking, on behalf of themselves and the class they seek to represent, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Novartis' pervasive and discriminatory employment policies, practices and/or procedures.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. admits that the twelve plaintiffs are seeking the relief set forth in this Paragraph, but deny they are entitled to any such relief. Novartis Corp. further denies that any pervasive and discriminatory employment policies, practices or procedures exist.

## II. JURISDICTION AND VENUE

**ALLEGATION NO. 4:**

This Court has subject matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII") to redress and enjoin employment practices of Novartis in violation of this statute.

**ANSWER:**

For the reasons set forth in its Motion for Summary Judgment submitted simultaneously herewith, Novartis Corp. denies the allegations contained in this Paragraph as to it.

**ALLEGATION NO. 5:**

Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal jurisdiction, and thus reside in New York.

**ANSWER:**

For the reasons set forth in the Motion to Transfer Venue submitted simultaneously with this Answer, Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 6:**

The Southern District of New York is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in this case. Novartis Corporation is headquartered in New York, New York and incorporated in the State of New York, with Registered Agents in California and New York. Additionally, Novartis Pharmaceuticals Corporation has both a physical presence and a Registered Agent in New York. Furthermore, the Class Representatives and potential class members reside in all areas of the United States in which Novartis conducts business.

CHICAGO/#1337492.5

**ANSWER:**

For the reasons set forth in the Motion to Transfer Venue submitted simultaneously with this Answer, Novartis Corp. denies that the Southern District of New York is the most logical forum in which to litigate. Further answering, Novartis Corp. denies that it is headquartered in New York, New York and lacks knowledge as to the residences of potential class members.

## III.    PROCEDURAL HISTORY

**ALLEGATION NO. 7:**

Class Representative Amy Velez timely filed a Charge of Discrimination with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") on July 15, 2003. Ms. Velez received her Notice of Right to Sue on August 24, 2004, and on November 19, 2004, timely filed suit within ninety (90) days of receipt of her Notice of Right to Sue. Class Representatives Stephanie Cates, Lori Horton, Sonia Klinger, Karen Liggins, Wendy Pinson, Minel Hider Tobertga, Holly Waters, Roberta VonLintel, Jennifer Waxman-Recht, Michelle Williams, and Penni Zelinkoff, have filed charges of gender discrimination with the EEOC and are in the process of perfecting their Notices of Rights to Sue.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 8:**

The Class Representatives are relying on their own EEO charges and/or those of other Class Representatives.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## IV    PARTIES

### A.    Plaintiffs

**ALLEGATION NO. 9:**

**Plaintiff Amy Velez** is a female citizen of the United States and a resident of Laurel in the State of Maryland. Ms. Velez was employed by Novartis from approximately January 1997

4

through approximately April 2004 in Novartis' Washington, D.C. sales district. Throughout that time, Ms. Velez worked as a sales representative, sales consultant, and senior sales consultant, a position she held until her constructive discharge from Novartis in April 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 10:**

**Plaintiff Sonia Klinger** is a female citizen of the United States and a resident of St. Louis in the State of Missouri. Ms. Klinger has been continuously employed by Novartis since approximately June 2001 as an area sales manager in the Senior Care Department in Novartis' St. Louis/Kansas City district.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 11:**

**Plaintiff Penni Zelinkoff** is a female citizen of the United States and a resident of Arvada in the State of Colorado. Ms. Zelinkoff was employed by Novartis from approximately June 2001 to August 2004 as a sales consultant in Novartis' Portland, Oregon district, and she held this position until her constructive discharge from Novartis in or about August 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 12:**

**Plaintiff Minel Hider Tobertga** is a female citizen of the United States and a resident of Elk Grove in the State of California. Ms. Hider Tobertga was employed by Novartis from approximately April 2001 to September 2004 as a sales consultant in Novartis' Sacramento, California district, and she held this position until her constructive discharge from Novartis in or about September 2004.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 13:**

**Plaintiff Michelle Williams** is a female citizen of the United States and a resident of Plainfield in the State of Illinois. Ms. Williams has been continuously employed by Novartis since approximately April 2002. Ms. Williams was hired by Novartis as a sales representative in Novartis' Chicago South district. In approximately August 2002, she became a sales consultant, a position she currently holds.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 14:**

**Plaintiff Jennifer Waxman-Recht** is a female citizen of the United States and a resident of Hohokus in the State of New Jersey. Ms. Waxman-Recht has been continuously employed by Novartis since approximately June 1997 as a sales representative in Novartis' Northeast New York sales territory.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 15:**

**Plaintiff Karen Liggins** is a female citizen of the United States and a resident of Florissant in the State of Missouri. Ms. Liggins has worked in Novartis' Central sales district as a sales specialist and a sales representative since approximately September 2000.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 16:**

**Plaintiff Lori Horton** is a female citizen of the United States and a resident of Richmond in the State of Virginia. Ms. Horton has been continuously employed by Novartis since approximately March 2002 as a sales representative in Novartis' Richmond sales district.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 17:**

**Plaintiff Holly Waters** is a female citizen of the United States and a resident of Riva in the State of Maryland. Ms. Waters was employed by Novartis from approximately April 2002 through approximately early 2003 as a sales representative. From approximately early 2003 through approximately November 2004, Ms. Waters was employed by Novartis as a sales consultant in Novartis' Maryland/Washington, D.C. sales territory.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 18:**

**Plaintiff Stephanie Cates** is a female citizen of the United States and a resident of Chicago in the State of Illinois. Ms. Cates was employed by Novartis from approximately April 2002 through approximately August 2004 as a sales representative in Novartis' Elgin, Illinois and Chicago South sales territories.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 19:**

**Plaintiff Wendy Pinson** is a female citizen of the United States and a resident of Dothan in the State of Alabama. Ms. Pinson has been continuously employed by Novartis in Novartis' Montgomery, Alabama district, since approximately November 1999. Ms. Pinson works for Novartis as a sales representative.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 20:**

**Plaintiff Roberta VonLintel** is a female citizen of the United States and a resident of Hays in the State of Kansas. Ms. VonLintel was employed by Novartis from approximately late 1998 through approximately July 2004 as a sales representative in Novartis' Kansas City West sales region.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

B.    **Defendants**

**ALLEGATION NO. 21:**

**Novartis Corporation** is the U.S. Headquarters for Novartis, AG, a Swiss company created in 1996 from the merger of the Swiss companies Ciba-Geigy and Sandoz. Novartis is a world leader in the research and development of health care products. Novartis' core businesses are in pharmaceuticals, consumer health, generics, eye-care, and animal health. Novartis Corporation is incorporated in the State of New York and physically located at 608 Fifth Avenue, New York, New York, 10020. Novartis Corporation has Registered Agents in New York and California.

**ANSWER:**

Novartis Corp. denies the allegations in this Paragraph, except it admits as follows: (i) Novartis AG is a Swiss company which was created in 1996 through the merger of Ciba-Geigy and Sandoz; (ii) Novartis AG is a world leader in the research, development, manufacturing and marketing of products to protect and improve health and well-being; (iii) Novartis Corp. has affiliates which do business in pharmaceuticals, consumer health, generics, eye-care and animal health; (iv) Novartis Corp. is incorporated in New York; (v) Novartis Corp. has an office at 608

CHICAGO/#1337492.5

Fifth Avenue, New York, New York 10020; and (vi) Novartis .Corp. has registered agents for service of process in New York and California.

## ALLEGATION NO. 22:

**Novartis Pharmaceuticals Corporation** is a division of Novartis Corporation specializing in the discovery, development, manufacture and marketing of prescription medicine. Novartis Pharmaceuticals Corporation is incorporated in Delaware and has office buildings in New Jersey and New York. Novartis Pharmaceuticals Corporation has Registered Agents in 32 states, including New York and California. During their employment with Novartis, the Class Representatives' paychecks were issued by Novartis Pharmaceuticals Corporation from East Hanover, New Jersey.

## ANSWER:

Novartis Corp. denies the first sentence except it admits that NPC researches, develops, manufactures, markets and sells pharmaceutical products. Novartis Corp. admits that NPC is incorporated in Delaware and has buildings in New York and New Jersey. Novartis Corp. lacks knowledge and information sufficient to form a belief as to where paychecks to Class Representatives are issued or where or how many Registered Agents NPC has.

## V.    CLASS ACTION ALLEGATIONS

### A.    Class Definition

## ALLEGATION NO. 23:

The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former Novartis employees. Each of the Class Representatives is a member of the class.

## ANSWER:

Novartis Corp. admits that the twelve plaintiffs seek to maintain claims on their own behalf and on behalf of a class of current and former NPC employees. Novartis Corp. denies the remaining allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 24:**

The class consists of all females who are, or have been, employed by Novartis and have experienced gender discrimination at any time during the applicable liability period. All of the Class Representatives are proposed representatives of the class. Upon information and belief, there are hundreds, if not thousands, of members of the proposed class.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**B.      Efficiency of Class Prosecution of Common Claim**

**ALLEGATION NO. 25:**

Certification of a class of female employees similarly situated to the Class Representatives is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. The individual claims of the Class Representatives require resolution of the common question of whether Novartis has engaged in a systemic pattern and/or practice of gender discrimination against female employees. The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers and working conditions and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future. The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has had on them individually, and on females generally. In order to gain such relief for themselves, as well as for the putative class members, the Class Representatives will first establish the existence of systemic gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the proposed class of females who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed class, and Novartis.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 26:**

The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

10

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**C.      Numerosity and Impracticability of Joinder**

**ALLEGATION NO. 27:**

The class which the Class Representatives seek to represent is too numerous to make joinder practicable. The proposed class consists of hundreds, if not thousands, of current, former, and future female employees during the liability period.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**D.      Common Questions of Law and Fact**

**ALLEGATION NO. 28:**

The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative class they seek to represent. The common questions of law include, inter alia, whether Novartis has engaged in unlawful, systemic gender discrimination in its selection, promotion, advancement, transfer, training, and discipline policies, practices and/or procedures, and in the general terms and conditions of work and employment; whether Novartis is liable for a continuing systemic violation of Title VII; and a determination of the proper standards for proving a pattern and/or practice of discrimination by Novartis against its female employees. The common questions of fact would include, inter alia: whether Novartis has, through its policies, practices and/or procedures, (a) denied or delayed the promotion of females; (b) precluded females from eligibility for promotions by denying them training which male employees are granted; (c) paid females at a disparate level; (d) subjected females to differential treatment, including, but not limited to, less preferable work assignments, inequitable evaluations and stricter disciplinary policies, practices and/or procedures; and (e) subjected females to gender hostility and/or a sexually hostile work environment.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 29:**

The employment policies, practices and/or procedures to which the Plaintiffs and the class members are subject are set at Novartis' corporate level and apply universally to all class members throughout the country. These employment policies, practices and/or procedures are not unique or limited to any department; rather, they apply to all departments, and, thus, affect

11

the Class Representatives and proposed class members in the same ways no matter the district, division, or position in which they work.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 30:**

Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Novartis have been male.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 31:**

Discrimination in selection, promotion and advancement occurs as a pattern and practice throughout all levels and all divisions of Novartis. Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, pre-selection and interaction between male managers, supervisors, and subordinates rather than by merit or equality of opportunity. As a result, male employees have advanced and continue to advance more rapidly to better and higher paying jobs than do female employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 32:**

Novartis' policies, practices and/or procedures have had an adverse impact on females seeking selection for, or advancement to, better and higher paying positions. In general, a higher level of job classification correlates with a lower percentage of female employees holding those positions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

E.   **Typicality of Claims and Relief Sought**

**ALLEGATION NO. 33:**

The claims of the Class Representatives are typical of the claims of the proposed class. The Class Representatives assert claims in each of the categories of claims they asserted on behalf of the proposed class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed class.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 34:**

The Class Representatives are, like the members of the proposed class, all female employees who have worked for the Defendants during the liability period.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 35:**

Discrimination in selection, promotion, advancement, and training affects the compensation of the Class Representatives and all the class members in the same ways.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 36:**

Differential treatment between male and female employees occurs as a pattern and practice throughout all levels and departments of Novartis. Novartis' predominantly male managers hold female employees, including both the Class Representatives and class members, to stricter standards than male employees, and, thus, female employees often receive lower performance appraisals than males for performing at the same level. Female employees are also disciplined, formally and informally, more frequently and severely than their male counterparts. Additionally, male employees more often receive preferable work assignments and other preferential treatment.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 37:**

Discrimination in the form of a hostile work environment occurs as a pattern and practice throughout all levels and departments of Novartis and affects the Class Representatives and the members of the class in the same ways. Male supervisors and employees have made sexually hostile comments and jokes; harassed and intimidated female employees; made it clear in various ways that they favor male employees; denied female employees the full rights afforded to them by the Family and Medical Leave Act; and otherwise have created a working environment hostile to female employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 38:**

Several of the Class Representatives, and numerous other female employees, have complained to Novartis' management and Human Resources about gender discrimination and a sexually hostile work environment. Company investigations into these complaints have been inadequate and/or superficial. The Class Representatives and the class members have been affected in the same ways by Novartis' failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 39:**

Novartis has failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and/or procedures referenced in this Complaint and has failed to discipline adequately its managers and other employees when they violate the anti-discrimination laws. These failures have affected the Class Representatives and the class members in the same ways.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in the first sentence of this Paragraph.  Novartis Corp. denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 40:**

The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the proposed class members in this case.  The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class:  (a) a declaratory judgment that Novartis has engaged in systemic gender discrimination against female employees by limiting their ability to be promoted to better and higher paying positions, limiting their employment opportunities to lower and less desirable classifications, limiting their training and transfer opportunities, exposing them to differential treatment, and subjecting them to gender hostility at work; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Novartis' promotion, transfer, training, performance evaluation, compensation, work environment, and discipline policies, practices and/or procedures so that females will be able to compete fairly in the future for promotions, transfers, and assignments to better and higher paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) injunctive relief which effects a restructuring of the Novartis workforce so that females are promoted into higher and better paying classifications which they would have held in the absence of Novartis' past gender discrimination; (e) back pay, front pay, and other equitable remedies necessary to make female employees whole from the Defendants' past discrimination; (f) compensatory damages; (g) punitive and nominal damages to prevent and deter Novartis from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs and expenses.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**F.      Adequacy of Representation**

**ALLEGATION NO. 41:**

The Class Representatives interests are co-extensive with those of the members of the proposed class which they seek to represent in this case.  The Class Representatives seek to remedy Novartis' discriminatory employment policies, practices and/or procedures so that females will no longer be prevented from advancing into higher paying and more desirable positions, will not receive disparate pay and differential treatment, and will not be subjected to gender hostility at work.  The Class Representatives are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action.  The Class Representatives have retained counsel who are qualified, experienced, and able to

conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representatives and their counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4).

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

G.     **Requirements of Rule 23(b)(2)**

**ALLEGATION NO. 42:**

Novartis has acted on grounds generally applicable to the Class Representatives and the proposed class by adopting and following systemic policies, practices and/or procedures which are discriminatory on the basis of gender. Gender discrimination is Novartis' standard operating procedure rather than a sporadic occurrence. Novartis has refused to act on grounds generally applicable to the class by, *inter alia*: (a) refusing to adopt and apply selection, promotion, training, performance evaluation, compensation and discipline policies, practices and/or procedures which do not have a disparate impact on, or otherwise systemically discriminate against, females; (b) refusing to provide equal terms and conditions of employment for females; and (c) refusing to provide a working environment which is free of gender hostility. Novartis' systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph except the last sentence which it denies.

**ALLEGATION NO. 43:**

Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Novartis' individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Class Representatives' and class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female employees at Novartis. Such relief is the factual and legal predicate for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and for exemplary purposes necessitated by, such systemic discrimination.

16

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**H.     Requirements of Rule 23(b)(3)**

**ALLEGATION NO. 44:**

The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues identified in paragraphs 28-32 above, predominate over any issues affecting only individual claims.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 45:**

A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 46:**

The cost of proving Novartis' pattern and practice of discrimination makes it impracticable for the Class Representatives and members of the proposed class to control the prosecution of their claims individually.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**VI.     CLASS CLAIMS**

**ALLEGATION NO. 47:**

The Class Representatives and the putative class they seek to represent have been subjected to a systemic pattern and practice of gender discrimination involving a battery of practices which have also had an unlawful, disparate impact on them and their employment opportunities. Such gender discrimination includes adhering to a policy and/or practice of restricting the promotion and advancement opportunities of female employees so that they remain in the lower classification and compensation levels. Novartis in effect bars females from better and higher paying positions which have traditionally been held by male employees. The systemic means of accomplishing such gender stratification include, but are not limited to, Novartis' promotion, training and performance evaluation policies, practices and/or procedures.

17

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 48:**

Novartis' promotion, advancement, training, and performance evaluation policies, practices, and/or procedures incorporate the following discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of gender stereotypes and bias by Novartis' predominately male managerial and supervisory staff in making promotion, training, performance evaluation, and compensation decisions; (b) refusing or failing to provide equal training opportunities to females; (c) refusing or failing to provide females with opportunities to demonstrate their qualifications for advancement; (d) refusing or failing to establish and/or follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact and/or intentional gender bias; (e) using informal, subjective selection methods which allow for rampant gender discrimination; (h) disqualifying female employees for vacancies by unfairly disciplining them; (i) discouraging applications and expressions of interest by females; (j) penalizing female employees for exercising the rights afforded to them by the Family and Medical Leave Act; and (k) subjecting females to gender hostility in the work environment.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 49:**

Novartis' promotion policies, practices and/or procedures have had a disparate impact on the Class Representatives and the class members. Such policies, practices, and/or procedures are not valid, job-related, or justified by business necessity. There are alternative objective and more valid selection procedures available to the Defendants that are more closely related to the actual responsibilities of the positions, and which would have less of a disparate impact on females. However, the Defendants have failed to use or have refused to use such alternative procedures.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 50:**

The Defendants' promotion, training, performance evaluation, compensation, and transfer policies, practices and/or procedures are intended to have a disparate impact on the Class Representatives and the class they seek to represent. Such practices form a part of the Defendants' overall pattern and practice of keeping females in the lower classifications which have less desirable terms and conditions of employment.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph as to NPC and denies as to it.

**ALLEGATION NO. 51:**

Because of the Defendants' systemic pattern and practice of gender discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits. This pattern and practice of gender discrimination includes: being denied promotions in favor of equally or less qualified male employees; being denied training opportunities provided to male employees; receiving lower performance appraisals for performing the same work at the same level as male employees; being disciplined more frequently and more severely than male employees, including being disciplined for engaging in behaviors for which male employees are not disciplined; and being subjected to a hostile work environment.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph as to NPC and denies as to it.

**ALLEGATION NO. 52:**

The Class Representatives and the class they seek to represent have been subjected to gender hostility at work, both severe and pervasive, which affects the terms and conditions of their employment. The Defendants' actions and inactions encourage this behavior by its male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph as to NPC and denies as to it.

**ALLEGATION NO. 53:**

The individual Plaintiffs have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs are now suffering irreparable injury from Novartis' unlawful policies, practices and/or procedures as set forth herein, and will continue to suffer unless those policies, practices and/or procedures are enjoined by this Court.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**VII.    ALLEGATIONS OF THE CLASS REPRESENTATIVES**

    **A.    AMY VELEZ**

<u>Background</u>

**ALLEGATION NO. 54:**

    **Plaintiff Amy Velez** ("Ms. Velez") was hired by Novartis in approximately January 1997 as a Sales Representative in Novartis' Washington, D.C. sales district. Ms. Velez then became a Sales Consultant in approximately February 1998. In approximately March 2000, Ms. Velez became a Senior Sales Consultant. She held this position until her constructive discharge from Novartis in April 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 55:**

    Throughout her employment at Novartis, Ms. Velez has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which prevented Ms. Velez from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

<u>Denials of Promotion</u>

**ALLEGATION NO. 56:**

    Beginning in November 1997, Ms. Velez began winning numerous "Building from Strength" and "Show Me the Growth" sales contests. In addition, several of her managers gave her "Recognition Reward" letters and gifts.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 57:**

In 1998, one of Ms. Velez's managers sent her a thank-you note, commending Ms. Velez on her "commitment to excellence." In 1999, Ms. Velez also won "Gain and Maintain" and "Miacalcin Blitz" contests for her high product sales numbers.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 58:**

In 1999, Ms. Velez applied and interviewed for an Institutional Hospital Specialty position, a promotional opportunity. Ms. Velez's application was denied, and Craig Lafferty ("Lafferty"), a male, received the promotion instead.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 59:**

In 2000, Ms. Velez also applied and interviewed for promotional opportunities as a Senior Care Specialist and an Institutional Hospital Specialist. Ms. Velez's applications again were denied, and Robert Rheingold, a male, was instead selected for the Institutional position.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 60:**

In May 2001, Ms. Velez told her coworkers she was pregnant with twins and would later be on Family and Medical Leave Act ("FMLA") leave after the twins were born. Because of

pregnancy complications, Ms. Velez began a short-term disability leave in September 2001.  In May 2002, Ms. Velez's short-term disability was exhausted and she began her FMLA leave.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 61:**

On or about May 6, 2003, approximately nine months after returning to work from FMLA leave, Ms. Velez contacted Steve Webb ("Webb"), her Regional Director, and asked him to consider accepting her into a Management Development Program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 62:**

Based on her past and present performance, Ms. Velez was a qualified candidate for the Management Development Program.  This was especially true because, since returning from FMLA, Ms. Velez had increased sales in all her products while working the Washington, D.C. territory without a partner for nearly seven months.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 63:**

In addition, as of May 2003, Ms. Velez had doubled her sales numbers for all her products.  Ms. Velez had a higher market share than the entire Baltimore District for the product "Elidel."  In fact, Ms. Velez's product growth rate for Elidel was higher than the national growth rate.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 64:**

Also in May 2003, Ms. Velez's growth rate for the product "Lamisil" was the highest in the region, and higher than the national growth rate. Moreover, for approximately seven months, Ms. Velez's sales numbers for the product "Ritalin LA" were higher than those of four male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 65:**

In response to Ms. Velez's May 2003 request to participate in the Management Development Program, Regional Director Webb stated that Ms. Velez would not be a candidate for participation and that Webb did not expect Ms. Velez to become one in the future.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 66:**

On or about December 20, 2003, Ms. Velez contacted Regional Director Webb a second time requesting an opportunity to participate in the Management Development Program. On December 29, 2003, Webb again replied that he would not accept Ms. Velez's application to the program, nor did he expect to admit Ms. Velez into the program in the future.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 67:**

Upon information and belief, Ms. Velez received a lower raise for the calendar year of 2001 than similarly situated male employees and, in general, made less money than similarly situated male employees.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 68:**

Despite her exemplary sales record for the calendar year of 2001, Webb rated Ms. Velez "satisfactory" and gave her only a 3% raise.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 69:**

Upon information and belief, Ms. Velez received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Differential Treatment

**ALLEGATION NO. 70:**

On or about July 2001, in violation of the Novartis review policy, Ms. Velez did not receive a mid-year review. Mid-year reviews are typically given to field sales employees in July for the first six months of the year.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 71:**

On or about March 2002, in further violation of the Novartis review policy, Ms. Velez did not receive a year-end review for the calendar year of 2001. Due to a two-month delay in receiving sales data, Novartis typically gives year-end reviews to field sales employees in March for the review period for the preceding year. Novartis uses mid-year and year-end reviews for

24

evaluating an employee's sales performance, determining pay raises, and determining promotional opportunities.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 72:**

Before Ms. Velez returned from FMLA leave on or about July 29, 2002, the sales numbers for the Washington, D.C. territory, to which Ms. Velez was assigned, were low. In addition, due to a change in drug promotions, Ms. Velez was assigned a largely new set of doctors with whom to establish relationships.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 73:**

After returning from FMLA leave, on or about July 29, 2002, Novartis failed to provide Ms. Velez with additional sales training for her new position working in the Washington, D.C. territory.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 74:**

The standard practice at Novartis was to assign two Respiratory/Dermatology Sales Consultants to a territory so they could both effectively market and sell the products. Working with a partner enabled both employees to maximize their sales opportunities, because they could concentrate their sales and marketing efforts on their joint territory. Ms. Velez's manager, Mike Cunneen ("Cunneen"), advised Ms. Velez that she would have to work the Washington, D.C. territory alone. Ms. Velez worked the D.C. territory alone for approximately seven months.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 75:**

Because Ms. Velez had to work the Washington, D.C. territory alone for seven months, her sales numbers and data were inequitably compared to those employees who worked with partners.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 76:**

Approximately seven months after Ms. Velez returned from FMLA leave, Cunneen assigned Brian Oliver ("Oliver") to be her partner.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 77:**

After returning from FMLA leave, Ms. Velez began increasing sales of Elidel, Ritalin and Lamisil throughout her territory. In fact, Ms. Velez had higher sales numbers than several male employees. However, Cunneen put Ms. Velez on a "Coaching Plan" in February 2003, because he relied on only three months of sales data during which Ms. Velez had been out on FMLA leave.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 78:**

Conversely, Oliver was not disciplined, at all, even though Oliver and Ms. Velez were working as partners.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 79:**

On or about May 7, 2003, Ms. Velez was placed on a "Performance Improvement Plan" (a disciplinary action), approximately one day after contacting Regional Director Webb to inquire about getting into the Management Development Program. Ms. Velez's partner, Oliver, was not placed on a Performance Improvement Plan.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 80:**

Bob Bailey ("Bailey"), a male sales representative, had lower sales numbers and growth rates than Ms. Velez, but was still promoted on or about July 9, 2003. At the same time, Ms. Velez was working under a Performance Improvement Plan.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 81:**

Regional Director Webb notified Bailey of his promotion in May 2003 while, at the same time, notifying Ms. Velez that she was being placed on a Performance Improvement Plan.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 82:**

Ms. Velez was placed on another Performance Improvement Plan on or about January 2, 2004, approximately two weeks after contacting Regional Director Webb a second time about

the Management Development Program. Again, Oliver was not subjected to any disciplinary actions, even though he was responsible for the same territory as Ms. Velez.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 83:**

Upon information and belief, to date, Oliver has not been placed on a Coaching or Performance Improvement Plan by Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 84:**

After Ms. Velez gave birth to twins and while she was still on FMLA leave, Manager Cunneen violated Novartis' policy by calling Ms. Velez at home about work related matters on several occasions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 85:**

During the telephone calls, Cunneen told Ms. Velez she would have to work harder than others to increase the product sales numbers for the Washington, D.C. territory. He also told Ms. Velez that he wanted her to review product information and accept medical samples while she was on FMLA leave.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

28

**ALLEGATION NO. 86:**

On or about July 31, 2002, two days after Ms. Velez returned from work, Cunneen warned Ms. Velez that she would be "under the gun."

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 87:**

On several occasions in September and October 2002, while riding along with Cunneen during sales calls, Ms. Velez heard Cunneen calling medical recruiters and asking them whether their candidates were married or had children.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 88:**

In approximately September 2002, approximately one month after Ms. Velez returned from FMLA leave, Cunneen made several sexually hostile comments during a Team Meeting in Atlanta, Georgia, at which Ms. Velez was present.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 89:**

In approximately December 2002, Mike Corvingo ("Corvingo"), a male sales representative, told Ms. Velez that Cunneen communicates better with men than women. Corvingo also told Ms. Velez that other female sales representatives were experiencing difficulties with Cunneen's frequent favoring of their male counterparts.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 90:**

In approximately May 2003, Ms. Velez went out on disability leave due to severe stress, emotional breakdowns, anxiety and depression. Ms. Velez's psychologist and psychiatrist directly attributed her health problems to the discrimination and hostile work environment that she suffered at Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 91:**

On or about April 18, 2004, Ms. Velez resigned from Novartis because of the continued lack of promotional opportunities and denial to entry in the Management Development Program, gender discrimination, hostile work environment and the health problems she suffered while dealing with these issues.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**B.    SONIA KLINGER**

**Background**

**ALLEGATION NO. 92:**

**Plaintiff Sonia Klinger** ("Ms. Klinger") was hired by Novartis in approximately June 2001 as an Area Sales Manager in the Senior Care Department in Novartis' St. Louis/Kansas City district, a position she currently holds.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 93:**

Throughout her employment at Novartis, Ms. Klinger has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and

discipline policies, practices and/or procedures, which have prevented Ms. Klinger from advancing into higher and better-paying positions for which she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Denials of Promotion

**ALLEGATION NO. 94:**

In approximately May 2001, before being hired by Novartis as an Area Sales Manager, Ms. Klinger applied for the position of Regional Director, but was told by Executive Director John Mandala ("Mandala") that she did not have sufficient experience for the position.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 95:**

However, Mandala hired an equally or less-qualified male, Rick Brady ("Brady"), for the Regional Director position.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 96:**

When Ms. Klinger then interviewed for the position of Area Sales Manager in 2001, Mandala assured her that she would be promoted within a year, as long as her division performed well. The division did perform well; however, Ms. Klinger has remained an Area Sales Manager.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

31

**ALLEGATION NO. 97:**

In November 2003, Ms. Klinger applied for a Hospital Sales Manager position, a promotional opportunity. Despite her considerable hospital work experience, Ms. Klinger was denied the promotion. Paul Gearke, a male with no hospital work experience, was selected instead.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 98:**

In December 2003, Ms. Klinger applied and interviewed for a promotion to an Associate Director of Customer Accounts position, for which she was well qualified. The position was then closed for a period of time. Subsequently, Ms. Klinger learned that Wayne Morrow, a male employee whose sales numbers were equal to or lower than Ms. Klinger's, received the promotion. Meanwhile, Ms. Klinger had not even been notified that the position was re-opened.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 99:**

In 2004, Ms. Klinger applied to an Oncology Manager position. Ms. Klinger's application was denied. A less experienced male employee from Wichita, Kansas, Dan Danitchek, was selected for the position instead.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 100:**

In approximately December 2004, Ms. Klinger learned that Paul Luetke ('Luetke"), a male Area Sales Manager in Novartis' Dallas District Senior Care division, had a higher salary than she did. Even though they held the same position with the same title, Luetke was paid approximately 14% more than Ms. Klinger from June 2001 through October 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 101:**

Upon information and belief, Ms. Klinger also received less compensation than other similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Differential Treatment

**ALLEGATION NO. 102:**

In 2002, Ms. Klinger received an unfair negative performance appraisal from Regional Director Brady. Brady told her that this was based solely on her sales numbers. However, male employees with the same sales performance received higher reviews.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 103:**

For this performance appraisal, Brady reviewed Ms. Klinger's sales performance only from the last trimester, during which time her sales had been unusually low, instead of considering her sales from the whole year. At the beginning of the last trimester, Ms. Klinger had discussed with her supervisors several concerns regarding what she suspected was a problem with how they had retargeted the position. At that time, Ms. Klinger even showed them supporting data for her concerns.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 104:**

Furthermore, Ms. Klinger's two least profitable territories during this time period had been vacant due to employees out on disability leave. Because Brady had not approved Ms. Klinger's request to have these vacancies temporarily filled, sales for that trimester were lower than they could have been.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 105:**

Conversely, a male employee, Ravish Gandhi, placed a similar request for a vacancy in his area to be filled, and this request was approved by his region director.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 106:**

Human Resources has refused to reconsider the unfair negative performance appraisal which Brady gave to Ms. Klinger. As a result, it remains on Ms. Klinger's record and has prevented her from being a competitive candidate for other promotions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 107:**

Because of this negative performance appraisal, Ms. Klinger also did not receive a salary increase and was denied stock options in 2003. All her male peers received salary increases that year.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 108:**

In addition, Ms. Klinger was placed on a Territory Coaching Plan as a result of Brady's performance appraisal, which made her job considerably more time-consuming. On information and belief, no male employee was disciplined in this way, including Bill Fenton ("Fenton"), whose sales numbers were lower than those of Ms. Klinger.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 109:**

Although Ms. Klinger was told that she could not transfer to another position because her sales were too low, Fenton received a lateral transfer.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 110:**

High profile assignments, such as the coordination of large regional consulting meetings, are consistently assigned to Ms. Klinger's male coworkers. Also, while Ms. Klinger routinely receives marketing assignments for minor products, her male coworkers are given more significant marketing experience.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 111:**

Ms. Klinger is also denied the awards and recognition which are given to similarly situated male employees on her team. For example, Greg Plastino, a male employee who had lower sales numbers than Ms. Klinger, received Novartis' Impact Award for the third trimester in 2004. Ms. Klinger was then informed that the award was unrelated to sales numbers, even though she had been told for the past three years that sales numbers determine the recipient of the Impact Award.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 112:**

In approximately the spring of 2003, Brady used the company's expense account to invite male employees on Ms. Klinger's team to Las Vegas, Nevada. The female employees were not invited on this trip, nor were they extended any comparable invitation.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 113:**

Additionally, Brady, Executive Director Mandala, another manager, Dan Teisler, and other male employees routinely made sexist, racist, homophobic, and otherwise offensive comments and jokes at work meetings in which female employees were present. When Ms. Klinger approached Mr. Brady about an offensive racial joke that a regional account manager had told in the presence of two African American customers, he ignored her complaint.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 114:**

Ms. Klinger has also reported offensive behavior and comments to Human Resources and higher supervisors. To her knowledge, no disciplinary actions have been taken against Brady or the others.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

36

**ALLEGATION NO. 115:**

In 2002, a sales representative who reported to Ms. Klinger approached her because she was having difficulties getting into the Management Development Program. The sales representative told Ms. Klinger that Brady had informed her that she could not enter the program because she had no training experience at Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 116:**

However, another female employee was allowed to enter the program, despite not having any training experience. The Sales Representative advised Ms. Klinger that Brady was romantically involved with this woman. On information and belief, the Sales Representative was being held to a different standard solely because she was not romantically involved with Brady.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Retaliation**

**ALLEGATION NO. 117:**

Ms. Klinger filed an EEO Charge of Discrimination on or about November 11, 2004, in which she complained about the gender discrimination she experienced at Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 118:**

On November 29, 2004, approximately two weeks after filing her EEO Charge, Ms. Klinger received a phone call from Regional Director Dave Mershon ("Mershon"). Mershon informed Ms. Klinger that Novartis was undergoing a reorganization and that Ms. Klinger was being displaced from her position as Area Sales Manager in the Senior Care division in Novartis' St. Louis/Kansas City sales district to a mass market Area Sales Manager position in the Springfield, Missouri sales district.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 119:**

The base city for Ms. Klinger's new assignment was located approximately 215 miles from her residence in St. Louis, and her closest sales territory was 105 miles away. The new base city was also much smaller than her former base city, and, thus, had less promotional potential within Novartis and less potential for employment outside the company. Additionally, whereas Ms. Klinger's old position was a specialty position in Novartis' Senior Care division, the new assignment demoted her to the mass market. Furthermore, Ms. Klinger was supposed to have nine Sales Representatives working under her in her new position. At the time, however, only three of those positions were filled. Because Ms. Klinger would have to hire and train employees for the six vacant positions, her district would not be productive or profitable for at least one year, and, consequently, Ms. Klinger would receive a much lower bonus pay.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 120:**

Ms. Klinger had approximately $47,000 in stock options due in March 2005 and $75,000 on Novartis' pension plan due in May 2005.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 121:**

In December 2004, Novartis announced that employees who were displaced to a position 50 miles or more from their residence could reject those assignments and post for new positions. Because of the stock options due in March 2005, Novartis was now giving these employees until March 7 to find a new position, after which they would lose their job with Novartis. Ms. Klinger rejected the Springfield, Missouri assignment and began to post for other openings.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 122:**

Ms. Klinger applied for a Neuroscience specialty position, but was rejected in favor of a male employee from outside the company. Further, even though displaced employees are supposed to receive special attention when applying for positions, a non-displaced male employee, Ken Riggenback, was granted an interview for the Neuroscience position before Ms. Klinger was even made aware of the opening. Mr. Riggenback, who had been with Novartis less than two years, had already received an assignment in his city during the reorganization.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 123:**

Ms. Klinger also applied for an Associate Director of Customer Accounts position, for which she had a phone interview but was again rejected.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 124:**

In December 2004, Ms. Klinger then applied for a management position in St. Louis in the Nutrition department. Although she applied to this position the first day that it was listed, she was told in January 2005 that Novartis was interviewing other candidates for the position and was about to make an offer to another candidate.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 125:**

Only two other managers in Ms. Klinger's division, one male and one female, were displaced in the November 2004 realignment. The male employee rapidly obtained a specialty position in his base city. In approximately January 2005, Novartis spoke to the female employee about creating a position for her. To date, Ms. Klinger remains without a position.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**C.    PENNI ZELINKOFF**

**Background**

**ALLEGATION NO. 126:**

Plaintiff Penni Zelinkoff ("Ms. Zelinkoff") was hired by Novartis in approximately June 2001 as a Sales Consultant in Novartis' Portland, Oregon district. She held this position until her constructive discharge from Novartis in or about August 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 127:**

Throughout her employment at Novartis, Ms. Zelinkoff was adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures, which prevented Ms. Zelinkoff from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

## Denials of Promotion

**ALLEGATION NO. 128:**

In approximately October 2003, Ms. Zelinkoff signed up for a career-enhancing sales training program. Even though Sales Representatives are permitted to attend two or three training classes per year, her request to attend was denied by the then District Manager, Patrick Jackle ("Jackle").

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 129:**

In a phone conversation with Regional Manager Steve Martinez ("Martinez") in January 2004, Ms. Zelinkoff requested to be considered for the West Region training department. Martinez denied this request and informed Ms. Zelinkoff that unless she ranked in the top 35% of Novartis nationwide, she would not be considered for a promotion.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 130:**

However, Ms. Zelinkoff knows of several male employees from the Northwest Region who were not in the top 35% of Novartis, yet who received promotions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 131:**

Jackle left his position in approximately December 2003, and in approximately February 2004, Robb Fairbairn ("Fairbairn") was hired as District Manager.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 132:**

In February 2004, Ms. Zelinkoff requested that Fairbairn consider her for the Management Development Program, which is necessary to advance into management positions. Fairbairn denied her request at that time, and on numerous subsequent occasions over the course of 2004, by stating that she would not be considered for the program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 133:**

Upon information and belief, Ms. Zelinkoff received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Differential Treatment**

**ALLEGATION NO. 134:**

On or about February 10, 2004, Ms. Zelinkoff attended a Portland East Team Meeting. At the meeting, supervisors asked for a volunteer to coordinate the Novartis Consulting Network (NCN). Nobody volunteered for this assignment at the meeting.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5