**ALLEGATION NO. 135:**

The following day, Ms. Zelinkoff called District Manager Joey Colonnello ("Colonnello") to volunteer for NCN coordinator. This opportunity would have allowed Ms. Zelinkoff to demonstrate leadership skills and would have helped with future promotional opportunities. Colonnello declined her offer and told her that the coordinator had to be from Steve Wright's district.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 136:**

On or about March 9, 2004, at another Team Meeting, the NCN coordinator was announced. Neither the lead coordinator nor the backup was from Steve Wright's district.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 137:**

Ms. Zelinkoff frequently received minor assignments while her male coworkers were selected for high priority projects, such as test pilots or roll-outs of new products.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 138:**

Additionally, during meetings, high level executives and managers socialized with male employees far more frequently than female employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 139:**

From June 2001 through approximately December 2003, when Ms. Zelinkoff was working under the supervision of District Manager Jackle, Jackle constantly intimidated and harassed Ms. Zelinkoff by threatening to terminate her job, writing her up for inconsequential matters, and unfairly evaluating her performance in both formal reviews and daily interactions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 140:**

Several other female employees who worked under Jackle experienced similar poor and disparate treatment.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**D.    MINEL HIDER TOBERTGA**

### Background

**ALLEGATION NO. 141:**

Plaintiff Minel Hider Tobertga ("Ms. Hinder Tobertga") was hired by Novartis in approximately April 2001 as a Sales Consultant in Novartis' Sacramento district. She held this position until her constructive discharge from Novartis in or about September 2004.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 142:**

Throughout her employment at Novartis, Ms. Hider Tobertga was adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and

discipline policies, practices and/or procedures, which prevented Ms. Hider Tobertga from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

### Denials of Promotions

**ALLEGATION NO. 143:**

In 2002, Ms. Hider Tobertga was selected as one of Novartis' top 50 salespersons in the nation and was given company stock as a reward. In addition, Ms. Tobertga's sales performance consistently ranked among the top in the region for a variety of products throughout 2002 and 2003.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 144:**

In an e-mail dated January 5, 2004, Ms. Hider Tobertga informed her supervisor Mark Gunning ("Gunning") that she wanted to be considered for the Management Development Program, which is necessary to advance into management positions. On or about January 30, 2004, when Gunning finally met with Ms. Hider Tobertga, he informed her that she would not be considered for the program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 145:**

Ms. Hider Tobertga confirmed this conversation by e-mail. Gunning replied to Ms. Hider Tobertga's e-mail by stating that she required a stronger sales performance to be considered for management training.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 146:**

However, not only had Ms. Hider Tobertga ranked among Novartis' top 50 salespersons, she also consistently ranked among the top in the region for a variety of products throughout 2002 and 2003.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 147:**

Furthermore, less qualified male employees were routinely selected for the Management Development Program, including George Lopez ("Lopez"), Ms. Hider Tobertga's former counterpart, who is currently enrolled in the program. Not only were Lopez's sales numbers equal to or lower than Ms. Hider Tobertga's, but he did not have nearly as much industry experience as she did, nor, to her knowledge, has he ever ranked among the top 50 salespersons in the nation.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 148:**

Upon information and belief, Ms. Hider Tobertga received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Differential Treatment

**ALLEGATION NO. 149:**

When Ms. Hider Tobertga organized events for Novartis under Gunning's supervision, Gunning required that she report to him daily and run all decisions by him for approval. Conversely, Gunning granted Lopez, her counterpart, a much greater degree of autonomy.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 150:**

In November 2003; Ms. Hider Tobertga was hospitalized because of an emergency medical condition. As a result, she was on leave for two weeks.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 151:**

Because of her poor medical condition, Ms. Hider Tobertga's doctor did not authorize her release to travel to and attend a launching meeting in Las Vegas. However, Gunning accused her of trying to get out of the meeting and pressured her to attend.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 152:**

Because of the pressure from Gunning, Ms. Hider Tobertga convinced her doctor to permit her to attend the meeting under the restriction that she would rest in her hotel room as much as possible. Throughout the trip, Ms. Hider Tobertga had to take painkillers and nausea medication due to the great pain and discomfort she was experiencing.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 153:**

In February 2004, Ms. Hider Tobertga began to suffer from severe migraine headaches, causing her to miss one day of work. Ms. Hider Tobertga provided Gunning with a note from her doctor confirming her illness in accordance with company policy. Nevertheless, Gunning objected to Ms. Hider Tobertga's leave, accused her of falsifying the note, and asked Ms. Hider Tobertga whether she had a doctor who was writing illegitimate notes for her.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 154:**

In approximately March 2004, Ms. Hider Tobertga complained to Human Resources about Gunning's inappropriate, offensive and harassing behavior, but, to her knowledge, no action was taken.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**E.    MICHELLE WILLIAMS**

**Background**

**ALLEGATION NO. 155:**

Plaintiff Michelle Williams ("Ms. Williams") was hired by Novartis in approximately April 2002 as a sales representative in Novartis' Chicago South district. In approximately August 2002, she became a sales consultant, a position she currently holds.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 156:**

Throughout her employment at Novartis, Ms. Williams has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures, which have prevented Ms. Williams from advancing into higher and better paying positions for which she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Denials of Promotion**

**ALLEGATION NO. 157:**

When Ms. Williams began her career with Novartis, she worked under the supervision of a female supervisor, Joanne Pence ("Pence"), who helped her qualify for acceptance to the Management Development Program by completing a 12-step checklist. Ms. Williams then completed the first of three classes for the program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 158:**

In May 2003, Pence left her position. Regional Manager Joe Stein appointed Ms. Williams to serve as interim District Manager for a period of approximately two months while he searched for a replacement for Pence.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 159:**

Ms. Williams requested the opportunity to apply for the position at that time, but was told she did not qualify because she had not completed the Management Development Program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 160:**

In July 2003, Antonio Parker ("Parker"), a male, became the new District Manager.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 161:**

In an extensive conversation with Parker regarding her career goals, Ms. Williams informed Parker of her intention to complete the, Management Development Program. Parker told Ms. Williams that when he was hired as District Manager, he was informed that she was to be promoted by the end of 2003. He also told her she was enrolled in the second management training class in December 2003.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 162:**

Also in July, Ms. Williams let Parker know that she was pregnant. After informing Parker of her pregnancy, she never received any additional information about the December 2003 class.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 163:**

Ms. Williams went on maternity leave from December 2003 to April 2004. While she was on maternity leave, Ms. Williams also spoke to Parker on the telephone, about a management training class in June that she wanted to attend. Parker repeatedly assured

50

Ms. Williams that she would be enrolled. When she returned from leave, however, she was not enrolled in the class.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 164:**

When Ms. Williams discussed the issue with Parker, he told her that his supervisor, Joe Stein ("Stein"), had advised him that Ms. Williams may have changed her mind about the Management Development Program since having a child and that they should wait to ensure that she was still interested in the opportunity. Parker also told Ms. Williams that it was not her place to contact Stein about the matter.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 165:**

Ms. Williams confirmed that she was still interested in management training, and Parker then assured her that she would complete the second class in August. As August approached, however, she asked Parker for more information about the class, and he admitted to her that the class was actually in October.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 166:**

Parker then told Ms. Williams that she was enrolled in a class during the week of October 4. Even though Ms. Williams had already scheduled vacation days for that week, she altered her vacation plans, upon Parker's recommendation, in order to attend the class.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 167:**

Several days before the October class was supposedly scheduled, Parker told her that there was no class in October and denied ever telling her that there was an October class.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 168:**

Meanwhile, employees who attended the first class of the Management Development Program with Ms. Williams began interviewing for management positions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 169:**

Upon information and belief, Ms. Williams received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Differential Treatment**

**ALLEGATION NO. 170:**

During the time Ms. Williams was on maternity leave, Parker conducted her annual review without any consent or input from her. The raise Parker gave her was the lowest she had ever received at Novartis and was lower than her colleagues' raises. Without Ms. Williams' knowledge or her signature Parker submitted Ms. Williams' review on January 19, 2003. Standard practice at Novartis is to meet with an employee to discuss his or her review before submitting it.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 171:**

When Ms. Williams returned to work in April 2004, Parker told her that he needed her backdated signature, because he would lose his job without it. Ms. Williams refused to do this, because she would not have agreed to the proposed pay raise. Parker then proceeded to submit her raise without her approval and signature, violating company policy.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 172:**

Even though Parker denied Ms. Williams the opportunity to become a manager, and, in fact, suggested that she apply for specialty representative positions instead, Parker has had to consult Ms. Williams numerous times for advice on how to perform his duties.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 173:**

While she was on maternity leave, Parker violated Novartis' policy by calling her on her cell phone numerous times to ask her questions regarding his duties.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## F.    JENNIFER WAXMAN-RECHT

### Background

**ALLEGATION NO. 174:**

Plaintiff Jennifer Waxman-Recht ("Ms. Waxman-Recht") was hired by Ciba Vision, a Novartis subsidiary, in approximately June 1997 as an Ophthalmic sales representative in Connecticut.  On or about November 1999, Ms. Waxman-Recht was invited to interview for a senior-level specialty sales representative position for the product Visudyne.  Ms. Waxman-Recht then became one of approximately 20 Visudyne representatives.  In 2002, Novartis management took over the Ophthalmic division.  In 2004, Ms. Waxman-Recht was demoted to a non-specialty sales representative position, which she continues to hold.

**ANSWER:**

Novartis Corp. admits that CIBA Vision Corporation is an indirect subsidiary of Novartis

Corp. and that in 2001 NPC took over responsibility for operating the ophthalmic pharmaceutical

business previously managed by CIBA Vision Corporation.  Novartis Corp. lacks knowledge and

information sufficient to form a belief as to the other allegations contained in this Paragraph.

**ALLEGATION NO. 175:**

Throughout her employment at Novartis, Ms. Waxman-Recht has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which have prevented Ms. Waxman-Recht from advancing into higher and better paying positions for which, she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

### Denials of Promotion

**ALLEGATION NO. 176:**

In 2004, Novartis announced a realignment that cut the number of Visudyne specialty sales representatives to eleven.  While eight months pregnant, Ms. Waxman-Recht interviewed for the position of specialty sales representative in August 2004.  Despite being the highest ranking Visudyne sales representative in the country in 2004, Ms. Waxman-Recht was denied the promotion.  Instead, less qualified male employees were selected, including Fred Richards, who was ranked 19 out of 21 at the time of the interviews.  Furthermore, only two female

CHICAGO/#1337492.5

employees were selected for the 11 openings.   One or two of the Visudyne representative positions, including the position for Ms. Waxman-Recht's territory, remains vacant to date.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 177:**

Ms. Waxman-Recht was informed by her manager, Bill Forrest, that Perry Sternberg ("Sternberg") had pre-selected employees for the Visudyne sales representative positions before the interview process had even commenced and had announced his choices for the positions in a manager's meeting.   Almost all of the candidates Sternberg had pre-selected ultimately received the promotion.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 178:**

After the realignment, Ms. Waxman-Recht was demoted to a non-specialty sales representative position with less income potential.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 179:**

In approximately 2002, shortly before Novartis management took over her division, Ms. Waxman-Recht learned that her salary was lower than almost all of her male counterparts by as much as $30,000.

**ANSWER:**

Novartis Corp. admits that in 2001 NPC took over responsibility for operating the

ophthalmic pharmaceutical business previously managed by CIBA Vision Corporation.   Novartis

Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 180:**

Soon after, management agreed to raise Ms. Waxman-Recht's salary to the level her coworkers were earning. However, before the raise went into effect, Novartis took over the Ophthalmic division and replaced the old management. While Sternberg initially agreed to grant the raise, after several months he reneged on this agreement and informed Ms. Waxman-Recht that she would not be receiving a raise.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 181:**

Ms. Waxman-Recht reported her pay situation to Kevin Graham ("Graham") in Novartis' Human Resources department. At the time of her report, however, Sternberg had already contacted Graham (a former colleague of his) and told him that Ms. Waxman-Recht did not deserve the raise. Despite the fact that Ms. Waxman-Recht was a top performer, Graham dismissed her complaint, relying on Sternberg's unsupported assertion.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 182:**

To date, Ms. Waxman-Recht continues to receive a lower salary than her male coworkers, even though she was the highest ranking Visudyne sales representative in the country in 2004. Conversely, equally or less-qualified male Visudyne representatives have received raises even though their salaries were already higher than Ms. Waxman-Recht's.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

## Differential Treatment

**ALLEGATION NO. 183:**

Ms. Waxman-Recht has been held to stricter standards than her male coworkers. Novartis management sets sales quotas for employees without providing any explanation as to how they arrived at those numbers. Each representative is given a percentage by which they are expected to increase their sales over the trimester. Ms. Waxman-Recht's sales quotas are often much higher than those given to male coworkers and than the national quotas. For example in the second trimester of 2004, Ms. Waxman-Recht's quota was 36%, while the national average was only 12%.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 184:**

Ms. Waxman-Recht's manager, Patrick Sullivan ("Sullivan"), continues to send her work-related e-mails and voice mails, even though Ms. Waxman-Recht has requested that Sullivan refrain from doing so while she is still out on maternity leave. In one e-mail, Mr. Sullivan asked Ms. Waxman-Recht to complete a project before returning to work.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**G.    KAREN LIGGINS**

## Background

**ALLEGATION NO. 185:**

Plaintiff Karen Liggins ("Ms. Liggins") was hired by Ciba Vision, a subsidiary of Novartis, in approximately September 2000 as a Retina Sales Specialist for the product Visudyne in its Ophthalmic division in St. Louis, Missouri. In 2004, Ms. Liggins became a Ophthalmic Sales Specialist, a position that she continues to hold.

57

**ANSWER:**

Novartis Corp. admits that CIBA Vision Corporation is an indirect subsidiary of Novartis Corp. and that in 2001, NPC took over responsibility for operating the ophthalmic pharmaceutical business previously managed by CIBA Vision Corporation. Novartis Corp. lacks knowledge and information sufficient to form a belief as to the other allegations contained in this Paragraph.

**ALLEGATION NO. 186:**

Throughout her employment at Novartis, Ms. Liggins has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which have prevented Ms. Liggins from advancing into higher and better paying positions for which she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Denials of Promotion**

**ALLEGATION NO. 187:**

When Ms. Liggins was hired, she was told she would be promoted to management within one year due to her 11 years of managed care experience and master's degree in management. To date, she has been prevented from advancing into management.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 188:**

In October 2003, Ms. Liggins expressed her interest in a vacant District Manager position to both Vice President of Sales Perry Sternberg ("Sternberg") and Regional Director Kathy Kobe ("Kobe"). Sternberg advised Ms. Liggins that she would have to move from St. Louis to Chicago to be considered for the position because he wanted all the managers living in the city. Because relocation was not an option for Ms. Liggins, she did not pursue the District Manager

position. However, Larry Karner, a male employee, was given this position without being required to relocate to Chicago from his residence in Minneapolis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 189:**

In 2003, Ms. Liggins interviewed for an Oncology sales specialist position. Ms. Liggins received very positive feedback from the manager and the other Oncology sales representatives, but after the Oncology manager contacted District Manager Larry Karner ("Karner") and other Ophthalmic senior managers about her application, she was denied the position in favor of a male employee.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 190:**

After returning from disability leave in approximately August 2004, Ms. Liggins requested that Karner consider her for the Management Development Program. Despite her strong performance, 11 years of account management experience, and the fact that she had been told when she was hired by Novartis that she could advance to management after one year, District Manager Karner denied her request.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 191:**

Ms. Liggins then sent Karner an e-mail confirming their conversation and asking for guidelines to get into management. However, Karner never responded.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

59

**ALLEGATION NO. 192:**

On or about August 2004, Novartis announced a realignment that cut the number of Senior Retina Sales Specialists to eleven. After interviewing for one of those positions, which represented a promotion for Ms. Liggins, Ms. Liggins' application was denied and Rob Goldschmidt ("Goldschmidt"), a male candidate from outside Novartis with significantly less experience than Ms. Liggins received the promotion.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 193:**

In addition, at least two less-qualified male employees, Tom Scott and Fred Richards, who had been Ms. Liggins' Retina Sales Specialist coworkers and had lower numbers than Ms. Liggins, were selected for the positions. Meanwhile, Ms. Liggins was demoted to a core representative position as an Ophthalmic Sales Specialist.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 194:**

Upon information and belief, Ms. Liggins received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Differential Treatment**

**ALLEGATION NO. 195:**

Throughout 2000 and 2001, management consistently set overly aggressive sales forecasts for Ms. Liggins, which she was expected to meet. As a result of the unrealistically high forecasts, Ms. Liggins did not meet the goals established for her and was given a low ranking. Ms. Liggins was given this low ranking even though her sales numbers were among the highest

60

in volume and her total contribution of sales, in dollar value, was fourth in the country. Conversely, when male employees had difficulties meeting sales forecasts, their managers excused them by acknowledging the aggressiveness of the forecasts.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 196:**

In January 2003, District Manager Karner was to select one of his sales representatives to receive the President's Award. Novartis grants the President's Award to top achievers each January based on the previous year's sales numbers and objectives. Although Ms. Liggins was Karner's top performing sales representative who met all the requirements for the award, Karner selected Dick Post, a male employee with lower sales numbers than Ms. Liggins for the President's Award.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## **Gender Hostility**

**ALLEGATION NO. 197:**

Karner was extremely hostile and negative to Ms. Liggins throughout the time he was her direct manager. For example, during their first ride-along in September 2001, Karner made numerous negative and harassing comments about Ms. Liggins' performance.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 198:**

Karner also falsely claimed that a doctor in Kansas City had complained that Ms. Liggins did not call on his office frequently enough. When the doctor in question was made aware of Mr. Karner's assertion, he was extremely displeased and wrote a letter commending Ms. Liggins' work.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 199:**

In April 2004, Ms. Liggins went on disability leave after undergoing an emergency surgery. While she was out, Ms. Liggins was contacted numerous times by Karner, who required her to do work for Novartis while on leave.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**H.    LORI HORTON**

**Background**

**ALLEGATION NO. 200:**

Plaintiff Lori Horton ("Ms. Horton") was hired by Novartis in approximately March 2002 as a Sales Representative in Novartis' Richmond North District in Virginia, a position she continues to hold.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 201:**

Throughout her employment at Novartis, Ms. Horton has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which have prevented Ms. Horton from advancing into higher and better paying positions for which she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

CHICAGO/#1337492.5

## Denials of Promotion

**ALLEGATION NO. 202:**

In June 2004, Ms. Horton applied for a promotion to an Oncology Specialist position. Ms. Horton was denied the opportunity to interview for this position; which was awarded to a less qualified male applicant, Russell Emerson.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 203:**

In August 2004, Ms. Horton requested that Novartis District Manager Mike Cunneen ("Cunneen") consider her for enrollment in the Manager Development Program. Cunneen indicated that he would not consider Ms. Horton at that time. To date, Cunneen has yet to recommend Ms. Horton for the program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 204:**

However, less-qualified male employees with lower performance numbers than Ms. Horton are routinely granted entrance to the Manager Development Program, including Steve Goodwin, Chris Sims, Neal Levy, and Drayton Wise.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Disparate Pay

**ALLEGATION NO. 205:**

In March 2004, Ms. Horton received a lower performance review than her male partner, Russell Emerson ("Emerson"), even though his performance was the same or worse than hers. Ms. Horton also received a lower review than another male coworker in her District, Mike Corvingo ("Corvingo"), whose numbers were far below hers. As a result, Emerson and

63

Corvingo both received stock options and higher raises than Ms. Horton. Additionally, Emerson received an award of $500, which Ms. Horton was denied.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 206:**

Upon information and belief, Ms. Horton received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Differential Treatment**

**ALLEGATION NO. 207:**

Approximately three months after Ms. Horton began working for Novartis, District Manager Cunneen informed Ms. Horton and her partner, Emerson, that Cunneen was disappointed with the state of their territory. Cunneen gave them two months to improve their numbers. While Emerson had been working in the territory with another partner for approximately one year at that time, Ms. Horton, who had only recently started, was held responsible for, and unfairly pressured as a result of, Emerson's and his previous partner's performance.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 208:**

When their numbers began to rise due to Ms. Horton's efforts, Cunneen rewarded her male partner, Emerson, by encouraging him to apply for promotional opportunities. Conversely, Ms. Horton received no acknowledgement whatsoever from Cunneen.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**I.     HOLLY WATERS**

**Background**

**ALLEGATION NO. 209:**

**Plaintiff Holly Waters** ("Ms. Waters") was hired by Novartis in approximately April 2002 as a Sales Representative in Novartis' Maryland/D.C. territory. In early 2003, Ms. Waters became a Sales Consultant. On or about November 22, 2004, Ms. Waters was terminated from Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 210:**

Throughout her employment at Novartis, Ms. Waters was adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which prevented Ms. Waters from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Denials of Promotion**

**ALLEGATION NO. 211:**

In approximately May 2004, Ms. Waters was interested in applying for a promotion in specialty sales that had opened up in Washington, D.C. Ms. Waters was well qualified for this position because her sales numbers were among the highest in her territory. Ms. Waters e-mailed District Manager Mike Cunneen ("Cunneen") regarding her interest in the position. In order to apply, Ms. Waters had to go through District Manager Brian Campbell ("Campbell"). When Ms. Waters informed Campbell of her intention to apply for the promotion, Campbell

discouraged Ms. Waters from applying and told her that he did not think she would be happy in the position.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 212:**

Ms. Waters was later informed that Campbell had contacted Cunneen and told him that Ms. Waters was not qualified for the position and should not be considered. On account of this discovery, Ms. Waters knew that Campbell had effectively precluded her from receiving the promotion, and, thus, she decided not to apply. A male employee received the Respiratory Derm promotion.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Disparate Pay

**ALLEGATION NO. 213:**

Upon information and belief, Ms. Waters received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Differential Treatment

**ALLEGATION NO. 214:**

In October 2004, Campbell conducted Ms. Waters' mid-year review. Because of her high numbers, Ms. Waters received a positive review.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

66

**ALLEGATION NO. 215:**

On October 25, 2004, Campbell rode along with Ms. Waters.  During a personal doctor's visit, in the course of the ride-along, Ms. Waters signed her doctor up for samples for the product Lamisil and scheduled a dinner.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 216:**

On or about November 22, 2004, Ms. Waters was abruptly terminated.  District Manager Campbell accused Ms. Waters of falsifying the October 25, 2004 doctors' visit as a sales call.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 217:**

Ms. Waters did not have low rankings or sales numbers, nor had she ever been placed on a coaching plan or Performance Improvement Plan.  Prior to her termination, Ms. Waters had not received any notice that her job was in jeopardy.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 218:**

Further, male employees were not held to such stringent standards.  Campbell clearly favored Ms. Waters' male coworkers, including Bob Rudd and Eric Karlson, even though Ms. Waters was among Campbell's top performers.  For example, Campbell frequently says that Mr. Karlson, one of his new sales representatives, is "on his way to management."

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 219:**

Since the time Campbell became Ms. Waters' direct supervisor in approximately October 2003, Campbell favored the male employees and was extremely hostile towards Ms. Waters.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 220:**

In May 2004, while Ms. Waters was pregnant, she began experiencing difficulties with her pregnancy and requested four days off in June of 2004. Even though Ms. Waters submitted documentation from her physician to Campbell, Campbell accused Ms. Waters of incorrectly communicating with him regarding her days off. Campbell then wrote a code of conduct letter to Human Resources regarding the days Ms. Waters missed in June 2004. In his letter to Human Resources, Campbell made no mention of Ms. Waters' pregnancy difficulties.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 221:**

In July 2004, Campbell met with Ms. Waters and informed her that he was writing the code of conduct letter to Human Resources. During that meeting, Campbell berated Ms. Waters and threatened that her job was on the line.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 222:**

In July 2004, Ms. Waters informed Human Resources of Campbell's treatment of her. However, Human Resources dismissed Ms. Waters' complaint, advising her that she and Campbell should work their problems out amongst themselves.

68

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 223:**

In July 2004, Ms. Waters submitted a letter to Human Resources documenting the discussion she had with Human Resources and correcting information that Campbell had written in his letter of conduct. Ms. Waters also sent the letter to Campbell and Regional Manager Joe Shupp.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 224:**

From August to September 2004, Ms. Waters was out on disability leave. When Ms. Waters returned in September, Campbell's hostility towards her continued. For example, when Ms. Waters attended a 3-day meeting in Baltimore in September 2004, Campbell spoke with other sales representatives but would not speak to Ms. Waters.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 225:**

Further, even though her sales numbers were in the top 12% of the company, Campbell failed to acknowledge Ms. Waters' strong performance. Ms. Waters did not receive the positive feedback that other sales representatives were given. For example, in a Weekly Spotlight in September, Campbell recognized a male employee for having the highest weekly market share for the product Diovan when Ms. Waters actually had the highest market share for that product.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## J.    STEPHANIE CATES

### Background

**ALLEGATION NO. 226:**

Plaintiff Stephanie Cates ("Ms. Cates") was hired by Novartis in approximately April 2002 as a sales representative in Novartis' Chicago district.  Ms. Cates held that position until approximately August 2004, at which time she was constructively discharged.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 227:**

Throughout her employment at Novartis, Ms. Cates was adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures, which prevented Ms. Cates from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Denials of Promotion

**ALLEGATION NO. 228:**

Ms. Cates' District Manager, Eric Kizior ("Kizior"), continuously criticized her performance while her male co-workers, who performed at or below her performance level, were not subjected to such treatment.  In approximately February 2004, Ms. Cates applied for admittance into the Management Development Program.  Novartis denied Ms. Cates into the Management Development Program.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Disparate Pay

**ALLEGATION NO. 229:**

Upon information and belief, Ms. Cates received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

## Differential Treatment

**ALLEGATION NO. 230:**

On or about May 2003, Kizior unfairly placed Ms. Cates on a Performance Improvement Plan ("PIP"). Ms. Cates had not been placed on a Coaching Plan prior to her placement on the PIP which is standard Novartis procedure. Moreover, in February 2003, Ms. Cates had received a good rating on her Year End Review from her previous female supervisor, Annette Tsimouris. Upon knowledge and belief, Kizior did not place any of Ms. Cates' male co-workers on a PIP.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 231:**

Because Ms. Cates was placed on a PIP, she was not able to finish the third and final phase of her training as a sales representative, which is a prerequisite to qualifying for merit salary increases and promotions.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 232:**

Kizior treated Ms. Cates in a hostile manner during ride-alongs. Jack Augusty, Ms. Cates' male partner, and other male employees were not treated this way.

71

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 233:**

Upon information and belief, Kizior treated other female Novartis employees in a hostile manner.  For example, at a 2003 district planning meeting in Kansas City, Missouri, two female employees complained to Ms. Cates about Mr. Kizior's hostile attitude towards them.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 234:**

In addition, upon information and belief, both a female employee in Wisconsin and another in Illinois resigned within months of being assigned to Mr. Kizior's team because of his hostile treatment of them.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**K.     WENDY PINSON**

**Background**

**ALLEGATION NO. 235:**

Plaintiff Wendy Pinson ("Ms. Pinson") was hired by Novartis in approximately November 1999 as a sales representative in the Montgomery, Alabama sales district.  Ms. Pinson continues to work as a sales representative for Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

72

**ALLEGATION NO. 236:**

Throughout her employment at Novartis, Ms. Pinson has been adversely affected by the systemic pattern, and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which have prevented Ms. Pinson from advancing into higher and better paying positions for which she is qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Denials of Promotion

**ALLEGATION NO. 237:**

In approximately late 2002, Ms. Pinson asked District Manager Larry Greer ("Greer") about promotional opportunities. Greer told her that she could not be promoted because of her low numbers, even though he knew that all of the sales representatives in her territory had low numbers. Greer also knew that the low numbers were possibly attributable to factors outside of the sales force's control, such as the existence of three separate Canadian mail order pharmacies in the Dothan Territory. In addition, Greer assigned Ms. Pinson a partner with no sales experience, leaving her with little chance of boosting her sales numbers.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 238:**

On approximately February 9, 2005, Ms. Pinson asked Greer to consider her for the Management Development Program. Again, Greer told Ms. Pinson that she would not be considered because of her low numbers.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 239:**

Upon knowledge and belief, Ms. Pinson was only given a small salary increase in 2004 while her male co-workers, who performed at the same or lower levels than she did, received much greater salary increases.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 240:**

Upon information and belief, Ms. Pinson received less compensation than similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**Differential Treatment**

**ALLEGATION NO. 241:**

Greer advised Ms. Pinson that she did not qualify to receive reimbursement from Novartis for her MBA expenses because she was not among the highest ranking performers in the company. However, after checking with the Novartis benefits department, Ms. Pinson discovered that all Novartis salespeople are eligible for reimbursement, regardless of performance. When Ms. Pinson told Greer what she had discovered, Greer reluctantly signed her reimbursement paperwork.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**ALLEGATION NO. 242:**

Novartis's district managers hold Ms. Pinson and other females to a higher standard than their male co-workers. For example, District Manager Spencer Davidson placed Krista Botop ("Botop") on a Performance Improvement Plan ("PIP") and then terminated her in approximately

74

October 2004.  Botop's male partner, Chris Hudson, whose numbers were approximately the same, if not worse, than Botop's, was not terminated or ever placed on a PIP.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

## Gender Hostility

**ALLEGATION NO. 243:**

In approximately March 2003, Ms. Pinson was berated by Greer because a doctor she was dating was not prescribing her brand of drugs in a high enough proportion to other brands. Ms. Pinson explained that the doctor considered it a conflict of interest to switch his patients who had already been prescribed other medications to a new drug because of his romantic relationship with Ms. Pinson.  Greer told Ms. Pinson that other female sales representatives would have used the romantic relationship more successfully and that she should try harder.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 244:**

On approximately August 21, 2003, Ms. Pinson called Greer and told him that she had a broken leg and had to take time off from work for surgery and recovery starting the next day. Greer's response was hostile, and while Greer acknowledged that he did not have a choice in the matter, he advised Ms. Pinson that she really needed to be in the field.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 245:**

Despite her recent surgery; Ms. Pinson attended a meeting in Montgomery on or about August 23, 2003.  At the meeting, Greer saw, that Ms. Pinson was on crutches and unable to perform sales calls.  Nonetheless, later that day Greer left Ms. Pinson a voicemail advising her that Matt McNamara, the Regional Director, would be working with her on or about August 27, 2003.  Ms. Pinson had to request a three week leave of absence to recover from her broken leg in

75

order to avoid further work assignments from Greer that she obviously could not perform in her condition.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 246:**

On or about January 24, 2005, Greer advised Ms. Pinson that he would be riding with her the next day. Ms. Pinson told Greer to call her when he was getting close to the city of Enterprise so they could arrange to meet. Instead, Greer proceeded directly to the Enterprise Medical Clinic. When Greer arrived at the clinic, he called Ms. Pinson and chastised her for not being there, even though they had not set a specific time to meet nor had he called Ms. Pinson ahead of time as she had requested.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 247:**

When Ms. Pinson arrived at the clinic, Greer proceeded to criticize Ms. Pinson's character and intelligence and told her that she was not motivated to succeed because she had married a doctor.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**L.    ROBERTA VONLINTEL**

### Background

**ALLEGATION NO. 248:**

Plaintiff VonLintel ("Ms. VonLintel") was hired by Novartis in approximately late 1998 as a sales representative in the Kansas City West region. In 2001, Ms. VonLintel was promoted to senior sales representative. Ms. VonLintel was terminated by Novartis in approximately July 2003.

CHICAGO/#1337492.5

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 249:**

Throughout her employment at Novartis, Ms. VonLintel was adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including Novartis' discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures which prevented Ms. VonLintel from advancing into higher and better paying positions for which she was qualified.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Disparate Pay**

**ALLEGATION NO. 250:**

During her employment with Novartis, Ms. VonLintel discovered that her husband, a male Novartis coworker, was making a salary that was approximately $14,932.00 more than hers. Ms. VonLintel was paid a significantly lower salary despite the fact that she had 10 years more experience and higher performance evaluations than her male coworker.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 251:**

Upon information and belief, Ms. VonLintel received less compensation than other similarly situated male employees.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Differential Treatment

**ALLEGATION NO. 252:**

Throughout her employment with Novartis, male employees were given more prestigious tasks and responsibilities than female employees. For example, male employees ran most of the sales meetings Ms. VonLintel attended and gave almost all of the presentations, while female employees were denied such opportunities.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

### Gender Hostility

**ALLEGATION NO. 253:**

Ms. VonLintel's District Manager, Steve Papas ("Papas"), told her that Regional Director Ted Raad ("Raad") had instructed Papas to falsify documents so that he could terminate Marlis Hiltgen and Natalie McDougal, two female sales representatives. Papas refused to falsify the documents and subsequently resigned from Novartis.

**ANSWER:**

Novartis Corp. lacks knowledge and information sufficient to form a belief as to the

allegations contained in this Paragraph.

**VIII.   PLAINTIFFS' CLAIMS**

### COUNT ONE

### Classwide Claims Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended

**ALLEGATION NO. 254:**

Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

**ANSWER:**

Novartis Corp. reincorporates its answers to these paragraphs as though fully set forth in

response to this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 255:**

Novartis has discriminated against the Class Representatives and all members of the proposed class by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, discriminatory subjection to disciplinary procedures, disparate terms and conditions of employment, harassment, hostile work environments and other forms of discrimination in violation of Title VII.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 256:**

Novartis' conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 257:**

Novartis' policies, practices and/or procedures have produced a disparate impact against the Class Representatives and the class members with respect to the terms and conditions of employment.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 258:**

By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

CHICAGO/#1337492.5

**ALLEGATION NO. 259:**

By reason of the discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

**ANSWER:**

Novartis Corp. denies the allegations contained in this Paragraph.

**ALLEGATION NO. 260:**

The Plaintiffs demand trial by jury of all issues triable of right to a jury.

**ANSWER:**

Novartis Corp. admits that Plaintiffs demand a trial by jury, but deny that a trial is appropriate here.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1.    No Plaintiff may recover for any acts occurring more than 300 days prior to the day she filed her EEOC charge.

2.    Plaintiffs' claims are barred to the extent Plaintiffs have failed to exhaust the administrative prerequisites for filing suit under Title VII.

3.    Plaintiffs' claims are barred to the extent they are not like or reasonably related to the underlying EEOC Charges.

4.    Plaintiff Amy Velez is barred from recovery because her EEOC Charge was dismissed as untimely.

5.    Plaintiff Stephanie Cates falsified her employment application with NPC. Therefore, any back pay recovery by Cates would be cut-off as of the date this falsification is confirmed.

6.    Those Plaintiffs who are no longer employed by NPC have failed to mitigate their damages.

80

7.    The claims of any Plaintiff are barred to the extent any such individual has executed or, in the future executes, a release of employment-related claims.

8.    NPC exercised reasonable care to prevent and promptly correct alleged harassing behavior and Plaintiffs' claims are barred to the extent they unreasonably failed to take advantage of NPC's preventive and corrective opportunities, including but not limited to internal complaint procedures, or avoid harm otherwise.

9.    Plaintiffs are not entitled to punitive damages in that NPC has acted at all times with good faith efforts to comply with all laws prohibiting discrimination.

10.    Novartis Corp. is not a proper party Defendant because it did not employ any of the Plaintiffs or putative class members, and was otherwise not responsible for the employment actions or practices of which Plaintiffs complain.

11.    The venue of this action should be transferred to the District of New Jersey.

NOVARTIS CORPORATION

By: _____
        One of Its Attorneys

Richard H. Schnadig
Thomas G. Abram
Aaron R. Gelb
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
312-609-7500
312-609-5005 (facsimile)

Jonathan A. Wexler
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, New York 10022
212-407-7700
212-407-7799 (facsimile)

Dated:  April 18, 2005

CHICAGO/#1337492.5

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served on April 18, 2005 via

Overnight Mail in a prepaid envelope, correctly addressed to the following:

Jeremy Heisler, Esq.
**SANFORD, WITTELS & HEISLER, LLP**
545 5th Ave
Suite 960
New York, NY 10017
(646) 456-5695

Grant Morris, Esq.
**LAW OFFICES OF GRANT E. MORRIS, ESQ.**
2121 K St., N.W.
Suite 700
Washington D.C. 20037
(202) 331-4707

Jonathan A. Wexler

- 82 -