**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMY VELEZ, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, WENDY PINSON, ROBERTA VONLINTEL, ASHLEY NARMOUR, CATHERINE WHITE, KELLY CORBETT, SUE EARL, JAMIE HOLLAND, JOAN DURKIN, SIMONA LOPES, MARYANNE JACOBY and MARTA DEYNE, | 04 Civ. 09194 (GEL) |

**Individually and on Behalf of Others Similarly Situated,**

                    **Plaintiffs,**

**v.**

**NOVARTIS PHARMACEUTICALS CORPORATION,**

                    **Defendant.**

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     OVERVIEW OF CLASS CLAIMS ................................................................... 3

    A.      Subjectivity at Novartis .......................................................................... 3

    B.      Pay Discrimination .................................................................................. 6

    C.      Pregnancy Discrimination ....................................................................... 8

III.    ARGUMENT ...................................................................................................... 10

    A.      The Court Must View All Evidence, Including That Of The Statistician, In
           The Light Most Favorable To Plaintiffs ............................................ 10

    B.      Plaintiffs Provide Evidence Sufficient to Establish a Prima Facie Case of
           Class-wide Pay Discrimination ........................................................... 12

        (1) Failure to Identify and Measure a Specific Policy or Procedure Responsible
            for the Observed Pay Disparity ..................................................... 13

            (a) Systemic Disparate Treatment ................................................. 14

            (b) Disparate Impact ...................................................................... 15

        (2) Inclusion of All Components of Compensation in the Compensation
            Regression ....................................................................................... 16

        (3) Exclusion of Employees Who Worked Less Than a Full Year ..................... 18

    C.      Plaintiffs Provide Evidence Sufficient to Establish a Prima Facie Case of
           Class-wide Pregnancy Discrimination ............................................... 18

IV.     CONCLUSION .................................................................................................. 21

## Cases

Amnesty  Am. v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004)................................... 10, 11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................ 10

Book v. Tobin, No. 06-2289-CV, 2008 WL 345482 (2d Cir. Feb. 8, 2008) ............................... 18

Burlington Indus. v. Ellerth, 524 U.S. 742 (1998) ...................................................................... 20

Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999)....................................... 16

Carter v. Newsday, Inc., 528 F. Supp. 1187 (E.D.N.Y. 1981) .................................................... 20

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ............................................................. 10

Coble v. Hot Springs Sch. Dist. No. 6, 682 F.2d 721 (8th Cir. 1982) ........................................ 18

Cokely v. NY Conven. Cnt'r Operating Corp., No. 00 Civ. 4637 (CBM), 2003 WL 1751738
    (S.D.N.Y. Apr. 2, 2003)........................................................................................................ 20

Dallas Aero., Inc., v. CIS Air Corp., 352 F.3d 775 (2d Cir. 2003)............................................. 10

Darrell v. Consol. Edison Co., No. 01 Civ. 8130 (JGK), 2004 U.S. Dist. LEXIS 8934 (S.D.N.Y.
    May 15, 2004)....................................................................................................................... 15

EEOC v. Carrols Corp., No. 5:98 CV 1772, 2005 WL 928634 (N.D.N.Y Apr. 20, 2005) .......... 10

Employees Committed for Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423, 430 (W.D.N.Y.
    2005) ............................................................................................................................... 19, 20

Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006)................................................... 15

Harris v. Forklift Sys., 510 U.S. 17 (1993)................................................................................. 19

Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984)................................................................ 18

Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001) ....................................................... 19

Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000) ......................................................... 11

In re Joint E. & S Dist. Asbestos Lit., 52 F.3d 1124 (2d Cir. 1995)............................................ 11

In re W. Dist. Xerox Litig., 850 F. Supp. 1079 (W.D.N.Y. 1994) ............................................... 20

Int'l Bhd of Teamsters v. United States, 431 U.S. 324 (1977)............................................... 14, 20

James v. Stockham Valve & Fitting Co., 559 F.2d 310 (5th Cir. 1977)....................................... 16

King v. General Electric Co., 960 F.2d 617 (7th Cir. 1992)........................................................ 20

Krikelis v. Vassar College, No. 06 Civ 4203 (RPP), 2009 U.S. Dist. LEXIS 9597 (S.D.N.Y. Feb.
    10, 2009) .............................................................................................................................. 16

Larson v. Simond Indus., 337 F. Supp. 2d 331 (D. Mass. 2004)................................................. 12

Ledbetter v. Goodyear Tire, 550 U.S. 618 (2007) ...................................................................... 16

Malave v. Potter, 320 F.3d 321 (2d. Cir. 2003)............................................................... 13, 14, 15

Meacham v. Knolls Atomic Power Lab., 381 F.3d 56 (2d Cir. 2004)........................................... 15

Munn v. Marine Midland Bank, N.A., 960 F.Supp. 632 (W.D.N.Y. 1996) .................................. 12

N. Shore Concrete and Ass'n., Inc. v. City of N.Y., No. 94 CV 4017, 1998 WL 273027
    (E.D.N.Y. Apr. 12, 1998)...................................................................................................... 20

New York City Transit Authority v. Beazer, 440 U.S. 568 (1979) ............................................... 13

Ottaviani v. State University of New York, 875 F.2d 365 (2d Cir. 1989)..................................... 20

Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990) ............................................................ 10

Pollis v. New Sch. for Soc. Research, 132 F.3d 115 (2d Cir. 1997)............................................ 18

Ross v. Nikko Sec. Co. Int'l, Inc., 133 F.R.D. 96 (S.D.N.Y. 1990)............................................. 20

Segar v. Smith, 738 F.2d 1249 (D.D.C. 1984)...................................................................... 14, 16

Shrader v. CSX Transp., 70 F.3d 255 (2d Cir. 1995) ................................................................. 18

Smith v. Guilford Bd. of Educ., 226 Fed. App'x. 58 (2d Cir. 2007)............................................ 18

Smith v. Xerox Corp., 196 F.3d 358 (2d Cir. 1999) ................................................................... 15

St. Pierre v. Dyer, 208 F.3d 394 (2d Cir. 2000)......................................................................... 10

Ste. Marie v. Eastern R.R. Ass'n, 650 F.2d 395 (2d Cir. 1981) .................................................... 20

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)..................................................... 14

U.S. v. Diebold, Inc., 369 U.S. 654 (1962)................................................................................. 11

Velez, et al. v. Novartis Pharmaceuticals Corp., 244 F.R.D. 243 (S.D.N.Y. 2007) ..................... 11

Victory v. Hewlett-Packard Co., 34 F.Supp.2d 809 (E.D.N.Y. 1999)......................................... 12

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245 (2d Cir. 1992) ........................ 18

Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (U.S. 1989) ................................................... 13

Watson v. Ft. Worth Bank & Trust, 487 U.S. 977 (1988) ........................................................... 15

Williams v. County of Westchester, 171 F3d 98 (2d Cir. 1999) .................................................. 20

Wright v. Stern, 450 F. Supp. 2d 335 (S.D.N.Y. 2006)........................................................ 19, 20

## Statutes

Civil Rights Act of 19911, 1991 U.S.C.C.A.N. at 711 ................................................................. 11

## Other Authorities

Finkelstein, The Judicial Reception of Multiple Regression Studies in Race and Sex
  Discrimination Cases, 80 COLUM. L. REV. 737 (1980)......................................................... 16

U.S. Census Bureau, "Public Use Microdata Sample: 2000 Census of Pupulation and Housing,"
  at 1-1 (Oct. 2008), http://www.census.gov/prod/cen2000/doc/pums.pdf ................................ 18

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................................. 10

## I.      INTRODUCTION

In its Motion for Partial Summary Judgment ("Defendant's Motion"), Novartis Pharmaceutical Corporation ("Novartis" or "Defendant") misrepresents the evidence and misconstrues the law to argue that Plaintiffs suffer from an "absence" of evidence.  This is not a case, as Defendant would have this Court believe, that rests on one "snapshot," "baseline" statistical analysis that is so methodologically and legally flawed as to be entirely useless.  Nor is it a case, as Defendant argues, where Plaintiffs have submitted a handful of isolated and hearsay-riddled declarations.

To the contrary, during the two years of class certification discovery and one and a half years of merits discovery, Plaintiffs have obtained overwhelming documentary, testimonial, and statistical evidence that demonstrates Novartis' culture of discriminating against women.  In addition to the seven regressions and three statistical analyses in Dr. Lanier's three reports and the expert report of Dr. Martin, Plaintiffs have produced the statements and/or testimony of ninety-six class members and representatives, each of whom has suffered discrimination at the hands of Novartis and each of whom tells a story that is striking in its similarity to the others.

Despite the voluminous record evidence offered by Plaintiffs, Defendant failed to be mindful of this Court's cautionary comments at the most recent status conference that any motion to decertify the class claims would face a high hurdle.  Instead, Novartis rehashes arguments from its opposition to class certification briefing to bring the present "Motion for Partial Summary Judgment."

Regardless of whether the motion is styled as a motion to decertify or a motion for summary judgment, this Court has already considered and rejected the precise challenges to Plaintiffs' evidence Defendant raises in the instant Motion. Defendant's challenge to Plaintiffs' pay disparity claims implicates a battle of the experts this Court, in its Opinion and Order

granting class certification ("Opinion"), ruled is precisely the sort of 'statistical dueling' that should be resolved by a factfinder."[1] Op. at 28; <u>see also</u> Op. at 29 ("the accuracy of [Lanier's] conclusion identifying classwide discrimination presents a factual issue for trial"). Similarly, although Novartis asks the Court to dismiss the pregnancy discrimination claims, it raises no new legal challenge to Plaintiffs' certified pregnancy claims. Nor does it address or try to counter in any way the ample anecdotal evidence Plaintiffs provided in support of their pattern or practice hostile work environment claims.

Defendant recognizes that there are significant triable class promotion claims. Accordingly, Novartis does not seek the dismissal of Plaintiffs' class claims regarding promotions into managerial positions. <u>See</u> Defendant's Motion at 3. It is thus unavoidable that a class trial will occur. Defendant's claim that eliminating other class claims would "streamline" the process for trial is specious; any trial on a class claim will require the testimony of scores of witnesses – all of whom will need to testify generally about the over-delegation of discretion to management and their experiences of discrimination. However, in a major concession, Plaintiffs hereby concede class claims with respect to promotions within the sales force ("leveling").[2]

Accordingly, the only class claims in contention in this briefing are those regarding pay disparities and pregnancy discrimination. As is discussed herein, the record is replete with evidence supporting these class pay and pregnancy claims. This evidence is far more than is needed to succeed at the summary judgment stage. Thus, Defendant's Motion should be denied with respect to class pay claims and class pregnancy discrimination claims.

---

[1] This statistical evidence, already deemed sufficient by the Court, is further bolstered by the ample anecdotal evidence collected during the merits discovery phase from both Plaintiffs' and Defendant's witnesses.

[2] It is Plaintiffs' determination that claims regarding promotion discrimination within the sales force are best dealt with on an individual level.

## II.      OVERVIEW OF CLASS CLAIMS

On July 31, 2007, this Court granted Plaintiffs' class certification motion in its Opinion and Order ("Opinion"), certifying a class of Novartis' female sales personnel (including entry-level managers) on claims of (1) pay discrimination, (2) promotion discrimination within the sales force ("leveling"); (3) promotion discrimination out of the sales force into management; and (4) pregnancy discrimination (excluding pay discrimination).  Notice to the class was sent in November of 2007,[3] and the class consists of approximately 5,600 members.   The parties have conducted 72 depositions and exchanged approximately 3,105,941 pages of paper discovery.

As noted above, the two class claims at issue in this briefing are (1) within-job pay claims, and (2) pregnancy discrimination.   The overdelegation of discretion and excessive subjectivity that marks the entirety of Novartis' human resources system enables and yields both the gender-based pay and pregnancy discrimination.

### A.      Subjectivity at Novartis

The delegation to supervisors, pursuant to company-wide policies, of the authority to make subjective decisions regarding employee management, evaluation, compensation and promotion makes the class-wide discrimination possible.  Plaintiffs' Counterstatement of Fact ("CSOF") ¶¶ 7, 9, 11, 18-22.  Dr. David Martin's report, proferred by Plaintiffs at the class certification stage, was "offered to show the flaws in the system's structure. . . [and] how the system makes discrimination possible."  Op. at 24.  The Court has ruled that the question of

---

[3] When Plaintiffs sent notice to the class in November 2007, the class period was listed as running through November 30, 2007.  However, nothing limits the fact that damages may accrue after the close of the class period for class members still at Novartis.  Evidence demonstrates that Novartis has not acted to curb its overly-subjective personnel management system or its non-responsive HR department.  Nor has Novartis acted in any meaningful way to investigate or respond to the allegations raised by the Complaint.  CSOF ¶ 84.

whether or not Dr. Martin's report was sufficiently persuasive in its analysis of the systemic flaws at Novartis "is ultimately a question for the jury."[4]  Opinion at 24.

Novartis concedes the widespread delegation of discretion in its human resources and personel maangement system.   CSOF ¶7.   Defendant's own witness testified that the performance evaluation system is predominantly subjective, and that different managers would likely evaluate the same Rep differently.  CSOF ¶ 7.   Access to transfers are subject to the discretion of its line managers.   Id.   Novartis admits that "there are no Company-wide requirements for nomination" into the management development program.   Op. to Class Certification Brief at 14.  Moreover, Defendant recognizes that it permits extensive managerial discretion and inherent subjectivity with respect to pay decisions.[5]  Defs.' Opp'n 9.

Similarly, there is significant testimony from class members about the excessive discretion that managers wield.  CSOF ¶¶ 7, 9, 11, 18-22.  Plaintiffs testified that, as gatekeepers, managers controlled how much they would receive in pay, how their performance would be regarded by the company, and whether they would be eligible for a transfer or promotion.  CSOF ¶¶ 7, 19-21.  Plaintiffs' anecdotal evidence demonstrates how a change in manager can result in a drastic change in the perception of and treatment of an employee by the company.  Where there was a strong, high-performing employee with one manager, there is suddenly a weak, low-performing employee with another – even where the overall sales results remain relatively constant.

---

[4] This Court did not, as Defendant alleges in a footnote of page 19 of its memorandum, conclude that Plaintiffs cannot rely on Dr. Martin's testimony.

[5] While Defendants argue that managers receive "pay ranges" for various job categories and "guidelines" for awarding merit pay increases, they cannot refute the contention that the application of these guidelines is anything but discretionary.  Defs.' Opp'n 8-9.  Thus, by Defendants' admission, the pay structure at Novartis leaves wide room (or "range" in Novartis' language) for managerial discretion.

Moreover, class members are almost entirely dependent upon interactions with their district managers and have little access to meaningful oversight from either the Human Resources Department or the Regional Directors. CSOF ¶7, 68, 77-87. Novartis' Human Resources Department is perceived to be non-responsive and likely to side with management against sales reps. CSOF ¶69, 77. This perception is supported not only by Plaintiffs' witnesses who reached out to HR for help, but also by the testimony of Defendant's own witnesses. For example, Defendant's Managers and Regional Directors, many of whom had been with Novartis for at least ten years, could not come to consensus on even basic questions such as whether Reps can report complaints to HR anonymously. CSOF ¶ 87. Even more shocking, not a single Manager or Regional Director could cite one example of HR investigating – let alone disciplining – Novartis management for discriminatory behavior. CSOF ¶ 85. Instead, to the extent that Managers or Regional Directors had interactions with HR, HR served to back up whatever decision or action management had taken. CSOF ¶¶ 79, 84, 90.

Along with Dr. Martin's expert sociological opinion and the extensive anecdotal evidence, there is also statistical evidence to support Plaintiffs' claims. Dr. Lanier measured the ways in which the over-delegation of discretion to managers negatively effected women in terms of (1) performance evaluations and (2) access to the Management Development Program ("MDP"), a precursor for promotions into management. Lanier Rep., Tables 10, 11. While Novartis may take issue with the methodology used by Dr. Lanier in his analysis of performance evaluations, this Court has already ruled that "it cannot be said that Lanier's report is insufficient to present a serious question for the factfinder to resolve."[6] Op. at 27. Likewise, this Court

---

[6] Defendant argues that Dr. Welch's 2009 analysis regarding performance scores (1) eliminates Dr. Lanier's evidence on the same and (2) should be taken as conclusive proof that there was no discrimination in the performance rating system during the class period. D. Mot. at 18-19. First, Novartis misrepresents the requirements imposed on statisticians under a disparate impact theory (discussed *infra* at III(B)(1)(b)) and so wrongly asks the

previously ruled that Defendant's objections and critiques with regard to Dr. Lanier's analysis of access to MDP are "specious" and that Defendant points to "no inaccuracies or implausibilities." Op. at 33.

Plaintiffs also provide expert evidence, discussed below, of statistically-significant pay and promotion disparities that support the inference either (1) that Novartis is discriminating intentionally or (2) that the overdelegation of discretion yields discriminatory results. Thus, Plaintiffs offer substantial proof – in statistical, sociological, and anecdotal form – to meet the evidentiary standard at the summary judgment stage. That evidence is sufficient to prove Plaintiffs' claims under either a systemic disparate treatment theory or under a disparate impact theory.

**B.      Pay Discrimination**

There are significant statistical disparities in how Novartis compensates women when compared to similarly situated men. CSOF ¶¶ 39, 42, 47, 48, 49, 51, 52, 53. Specifically, Dr. Lanier's analyses of the pay disparities at Novartis between female employees and similarly situated men revealed:

---

Court to disregard Dr. Lanier's analyses of performance evaluations. Id. at 18. Second, to the extent that Dr. Welch's 2009 analysis demonstrates no statistically significant discrimination in performance scores, that analysis (shown in Welch Tables 1 and 2a-2b), would support ***only the limited conclusion*** that the performance evaluation system did not propagate discrimination for the final two years of the class period (2006 and 2007). Dr. Lanier's analysis (shown in Lanier Table 11) -- using identical methodology to that used by Welch in 2009 -- demonstrated statistically significant disparities for the years 2002-2005.

Moreover, to the extent this analysis is credited, Dr. Welch's finding of no statistically significant discrimination in the final two years of the class period supports an inference beneficial to Plaintiffs. Plaintiffs allege that the unnecessary overdelegation of discretion, without sufficient oversight or controls, makes discrimination possible. If Novartis has reigned in this discretion – and discrimination – in the area of performance evaluation scores subsequent in the years to the filing of the suit, Novartis has demonstrated, by its own actions, that aggressive oversight and less delegation of discretion *can* eliminate disparate results. That it failed to act similarly with respect to pay and managerial promotions is illustrative of the need for this litigation to force change at Novartis.

|  | Excess Dollars Paid To Men Per Month | Standard Deviations |
|---|---|---|
| **Within-Job Pay Disparities** | $74.82 | 5.4 |
| **Across-Job Pay Disparities** | $214.68 | 9.4 |

- Drawn from Tables 1 and 5 of the Lanier Declaration

Although Dr. Lanier found evidence of statistically-significant pay disparities across jobs, the cornerstone of Plaintiffs' evidence regarding pay discrimination is Dr. Lanier's analysis of within-job pay disparities.[7]  In his within-job pay analysis, Dr. Lanier controlled for differences in company tenure, tenure in a particular Novartis job, prior workforce experience, unpaid leave taken in a year and paid leave taken in a year. Counter SOF at 48.   Moreover, because of the way Dr. Lanier designed the controls to allow for variations in the interactions of different variables, his within-job regression actually controls for hundreds of variables which might provide a non-discriminatory reason for the otherwise observable gender disparities.  Id.

During the class certification stage, Novartis argued that a dollar disparity of $74.82 per month was insignificant.  In response, the Court stated:

> a significant disparity of $74.82 per month remains even after adjustment for job level.  Defendants argue that $74.82 is only 1% less than the average male earnings of $7,463 per month.  Plaintiffs respond, however, that the difference is significant to 5.4 standard deviations, and **of course even discrimination that costs its victims only $897.84 per year is unlawful and compensable under Title VII**.

Op. at 28 (emphasis added).  In fact, the final cost of the within-job pay disparities at Novartis is far more than might be expected when considering the damages at such a disaggregated level; Dr. Lanier has calculated more than $42 million dollars in damages associated with within-job pay disparities in his 2009 Damages Report.  Damages Rep. at 9.

---

[7] 5.4 standard deviations, which represents the odds of *a less than one in 15 million chance* that the results are attributable to random chance, is more than sufficient for a finding of liability in any court.  See *infra* at III(B)(1)(a).  Nor can Defendant claim that the significance of the disparity dissipated over the course of the class period.  When calculating class damages as a part of damages discovery utilizing this same statistical methodology, Dr. Lanier found the underlying disparity had increased to 7.7 standard deviations (odds of less than a one in 73 trillion).  Damages Report at 6.

7

There is, again, ample anecdotal evidence supporting Plaintiffs' pay discrimination claims. As this Court acknowledged in its Opinion on class certification, the anecdotal evidence already in the record at that stage was "significant," and it provided support to both Plaintiffs' "contention that the discretion allowed to managers by NPC's personnel management system was abused" and "'texture' to the statistics."). Op. at 30, 34. That anecdotal evidence is even more voluminous now. CSOF ¶¶ 7, 9-11, 13, 16, 18-24, 32-36, 38-39, 47, 49. Plaintiffs have also accumulated documentary proof of pay discrimination. CSOF ¶ 34.

### C. Pregnancy Discrimination

In its Opinion on Class Certification, this Court certified for class treatment Plaintiffs' allegations regarding "denial of promotions and promotional opportunities, 'stricter scrutiny,' hostile comments, unreasonable discipline, and 'adverse employment actions' upon return" Suffered by female employees prior to and after returning from pregnancy leave. Op. at 38. The Court found persuasive Plaintiffs' declarations regarding pregnancy discrimination offered in support of these claims.[8] Op. at 41 n.20. Moreover, this Court ruled that the question of whether the declarations provided were "ultimately convincing" was a question for the factfinder.[9] Op. at 42.

Novartis fosters a pervasive hostility against pregnant woman. CSOF ¶ 68, 69. This hostility manifests itself in an appreciable and articulated norm that getting pregnant and having young children is a negative step to be avoided at all costs. CSOF ¶¶ 7 (at 14-16), 68, 73, 74. In fact, witness Christine Macarelli's manager referred to her young son as "an unfortunate

---

[8] This Court also noted in its Opinion, the "significant statistical evidence of other forms of gender discrimination sheds light on [Plaintiffs'] anecdotal evidence of pregnancy discrimination." Op. at 42.

[9] As Defendant notes in its Motion, Plaintiffs proffered no additional statistical evidence that isolated the experience of pregnant women. Plaintiffs believe that the pay and promotion disparities experienced by pregnant women are adequately captured by the statistical analyses regarding pay and promotion disparities experienced by women in general at Novartis. Plaintiffs only seek to proceed with discrete pregnancy claims under the theoretical model of a pattern or practice hostile work environment claim. Such a claim captures all of the "'stricter scrutiny,' hostile comments, unreasonable discipline, and 'adverse employment actions'" certified by the Court.

8

circumstance," when explaining why her options at Novartis would be limited.  Id. at 14-15; CSOF ¶76.  NPC Regional Director McCrary -- echoing this assessment -- commented, "*I don't know how women with children think they can do this job*." CSOF ¶ 74.  Acknowledging the pervasive nature of this hostility, witness Christine Coyle testified, "I felt like I had a scarlet letter on just because I was pregnant."  CSOF ¶ 67.

Human Resources is non-responsive to Plaintiffs' concerns; instead, it is complicit in fostering this hostile work environment.  CSOF ¶ 69, 82-83.  Nor does HR provide the training and guidance necessary to prevent such a severe and pervasive hostile work environment.  CSOF ¶¶ 77-79, 82-83.  For example, Novartis policy allows managers to consider "mitigating circumstances" when evaluating and interacting with Reps and when making compensation decisions but does not train its managers on whether or how this discretion can or should be applied to women who must go out of the field for maternity leave.  CSOF ¶ 7 at 16-17.  Accordingly, Reps receive disproportionately negative evaluations and feedback once Novartis learns they are pregnant and/or after they return from leave.  Id.  For example, multiple Reps found that they received a "1" on a performance review – which is supposed to reflect sub-par performance – as a result of taking maternity leave, or otherwise found managers assessing them more harshly after they announced their pregnancy.  CSOF ¶¶ 16, 66, 71.

Reps also were subject to heightened scrutiny, harsher management and inappropriate comments when they became pregnant and after they returned from maternity leave.  CSOF ¶ 67, 74, 75.  For many Reps, informing their managers that they had become pregnant was an experience they dreaded, as the managers were known to – and did – respond negatively.  CSOF ¶ 68.  The basest of all responses was that suffered by Ms. Macarelli, whose manager told her, upon learning she was pregnant, that he thought she should get an abortion.  Id.  Reps testified

about being punished by their managers for becoming pregnant and/or for taking maternity leave. CSOF ¶ 70, 72.  Managers, in their capacity as gatekeepers, have utilized their discretion to deny transfers and to deny jobshares and other alternative work arrangements.  CSOF ¶¶ 72, 73.

The totality of Plaintiffs' anecdotal evidence reveals a hostile work environment that is so severe and pervasive at a systemic level that it almost defies belief.

## III.    ARGUMENT

### A.    The Court Must View All Evidence, Including That Of The Statistician, In The Light Most Favorable To Plaintiffs

When ruling on a motion for summary judgment, a district court is only able to grant such a motion where there is no genuine issue of material fact and where the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Thus, the examination in the present matter is an evidentiary one that looks to see whether Plaintiffs have proffered sufficient proof to create a genuine issue of material fact with respect to the (1) pay claims and (2) pregnancy claims.

The Second Circuit requires district courts "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see also Dallas Aero., Inc., v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003); St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000); Pirone v. MacMillan, Inc., 894 F.2d 579, 582 (2d Cir. 1990).  This requirement is embedded in federal jurisprudence.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("**evidence of the nonmovant is to be believed**, and all justifiable inferences are to be drawn in his favor") (emphasis added).

Where a district court fails to properly consider and weigh the evidence in the light most favorable to the non-moving party, appellate courts have readily overturned the lower court's

grant of summary judgment.  See, e.g., U.S. v. Diebold, Inc., 369 U.S. 654 (1962) (overturning a district court's grant of summary judgment as the lower court drew inferences contrary to the non-moving party); Amnesty Am, at 113  (overturning district court's grant of summary judgment as the lower court disregarded evidence in the record favorable to the non-moving party); Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000) (overturning district court's grant of summary judgment as the lower court failed to view the evidence in the light most favorable to and failed to give credit to permissible inferences that could be drawn in favor of the non-moving party).   When the plaintiffs are acting as private attorneys general to enforce Title VII and other civil rights laws, the stakes are particularly high.  See generally, Civil Rights Act of 19911, H.R.REP. NO. 102-40(II) at 18 (1991), *reprinted in* 1991 U.S.C.C.A.N. at 711 ("The individual Title VII litigant acts as a "private attorney general" to vindicate the precious rights secured by that statute. It is in the interest of American society as a whole to assure that equality of opportunity in the workplace is not polluted by unlawful discrimination. Even the smallest victory advances that interest.")

Rule 56's directive that the evidence be viewed in the light most favorable to the non-moving party and that inferences be drawn in favor of the non-movant applies **equally to statistical evidence** as it does to other forms of evidence.  When evaluating statistical evidence, district courts should be wary of becoming enmeshed in a battle of the experts.  Disputes regarding appropriate statistical methodology, control, or interpretation of results are "the sort of 'statistical dueling' that should be resolved by a factfinder."   Velez, et al. v. Novartis Pharmaceuticals Corp., 244 F.R.D. 243 (S.D.N.Y. 2007); see also In re Joint E. & S. Dist. Asbestos Lit., 52 F.3d 1124, 1135 (2d Cir. 1995) ("**Trial courts should not abrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing**

**sides in the battle of the experts**.") (internal quotation marks and alterations omitted) (emphasis added); <u>Larson v. Simond Indus.</u>, 337 F. Supp. 2d 331, 336 (D. Mass. 2004); <u>Victory v. Hewlett-Packard Co.</u>, 34 F.Supp.2d 809, 824 (E.D.N.Y. 1999); <u>Munn v. Marine Midland Bank, N.A.</u>, 960 F.Supp. 632, 641 (W.D.N.Y. 1996).

### B.   Plaintiffs Provide Evidence Sufficient to Establish a Prima Facie Case of Class-wide Pay Discrimination

Defendant argues generally that Plaintiffs "have failed to "make a showing sufficient to establish the existence of [every] (sic) element essential to [Plaintiffs'] case and on which [Plaintiffs] will bear the burden of proof at trial."  D. Mot. at 8.  More specifically, Novartis claims that Plaintiffs "have proffered <u>no</u> legally sufficient statistical or expert evidence" to support its claims and "have offered <u>no</u> statistical or expert analyses" to rebut the evidence it has proffered in defense. D. Mot. at 20.  Yet Defendant's critiques of Dr. Lanier's methodology are insufficient to discredit Dr. Lanier's statistical analyses -- let alone defeat Plaintiffs pay claim altogether -- at the summary judgment stage.

Defendant initiates its challenge to Plaintiffs' pay claims by stating that Plaintiffs provided "*no* expert studies that discretely analyze employees' base salaries or merit pay increases.  Plaintiffs' sole statistical evidence. . . was Dr. Lanier's two 'snapshot' comparisons of total compensation received by males and females in the years 2002-2004."  D. Mot. at 13.  In fact, Dr. Lanier provided highly refined statistical analyses of compensation that include – but do not disaggregate unnecessarily – base salary and merit pay.  All but one of Dr. Lanier's analyses are highly refined regression studies, rather than the sort of basic, unsophisticated "snapshot comparisons" Defendant alleges.  Moreover, Dr. Lanier's analyses of within-pay job disparities

(Tables 1-3) were calculated for the years 2002-2005 – not 2004 as suggested by Defendant.[10]  It is these statistical analyses in Tables 1-3 on which Plaintiffs' ground their pay discrimination claims.

Novartis challenges the sufficiency of Dr. Lanier's within-job pay regressions on three bases.  First, Novartis critiques Dr. Lanier's alleged failure to identify and measure a specific policy or procedure responsible for the observed pay disparity.  Second, Novartis criticizes Dr. Lanier's inclusion of all components of compensation in his compensation regression.  Third, Novartis critiques Dr. Lanier's exclusion of employees who worked less than a full year.  None of these challenges, however, implicates the sorts of gross defects that would allow this Court to disregard Dr. Lanier's analysis and accept Dr. Welch's analysis at the summary judgment stage.[11]

>   (1)   Failure to Identify and Measure a Specific Policy or Procedure Responsible for the Observed Pay Disparity

Defendant first suggests that Dr. Lanier's analysis is insufficient because he does not, himself, identify a policy or practice he believes to be the cause of the disparities he observes and does not design a regression analysis wherein that policy or procedure is quantified and measured.  D Mot. at 14-15.  Under either a theory of disparate treatment or disparate impact, this critique is invalid as a matter of law.

---

[10] Dr. Lanier replicated this methodology when calculating damages for the entire class period of 2002-2007.  He changed "none of the methods of analysis or assumptions underlying [his] earlier reports and declaration. . . only the data have changed."  Damages Report at 2-3.  The statistical significance of the underlying analysis did not decrease when calculating damages for the entire period.

[11] Where the court properly rejects the statistical evidence, the insufficiencies in the analysis are gross.  See, e.g., Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 655 (U.S. 1989) (Plaintiff did not provide regression analysis and instead provided baseline percentage analysis); New York City Transit Authority v. Beazer, 440 U.S. 568, 586-87 (1979) (Plaintiff did not provide regression analysis and the baseline percentage analysis provided did not control for the group in question.); Malave v. Potter, 320 F.3d 321, 326 (2d Cir. 2003) ("it was error for the District Court to have rejected out of hand Malave's statistical analysis simply because it failed to conform to the *preferred* methodology.") (emphasis added).

(a) Systemic Disparate Treatment

Simply put, Defendant's critique has no role in a disparate treatment analysis.  To establish a prima facie case of disparate treatment in compensation, plaintiffs need only provide statistical evidence that supports the inference that discrimination is "the standard operating procedure" of the defendant.[12]  Int'l Bhd of Teamsters v. United States, 431 U.S. 324, 336 (1977).  Such evidence is typically provided in the form of refined statistical regressions that demonstrate disparities at a rate of 2.0 standard deviations or higher.  Malave v. Potter, 320 F.3d 321, 327 (2d Cir. 2003) (noting that standard deviations of two or more are typically "sufficient to warrant an inference of discrimination.").

Once plaintiffs have made a prima facie showing, the defendant then

must present sufficient evidence to permit the trier of fact to decline to draw the inference of discrimination from the plaintiffs' proof.  But in the class action pattern or practice case **the strength of the evidence sufficient to meet this rebuttal burden will typically need to be much higher** than the strength of the evidence sufficient to rebut an individual plaintiff's low-threshold *McDonnell Douglas* showing.

Segar v. Smith, 738 F.2d 1249, 1269 (D.D.C. 1984), *cert denied* 417 U.S. 1115 (1985) (emphasis added).  Moreover, as the Supreme Court explained in Burdine, even after defendant offers such rebuttal evidence, "we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. . . Indeed, there may be some cases where plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice…"  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981).

Thus, Defendant's critique that Dr. Lanier did not identify nor quantify or otherwise measure in his regressions a neutral policy or procedure is wholly inapplicable to the disparate

---

[12] Of course, anecdotal evidence also comes into play bring "the cold numbers convincingly to life," Teamsters at 338, and to provide "texture to the statistics," Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 168 (2d Cir. N.Y. 2001).

treatment analysis, where plaintiffs need only demonstrate a result of statistical significance sufficient to infer that discrimination is the regular operating procedure of Novartis.

(b)     Disparate Impact

Similarly, this critique misapplies the prima facie requirements of disparate impact. To establish a prima facie case of disparate impact, plaintiffs must (1) identify a policy or practice that makes discrimination possible; (2) demonstrate that a disparity exists; and then (3) establish a causal relationship between the policy or practice and that disparity.  Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006).  To meet the second and third prongs, "the plaintiff may submit statistical data to show a disparity in outcome between groups, but to establish a prima facie case 'the statistical disparity must be sufficiently substantial to raise an inference of causation.'"  Darrell v. Consol. Edison Co., No. 01 Civ. 8130 (JGK), 2004 U.S. Dist. LEXIS 8934 (S.D.N.Y. May 15, 2004) (citing Malave); Meacham v. Knolls Atomic Power Lab., 381 F.3d 56, 76 (2d Cir. 2004) ("Statistical disparity alone -- assuming it is substantial as it was here -- raises an inference of causation.").

The challenged policy or practice may be that the system in general is overly subjective. See Watson 487 U.S. at 989 (1988); Smith v. Xerox Corp., 196 F.3d 358, 368 (2d Cir. 1999) ("an employer's overall decision-making process [can serve] as the cause of a disparate impact if the plaintiff can show that the elements of the employer's decision-making process are not capable of separation for analysis."); Malave v. Potter, 320 F.3d 321, 327 (2d Cir. 2003) (same). Where the overdelegation of discretion and the subjectivity of the system as a whole is challenged, the statistical evidence need not, as defendant suggests, provide statistical regressions that somehow quantify subjectivity as a variable in the analysis. See Caridad v.

Metro-North Commuter R.R., 191 F.3d 283, 292 (2d Cir. 1999) ("Where the decision-making process is difficult to review because of the role of subjective assessment, significant statistical disparities are relevant to determining whether the challenged employment practice has a class-wide impact.") (overruled on other grounds).

Thus, it is the Plaintiffs' burden -- not the statistician's burden -- to identify the neutral policy or procedure in question. Moreover, there is no requirement that the statistician quantify and measure in a regression the precise policy or procedure challenged. Instead, a strong enough statistical disparity will provide the inference of causation where overdelegation of discretion and excessive subjectivity are the alleged cause of the disparity.[13]

(2)   Inclusion of All Components of Compensation in the Compensation Regression

Defendant next critiques Dr. Lanier's choice to not run separate regressions for incentive pay and base pay. [14]  D. Mot at X.  However, this critique is nothing more than an attempt to rationalize Dr. Welch's choice to improperly disaggregate the statistical data, creating a pool too small to yield any meaningful statistical analysis.  Not only is such disaggregation not required, it is actually **disfavored** by the courts.  See Capaci v. Katz & Besthoff, Inc., 711 F.2d 647, 654-

---

[13] Defendant cannot contend that a finding of five or more standard deviations does not, at a minimum, create a prima facie case of gender discrimination under either theory.  Plaintiffs have provided uncharacteristically strong statistical evidence and have further buttressed this evidence with extensive anecdotal and documentary evidence.

[14] Defendant also suggests that Dr. Welch's analysis of salary increases alone is persuasive evidence that there is no discrimination in pay.  After the Supreme Court issued its opinion in Ledbetter v. Goodyear Tire, 550 U.S. 618 (2007), employers were able to argue that the only appropriate analysis of pay disparities was one that controlled for base pay and so only examined salary increases.  However, with the passage of the "Lily Ledbetter Fair Pay Act," which was signed into law on January 22, 2009, such truncated analysis is no longer necessary or appropriate.  See, e.g., Krikelis v. Vassar College, No. 06 Civ 4203 (RPP), 2009 U.S. Dist. LEXIS 9597 (S.D.N.Y. Feb. 10, 2009).  Thus, this analysis by Dr. Welch is but another example of Defendant artificially tampering with the statistics in order to avoid a finding of statistical significance.

Moreover, Plaintiffs object to the inclusion of performance evaluations on the ground that it is not an appropriate control variable.  See, e.g., Segar v. Smith, 738 F.2d 1249, 1276 (D.C. Cir. 1984) (explaining the appropriateness of excluding criteria that "may well serve as a veil of seeming legitimacy behind which illegal discrimination is operating."); James v. Stockham Valve & Fitting Co., 559 F.2d 310, 331-333 (5th Cir. 1977); Finkelstein, THE JUDICIAL RECEPTION OF MULTIPLE REGRESSION STUDIES IN RACE AND SEX DISCRIMINATION CASES, 80 COLUM. L. REV. 737, 738-742 (1980).

56 (5th Cir. 1983) (rejecting disaggregation of data to the "point where it was difficult to demonstrate statistical significance."); <u>Segar v. Smith</u>, 738 F.2d 1249, 1286 (D.C. Cir. 1984) (rejecting defendants' practice of repeatedly disaggregating data until the resulting groups were too small to generate statistical significance.); <u>see also</u> <u>Paige v. California</u>, 291 F.3d 1141, 1148-49, (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1189 (2003); <u>Eldredge v. Carpenters 46</u>, 833 F.2d 1334, 1339-40 n.7 (citing D. Baldus & J.Cole, <u>Statistical Proof of Discrimination</u> § 7.1 (1986 Supp.)).

By arguing that the incentive pay is determined by a formula and therefore cannot be subjective, Novartis attempts to distract the Court from the fact that Dr. Welch made a disfavored methodological choice when constructing his regressions.  As an initial matter Plaintiffs dispute the underlying factual assertions that incentive pay is an entirely pure or sterile component of compensation.  CSOF ¶ 53. Moreover, Defendant's argument defies common sense and standard principles of statistical analysis.  In essence, Novartis is suggesting tautologically that incentive pay should be excluded from a study of compensation simply because it believes incentive pay is unlikely to be a conduit for discrimination.

Most important, however, is the fact that whether incentive pay passes on any effects of the employer's discretion is of no matter in a disparate treatment analysis.  *Even if* this Court were to agree that disaggregation was a proper methodological choice, the conclusion that such a choice *should have* been made would only arise under a disparate impact analysis.[15] Under a systemic disparate treatment theory, Plaintiffs need only provide evidence that there is a

---

[15] Moreover, even if this Court were to rule that disaggregation is both a proper **and necessary** methodological choice for disparate impact analysis, Plaintiffs' evidence regarding the ways in which discretion nonetheless infects and structures the formula is relevant.  As this Court noted in its Opinion (responding to this precise critique when it was first raised by the Defendant during the class certification stage), although the proof would be "more difficult," the claim itself would not be precluded. Op. at 30.

disparity, and need not isolate the discretionary policies or procedures giving rise to that disparity.

        (3)    <u>Exclusion of Employees Who Worked Less Than a Full Year</u>

Finally, Defendant critiques Dr. Lanier's choice to exclude from his within-job pay disparities any individual who did not work a full year, yielding the exclusion of approximately twenty-three percent of the overall workforce. Defendant's arguments on this point were already fully briefed at the class certification stage. In its Opinion, this Court concluded that this dispute was "precisely the sort of 'statistical dueling' that should be resolved by a factfinder." Op. at 28. Novartis has provided no analysis or evidence as to why the Court should reconsider its previous finding, let alone meet the rigorous standards imposed in a motion for reconsideration.[16] As such, this critique presents no bar to Dr. Lanier's analysis.[17]

### C.    Plaintiffs Provide Evidence Sufficient to Establish a Prima Facie Case of Class-wide Pregnancy Discrimination

Defendant dedicates a total of twenty lines in its opposition brief to the topic of Plaintiffs' class-wide pregnancy discrimination claims. The first seven lines only mention the word

---

[16] It is the well-established law of this Circuit that the standard for granting a motion for reconsideration is strict and that such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." <u>Shrader v. CSX Transp.</u>, 70 F.3d 255, 257 (2d Cir. 1995). <u>See also</u> <u>Book v. Tobin</u>, No. 06-2289-CV, 2008 WL 345482, at *1 (2d Cir. Feb. 8, 2008); <u>Smith v. Guilford Bd. of Educ.</u>, 226 Fed. App'x. 58, 64-65 (2d Cir. 2007); <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992). Accordingly, reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Shrader</u>, 70 F.3d at 257; <u>see also</u> <u>Virgin Atl. Airways</u>, 956 F.2d at 1255 ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

[17] However, should the Court wish to take up the matter again, the sample size analyzed by Dr. Lanier – approximately seventy-seven percent of the overall workforce – is more than sufficient to yield reliable statistical evidence. According to general sampling theory, statistically reliable results can be drawn from a pool as small as 5% of the available data; indeed, the U.S. Census Bureau only releases a 5% sample of its collected information. U.S. Census Bureau, "Public Use Microdata Sample: 2000 Census of Pupulation and Housing," at 1-1 (Oct. 2008), http://www.census.gov/prod/cen2000/doc/pums.pdf. Where courts have rejected statistical evidence because of the size of the sample which is analyzed, those samples have been "tiny." <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 121-22 (2d Cir. 1997); <u>see also</u> <u>Haskell v. Kaman Corp.</u>, 743 F.2d 113, 121 (2d Cir. 1984) (10 terminations over 11-year period insufficient sample size to support inference of age discrimination); <u>Coble v. Hot Springs Sch. Dist. No. 6</u>, 682 F.2d 721, 733-34 (8th Cir. 1982) (15 decisions over 8 years insufficient sample size to support inference of gender discrimination). As Dr. Lanier analyzes over 15,000 discrete annual salaries over the course of four years, his sample size is clearly more than sufficient.

pregnancy once in order to include Plaintiffs' pregnancy claims in the litany of class claims Novartis seeks to decertify.  In the remaining thirteen lines, Defendant discusses Dr. Welch's analyses of salary increases and promotions granted to women who took pregnancy leave. Defendant does not once address any aspect of Plaintiffs' proof of pregnancy discrimination in either its memorandum or in its statement of facts, but rather proceeds as though the proof simply did not exist.

In proving a systemic hostile work environment, plaintiffs must show "whether there was a systemic culture of harassment and whether it was 'standard operating procedure' to permit such conduct without consequences or discipline to those responsible." Employees Committed for Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423, 430 (W.D.N.Y. 2005).  Accordingly, plaintiffs must demonstrate that an objectively reasonable person would find the existence of: (1) a hostile environment of harassment within the company against a protected group; and (2) a company policy of tolerating (and therefore condoning and/or fostering) this hostile work environment.  See, e.g., Wright v. Stern, 450 F. Supp. 2d 335, 370 (S.D.N.Y. 2006).

In Holtz v. Rockefeller & Co., the Second Circuit reminded district courts that "summary judgment is appropriate only if it can be concluded as a matter of law that no rational juror could view the defendant's conduct as an intolerable alteration of the plaintiff's working conditions." 258 F.3d 62, 75 (2d Cir. 2001) (internal quotations and alterations omitted).  When considering the evidence, "the focus is on the landscape of the total work environment, rather than the subjective experiences of each individual claimant."  Wright at 371 (internal quotations omitted); see also Harris v. Forklift Sys., 510 U.S. 17, 23 (1993) (courts should "look at the totality of the circumstances.").  To the extent that plaintiffs can provide "proof that a 'workplace was permeated with instances of [pregnancy-related] discriminatory conduct,' [that proof] would also

go a long way in supporting a claim that [pregnancy-related] discrimination was the defendant's 'standard operating procedure.'"  Employees Committed For Justice, 407 F. Supp. 2d at 428 (citing Williams v. County of Westchester, 171 F3d 98, 100 (2d Cir. 1999) and Teamsters, 431 U.S. at 336).

Plaintiffs must also show "that the employer knew or should have known that the work environment was hostile and nevertheless failed to take steps to correct the problem on an agency-wide basis."  Wright at 372.  Where it is management itself creating the hostile work environment

> [and] when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages. . .The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . .  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Burlington Indus. v. Ellerth, 524 U.S. 742, 766 (1998).

Despite Defendant's attempts to ignore away the evidence, Plaintiffs have, in fact, provided ample evidence of the pregnancy discrimination suffered by women across the company.[18]  Moreover, as this Court noted in its Opinion at the class certification stage, the

---

[18] Defendant's general argument that anecdotal evidence alone is not sufficient to prove a systemic pattern of discrimination is not applicable to pattern or practice hostile work environment claims.  All but one of Defendant's cases supporting its proposition that anecdotal evidence is insufficient relate to other types of pattern or practice claims – claims which are amenable to statistical analyses.  See Ste. Marie v. Eastern R.R. Ass'n, 650 F.2d 395 (2d Cir. 1981); N. Shore Concrete and Ass'n., Inc. v. City of N.Y., No. 94 CV 4017, 1998 WL 273027 (E.D.N.Y. Apr. 12, 1998); Ottaviani v. State University of New York, 875 F.2d 365 (2d Cir. 1989); Carter v. Newsday, Inc., 528 F. Supp. 1187 (E.D.N.Y. 1981); In re W. Dist. Xerox Litig., 850 F. Supp. 1079 (W.D.N.Y. 1994); Ross v. Nikko Sec. Co. Int'l, Inc., 133 F.R.D. 96 (S.D.N.Y. 1990); King v. General Electric Co., 960 F.2d 617 (7th Cir. 1992); see also Cokely v. NY Conven. Cnt'r Operating Corp., No. 00 Civ. 4637 (CBM), 2003 WL 1751738 (S.D.N.Y. Apr. 2, 2003) (involving claims of job allocation and promotion discrimination).   In the single case cited by Defendant that does address a pattern or practice hostile work environment claim, the court does not suggest that statistical evidence always is required.  Rather, the court held that the anecdotal evidence offered by plaintiffs in that case was not sufficient.  See EEOC v. Carrols Corp., No. 5:98 CV 1772, 2005 WL 928634 (N.D.N.Y Apr. 20, 2005).  However, the approach taken by the Carrols court does not comport with that usually taken; rather than examining the quantity of the statements provided, courts examine the *types* of allegations made in the statements and the *persuasiveness* of

statistical evidence of significant gender inequities in pay, performance evaluations, access to promotional opportunities and promotions into management suffered by women in general bolsters the already persuasive anecdotal evidence of pregnancy discrimination at Novartis. Op. at 42 ("Pregnancy discrimination, after all, is a form of discrimination against women, and so the fact that plaintiffs have offered significant statistical evidence of other forms of gender discrimination sheds light on their anecdotal evidence of discrimination."). Taken as a whole and in the light most favorable to Plaintiffs, this evidence is sufficient to demonstrate that Novartis has a pattern or practice of tolerating and fostering a hostile work environment for pregnant women and young mothers. Defendant's failure to counter this evidence, whatsoever, is fatal to its motion for summary judgment.

## IV.    CONCLUSION

Taking into consideration that (1) the evidence, at the class certification stage, was deemed by this Court to present material questions of fact which should go to a jury; (2) Defendant offers only one critique that this Court has not previously considered – a critique wholly without legal merit; (3) Defendant offers two critiques of the statistical analysis of within-pay job disparities already considered by this Court at the class certification stage; and (4) Plaintiffs have amassed additional evidence, in both testimonial and documentary form, since the class certification stage to support their claims, there should be no question as to whether Plaintiffs present enough evidence sufficient to survive a motion for summary judgment on their pay claims. Moreover, as Defendant entirely disregarded Plaintiffs' evidence of a pregnancy-related pattern or practice hostile work environment and includes nothing more than a brief request that the Court decertify this class, it has failed to mount a successful challenge on

---

those allegations. As this Court has already observed, pieces of anecdotal evidence "are offered not primarily for their quantity, but for their quality." Op. at 40.

summary judgment.  Viewing the evidence in the light most favorable to the Plaintiffs, this Court must conclude that there are material questions of law regarding pay disparities and pregnancy discrimination at Novartis which should be heard by a jury.