UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMY VELEZ, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, WENDY PINSON, ROBERTA VONLINTEL, CATHERINE WHITE, KELLY CORBETT, JAMIE HOLLAND, JOAN DURKIN, SIMONA LOPES, MARYANNE JACOBY, and MARTA DEYNE, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | 04 Civ. 09194 (CM) |
| Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| PLAINTIFFS, | ) ) | |
| v. | ) ) ) | |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) ) | |
| DEFENDANT. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NOVARTIS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING EVENTS WHICH ALLEGEDLY OCCURRED AFTER THE CLOSE OF THE CLASS PERIOD**

## **Table of Contents**

Table of Authorities…………………………………………………………………………ii

Factual Background…………………………………………………………………………3

Argument……………………………………………………………………………………4

    I.   TESTIMONY CONCERNING POST-CLASS PERIOD EVENTS IS RELEVANT
        TO PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND DAMAGES…………4

    II.  KELLI SHANNON'S TESTIMONY IS HIGHLY PROBATIVE AND WILL NOT
        PREJUDICE DEFENDANT…………………………………………………………...7

Conclusion…………………………………………………………………………………...7

## Table of Authorities

*Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995)...................................................6

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)....................................................4

*Cabrera v. Fischler*, 814 F. Supp. 269 (E.D.N.Y 1993)...................................................5

*Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976)....................................................4

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997)...............................................5

*In re Merrill Lynch Tyco Research Securities Litig.*, No. 03-CV-4080 (MP), 2004 WL 305809
    (S.D.N.Y. Feb. 18, 2004)...........................................................................6

*In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63 (2d Cir. 2001)........................................6

*Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3d Cir. 1989)...................................6

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000).............................................................7

*Samuels v. Albert Einstein Med. Ctr.*, No. 97-3448, 1998 U.S. Dist. LEXIS 17320
    (E.D. Pa. Nov. 4, 1998).............................................................................5

*Thomas v. Baca*, 514 F. Supp. 2d 1201 (C.D. Cal. 2007)...............................................5

*Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243 (S.D.N.Y. 2007)..............................2, 5

42 U.S.C. § 2000e-5(g)(1)....................................................................................4

Plaintiffs hereby respectfully submit this brief in opposition to Novartis' motion *in limine* to exclude evidence and testimony concerning events that allegedly occurred after the close of the Class Period.   Completely absent from Novartis' motion is the fact that Plaintiffs' gender discrimination class action was certified as a Rule 23(b)(2) class.   The defining component of a (b)(2) class is the need for injunctive relief.   This Court's class certification order specifically noted that "[t]he central goal of this lawsuit is to alter practices at NPC that plaintiffs believe are discriminatory." *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 258 (S.D.N.Y. 2007).   In the joint pretrial order, Plaintiffs delineated the essential elements of the injunctive relief they seek in order to compel Novartis to comply with Title VII's anti-discrimination mandate.   *See* Docket No. 220.   To obtain injunctive relief, Plaintiffs must show a "continuing harm."   Testimony from Kelli Shannon[1] regarding post-class period discrimination is both necessary and relevant in the Rule 23(b)(2) context.   As such, Novartis' motion should be denied.

---

[1] Similarly, Defendant also seeks to exclude testimony from Terri Kelly regarding events that occurred in 2009 with respect to complaints she lodged with the company and her manager, Matt Compton, surrounding her co-workers' unscrupulous business practices.   Plaintiffs do not contest Defendant's position with respect to Terri Kelly for purposes of this opposition and in fact, have moved affirmatively to preclude Novartis from offering any testimony or evidence regarding various events from 2009 in totem.   *See* Docket No. 217.   In light of the parties' *apparent* agreement pertaining to aspects of Ms. Kelly's testimony, Plaintiffs respectfully request that Novartis file a proffer of testimony for Mr. Compton, who is currently on its witnesses list, considering that he became her manager after the Class Period.

## **FACTUAL BACKGROUND**

Kelli Shannon was employed at Novartis from January 24, 2002 to August 31, 2009. Deposition of Kelli Shannon ("Shannon Dep.") (attached hereto as Exhibit A) at 10:18, 25:18. She left Novartis because of the gender discrimination she endured while under Novartis' employ. *Id.* at 318:24-319:2. Ms. Shannon was a stellar sales performer and was a two-time recipient of the President's Club award, a prestigious award afforded to sales representatives ranking in the top 7% nationally. *Id.* at 211:23-212:1. In September 2003, Ms. Shannon requested a transfer which was delayed several months, at least in part because her District Manager was concerned about the feasibility of her transfer in light of her childcare obligations. *Id.* at 68:9-73:24. In 2003, a year in which Ms. Shannon was a President's Club winner, she received a 3-2 rating on her annual performance review, resulting in a lower merit increase than she would have received with a higher rating, whereas her male counterpart received a 3-3 rating and higher pay. *Id.* at 323:19-324:4. Similarly, Ms. Shannon became aware that she was being paid less than similarly situated male employees in or around July 2006. *Id.* at 324:13-325:12.

After the close of the Class Period, in November 2007, Novartis continued to subject Ms. Shannon to gender discrimination. In October 2008, Ms. Shannon interviewed for a position in the Oncology Department. *Id.* at 200:14-20. The male interviewer asked Ms. Shannon inappropriate questions, including the number of times she had been married, and made a gesture with his hands while asking if "[this was] husband number two." *Id.* at 222:21-22. Another male interviewer for the same position also asked her inappropriate question with respect to gender. *Id.* at 225:7-230:1. Ms. Shannon complained to Human Resources about the interview. Human Resources was unresponsive to her and permitted the male candidate chosen by the discriminators to fill the position. *Id.* at 233:22-246:4.

3

Additionally, in the fall of 2008, Ms. Shannon interviewed for another position. A male manager told Ms. Shannon that she was his second-choice and that he was going to select his "right hand man." When that "right-hand man" declined the offer, the male manager proceeded to select another male candidate to fill the position. *Id.* at 280:21-317:10. Ms. Shannon complained about this, and Human Resources again was unresponsive to Ms. Shannon. *Id.* at 317:12-318:17. In the fall of 2008, Ms. Shannon had the sales numbers to become a President's Club winner. However, Ms. Shannon was denied this acknowledgement because one of the male managers in charge of administering the award knew of her Human Resources complaints. *Id.* at 269:15-276:7.

## ARGUMENT

### I.   TESTIMONY REGARDING POST-CLASS PERIOD EVENTS IS RELEVANT TO PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND DAMAGES.

It is beyond dispute that courts are armed by federal law to provide injunctive relief to victims of gender discrimination. Specifically, Title VII provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate. . . .

42 U.S.C. § 2000e-5(g)(1) (2006). While substantial discretion is vested with the trial courts regarding how to fashion appropriate injunctive relief, that discretion must be exercised in a manner that furthers the purposes of Title VII, including "eradicating discrimination throughout the economy." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771 (1976); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). Thus, if Plaintiffs establish at trial that Novartis engaged in a pattern of discrimination against female sales representatives, then this Court will have "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle*,

4

422 U.S. at 418.

Correspondingly, Title VII's mandate regarding injunctive relief is particularly salient in the Rule 23(b)(2) context. Indeed, in the Order certifying the instant dispute as a Rule 23(b)(2) class, this Court noted that:

> [T]here can be little question that reasonable plaintiffs would sue to obtain the injunctive relief sought. *The central goal of this lawsuit is to alter practices at NPC that plaintiffs believe are discriminatory.* If plaintiffs prevail on the merits, that injunctive relief will be appropriate and reasonably necessary, because it would serve little purpose to award money damages for discrimination without addressing the institutional structure that perpetuates it.

*Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 258 (S.D.N.Y. 2007) (emphasis added).

If Defendant's motion is granted, Plaintiffs would be irrevocably harmed if they are not able to demonstrate that injunctive relief is necessary because there exists "some cognizable danger of recurrent violation." *See Cabrera v. Fischler*, 814 F. Supp. 269, 281 (E.D.N.Y 1993) (granting injunctive relief following a jury verdict in favor of plaintiffs in a housing discrimination suit).

Further, courts faced with a similar situation concerning post-liability evidence in civil rights and discrimination matters have declined to short-circuit plaintiffs' cases. For example, in *Thomas v. Baca*, 514 F. Supp. 2d 1201 (C.D. Cal. 2007), a class action brought under 42 U.S.C. § 1983, the court granted summary judgment in favor of the plaintiffs and specifically admitted post-class period evidence, finding it "highly probative" of the existence of an unconstitutional policy at play during the class period. *Id.* at 1210 (citing *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997)); *see also Samuels v. Albert Einstein Med. Ctr.*, No. 97-3448, 1998 U.S. Dist. LEXIS 17320, at *12-15 (E.D. Pa. Nov. 4, 1998) ("[T]he Defendant asks this Court to exclude all evidence that occurred after Plaintiff's termination as irrelevant and highly prejudicial . . . . In the realm of discrimination, however, after the fact evidence possesses more

relevance to a person's intent, knowledge, or state of mind . . . . Given the difficult nature of proving discrimination and the necessity of discrimination plaintiffs to rely on circumstantial evidence, the Court refuses to impose such a burden on this Plaintiff."); *see generally Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995) ("Indeed, we have held that . . . statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination."); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir. 1989) (finding age-biased comment relevant even when made subsequent to the plaintiff's termination).

Novartis cites only one securities case, *In re Merrill Lynch Tyco Research Securities Litigation*, No. 03-CV-4080 (MP), 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004), in support of its motion. *In re Merrill Lynch* has no legal bearing on the matter presently before the Court.

First, *In re Merrill Lynch* was decided on a motion to dismiss, in which there were no evidentiary matters for a court to determine. Second, Novartis' characterization of this case is wholly misplaced. Contrary to Novartis' contention that the *In re Merrill Lynch* court declined to consider post-class period evidence, the court merely discussed various analysts' reports that were available to the public up to and including the class-end date in its analysis concerning plaintiffs' fraud on the market theory. *Id.* at *2.

Third, Novartis ignores Second Circuit case law in the securities context that specifically disavows the notion that post-class period events constitute irrelevant evidence. For example, in *In re Scholastic Corp. Securities Litigation,* 252 F.3d 63, 73, 77 (2d Cir. 2001), the Second Circuit determined that a post-class period write-off of $13 million was circumstantial evidence of recklessness. *Id.* By analogy, then, *In re Scholastic Corp. Secs. Litig.* further supports

Plaintiffs' contention that post-class period evidence is relevant for injunctive relief and punitive damages purposes. *See also Novak v. Kasaks,* 216 F.3d 300, 312-13 (2d Cir. 2000).

In accordance with the case law and principles cited above, this Court should permit Kelli Shannon and current employee class members to testify about post-class period discrimination.

## II.    KELLI SHANNON'S TESTIMONY IS HIGHLY PROBATIVE AND WILL NOT PREJUDICE NOVARTIS.

Defendant will not be prejudiced if Plaintiffs are permitted to proffer post-class period testimony that is highly probative for purposes of obtaining injunctive relief and other damages. On the contrary, Plaintiffs' ability to develop the facts surrounding damages would be unfairly circumscribed if Novartis' motion is granted.

### CONCLUSION

For the foregoing reason, Plaintiffs request that the Court deny Novartis' motion *in limine* to exclude evidence and testimony concerning events which allegedly occurred after the close of the class period and order Novartis to submit a proffer of testimony for Matt Compton in order to streamline irrelevant witnesses in advance of trial.

Respectfully Submitted,

February 3, 2010

David Sanford, D.C. Bar No. 457933
Katherine M. Kimpel, D.C. Bar No. 493028
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Ave. NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Jeremy Heisler, (JH-0145)

7

Steven Wittels, (SLW-8110)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
(646) 723-2947
Facsimile: (646) 723-2948

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
1666 Connecticut Ave. NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776

*Attorneys for Plaintiffs*

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically and that a true and correct copy of the foregoing was served by U.S. mail on this 3d day of February, 2010 upon the following parties:

> Richard H. Schnadig, Esq.
> **VEDDER PRICE, P.C.**
> 222 North LaSalle St.
> Chicago, IL 60601

> *Attorneys for Novartis Pharmaceuticals Corporation*

Sarah E. Siegel

9