**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

---

**AMY VELEZ, PENNI ZELINKOFF, MINEL
HIDER TOBERTGA, MICHELLE
WILLIAMS, JENNIFER WAXMAN-RECHT,
KAREN LIGGINS, LORI HORTON, HOLLY
WATERS, WENDY PINSON, ROBERTA
VONLINTEL, CATHERINE WHITE, KELLY
CORBETT, JAMIE HOLLAND, JOAN
DURKIN, SIMONA LOPES, MARYANNE
JACOBY, and MARTA DEYNE,**

**Individually and on Behalf of Others Similarly
Situated,**

          **Plaintiffs,**

     **v.**

**NOVARTIS PHARMACEUTICALS
CORPORATION,**

          **Defendant.**

---

04 Civ. 9194 (CM)

## SETTLEMENT AGREEMENT AND RELEASE

Table of Contents

Page

I.      Introduction ............................................................................................... 1
II.     Definitions ................................................................................................. 1
III.    Nature and Resolution of this Case ........................................................... 7
IV.     Mutual Full Cooperation .......................................................................... 10
V.      Releases .................................................................................................... 10
VI.     Total Settlement Amount ......................................................................... 12
VII.    Programmatic Relief ................................................................................ 12
VIII.   Settlement Fund ....................................................................................... 34
IX.     Attorneys Fees and Expenses, Administrative Expenses and Service Award
        Payments .................................................................................................. 37
X.      Individual Monetary Payments to Settlement Class Members and
        Claims Process .......................................................................................... 41
XI.     Novartis's Right to Withdraw or Modify the Agreement .......................... 57
XII.    Duties of the Parties Prior to Court Approval ........................................... 58
XIII.   Duties of the Parties Following Final Court Approval .............................. 59
XIV.    Parties' Authority ..................................................................................... 60
XV.     Notices ..................................................................................................... 61
XVI.    Confidentiality and Public Comment ....................................................... 61
XVII.   Modification ............................................................................................. 63
XVIII.  Entire Agreement ..................................................................................... 64
XIX.    Interpretation ........................................................................................... 64
XX.     Choice of Law and jurisdiction ................................................................ 64
XXI.    Counterparts ............................................................................................. 65
XXII.   Voiding the Agreement ............................................................................. 65

## I.     __INTRODUCTION__

Subject to approval by the United States District Court for the Southern District of New York (the "Court"), this Settlement Agreement and Release ("Settlement Agreement," "Settlement" or "Agreement") sets forth the full and final terms by which the Class Representatives Amy Velez, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Wendy Pinson, Roberta Vonlintel, Catherine White, Kelly Corbett, Jamie Holland, Joan Durkin, Simona Lopes, Maryanne Jacoby and Marta Deyne (collectively "Class Representatives" or "Named Plaintiffs"), on behalf of a settlement class of themselves and  current and former female sales force employees of Novartis Pharmaceuticals Corporation ("Novartis," "Defendant," or "Company") (collectively, the "Settlement Class"), represented by their attorneys, Sanford Wittels & Heisler**,** LLP and the Law Offices of Grant E. Morris, and Defendant Novartis, represented by its attorneys Cravath, Swaine & Moore LLP, Vedder Price and Kaye Scholer LLP (collectively, "Counsel for Novartis" or "Counsel for Defendant"), have settled and resolved all claims that have been raised or could have been raised in the litigation captioned Velez, et al. v. Novartis Pharmaceuticals Corporation, Case No. 04 Civ. 9194, before District Judge Colleen McMahon in the United States District Court for the Southern District of New York (the "Civil Action").

## II.     __DEFINITIONS__

The terms described below shall have the meanings defined in this Section wherever used in this Agreement, and for the purposes of this Agreement only, including in all of its Exhibits and the Notice of Class Action Settlement.

2.1     "Settlement Agreement" or "Agreement" means this Agreement and all Exhibits attached hereto.

2.2     The "Civil Action" means the litigation captioned <u>Velez, et al. v. Novartis Pharmaceuticals Corporation</u>, Case No. 04 Civ. 9194, before Judge Colleen McMahon in the United States District Court for the Southern District of New York.

2.3     "Claimant" for compensatory damages means a Proposed Settlement Class Member who has submitted a Claim Form for review by the Claims Adjudicator.

2.4     "Claims Administrator" means the Claims Administrator appointed by the Court.

2.5     "Claims Adjudicator" means the Claims Adjudicator appointed by the Court.

2.6     "Claim Form" means the form attached hereto as Exhibit B.  The Claim Form shall be attached to the Notice of Class Action Settlement and must be submitted by Proposed Settlement Class Members to the Claims Administrator as part of the claims process of this Settlement pursuant to Section X.  Unless otherwise noted, the definition of "Claim Form" is inclusive of the Rider attached to the Claim Form.

2.7     "Class Counsel" means the law firm of Sanford Wittels & Heisler, LLP.

2.8     "Class Representatives" or "Named Plaintiffs" means Amy Velez, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Wendy Pinson, Roberta Vonlintel, Catherine White, Kelly Corbett, Jamie Holland, Joan Durkin, Simona Lopes, Maryanne Jacoby and Marta Deyne.

2.9     "Counsel for Novartis" or "Counsel for Defendant" means the law firms of Cravath, Swaine & Moore LLP, Vedder Price, and Kaye Scholer LLP.

2.10     The "Court" means the United States District Court for the Southern District of New York.

2.11     "Defendant", the "Company" or "Novartis" means Novartis Pharmaceuticals Corporation.

2.12     "Effective Date" means the date upon which all of the following have occurred: (1) entry of an order by the Court certifying the Settlement Class; (2) entry of an order or orders by the Court granting Final Approval to the Agreement, approving the amount of attorneys' fees and costs and dismissing the Civil Action with prejudice; (3) the period for Novartis to withdraw from the Agreement  pursuant to Section XI has expired (i.e., 30 calendar days from the Claims Administrator's receipt of all timely and complete requests for exclusion submitted by a Class Representative and/or Proposed Settlement Class Member), and (4) the time for appeal has expired and/or if an appeal is taken, the appeal results in affirmance of the Court's Final Approval Order of the Settlement Agreement.

2.13     "Eligible Claimant" for compensatory damages means a Claimant who has submitted a timely and complete Claim Form to the Claims Administrator for review by the Claims Adjudicator.

2.14     "Final Approval Date" or "Final Approval" means the date of entry by the Court of the Final Approval Order for this Settlement.

2.15     "Medical Professional" means a physician or clinical psychologist.

2.16     "Notice of Class Action Settlement" means the notice attached hereto as Exhibit A.  The Notice of Class Action Settlement shall be provided to the Settlement Class in accordance with Section X.D.

2.17     "Parties" means the Class Representatives and Defendant.

2.18     "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

2.19     "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms of this Agreement, certifying the Settlement Class, and preliminarily approving the payment of attorneys' fees, attorneys' costs and the Service Award Payments, as described in this Agreement, scheduling a "Final Fairness Hearing", and directing the mailing to the Settlement Class of the Notice of Class Action Settlement.

2.20     "Released Claims" means any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, whether class or individual in nature, including both known claims and Unknown Claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or Proposed Settlement Class Members or their counsel in connection with or related to the Civil Action), that were or could have been asserted by the Class Representatives and/or Proposed Settlement Class Members against Novartis, its parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees,

4

privies and insurers (collectively defined as the "Released Parties"), based upon or arising out of the same events, transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Civil Action, including any and all claims asserted in the original and subsequently amended complaints filed in the Civil Action.  This Release includes all claims based upon or arising out of the conduct alleged in the Complaint (including all Amended Complaints) or within the trial record.  This Release includes any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, whether class or individual in nature, including both known claims and Unknown Claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or Proposed Settlement Class Members or their counsel in connection with the Civil Action), that were or could have been asserted by the Class Representatives and Proposed Settlement Class Members against the Released Parties based upon, or arising in any way out of the litigation of the Civil Action or the jury verdict, provided however that nothing contained herein shall prevent any Party to this Settlement Agreement from initiating a legal action to enforce any term or provision of this Settlement Agreement. Specifically included in this release are any and all claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action, including but not limited to, claims of alleged employment discrimination, sexual harassment claims, hostile work environment claims or benefits claims under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 1981a, and any other applicable federal, state, or local statutes, common law, or regulation.  Furthermore, this Release includes all claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981a or under any other federal, state, local or common laws or regulations arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action.  This Release does not include or cover any actions or omissions occurring after the Preliminary Approval Date, nor does it include or cover any claims stemming from any certified class action, other than this Civil Action, of which the individual is already a member either by virtue of opting-in under 29 U.S.C. § 216(b) or because the class is certified under Rule 23(b)(2) and/or Rule 23(b)(3).

     2.21     The "Settlement Class" means a class certified by the Court for settlement purposes pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) consisting of all women who are currently holding, or have held, a sales-related position of  Sales Representatives, Sales Consultants, Senior Sales Consultants, Executive Sales Consultants, Sales Associates, Sales Specialists, Senior Sales Specialists or District Managers I with Novartis Pharmaceuticals Corporation, from the start of the class period, July 15, 2002, through the Preliminary Approval Date (together the "Proposed Settlement Class Members" or "Settlement Class Members" and each a "Proposed Settlement Class Member" or "Settlement Class Member"), excluding individuals who entered into individual releases as part of individual agreements with Novartis up to the Preliminary Approval Date that did not carve out an exception for this Civil Action.

2.22    The "Settlement Class Period" shall be defined as July 15, 2002 through the Preliminary Approval Date.

2.23    "Unknown Claims" means any and all Released Claims which any Named Plaintiff or Proposed Settlement Class Member does not know or suspect to exist in her favor at the time of the release of the Released Parties, which if known by her might have affected her decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Named Plaintiffs shall expressly waive, and each Proposed Settlement Class Member shall be deemed to have waived, and by operation of the Final Approval Order shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The Parties acknowledge, and all other Proposed Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

III.    **NATURE AND RESOLUTION OF THIS CASE**

3.1    On November 19, 2004, Class Representatives Amy Velez and four other women filed a Class Action Complaint against Novartis Corporation and Novartis Pharmaceuticals Corporation in the United States District Court for the Southern District of New York, on behalf of themselves and a nationwide class of female sales force employees

7

of Novartis under Title VII, 42 U.S.C. § 2000(e) et seq.  An additional thirteen women were subsequently added as Class Representatives.  The Class Representatives filed their Second Amended Class Action Complaint on June 3, 2005, their Third Amended Class Action Complaint on September 9, 2005 and their Fourth Amended Class Action Complaint on March 13, 2006.

3.2    On January 16, 2007, the Class Representatives filed their Motion to Certify a Class.  Novartis submitted a brief in opposition to class certification on March 22, 2007.  On July 31, 2007, the Court certified a class action pursuant to Rule 23(b)(2).  On August 16, 2007, the Court issued an Amended Opinion and Order, and issued notice of court approval of class certification on December 7, 2007.  The notice was addressed to all women who were employed in certain sales-related positions with Novartis in the period between July 15, 2002, and November 30, 2007.

3.3    A jury trial commenced on April 7, 2010.  The jury delivered a verdict on behalf of Plaintiffs on all counts and awarded compensatory and punitive damages.  The trial concluded on May 19, 2010, with equitable relief and non-monetary relief to be ordered by the Court at a later date.

3.4    The Parties agree that the settlement described in this Agreement is fair, reasonable and adequate.  Class Counsel and the Class Representatives represent that the settlement set forth in this Settlement Agreement is the product of vigorous and lengthy negotiations and serves the best interest of the Proposed Settlement Class based on all the facts and circumstances because it provides certain, prompt and extensive relief for the Proposed Settlement Class and avoids the risk of future litigation.

3.5     It is the intention of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims of the Proposed Settlement Class, whether asserted or unasserted, based on, arising from or related in any way to the Civil Action.

3.6     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all claims of the Proposed Settlement Class against the Defendant that were or could have been asserted as based on or arising from the Civil Action, and that the Civil Action shall be dismissed with prejudice.

3.7     Defendant denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class allegations asserted in the Civil Action.  Defendant has agreed to resolve the Civil Action in this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Civil Action upon all procedural and substantive grounds, including, without limitation, the ability to challenge class action treatment on any grounds and to assert any and all potential defenses or privileges.  The Class Representatives and Class Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary.  Specifically, the Class Representatives and Class Counsel agree that, if the Civil Action were to proceed, they will not present any argument based on this Settlement or Settlement Agreement, or any exhibit, attachment, act performed or document executed pursuant to this Settlement or this Agreement.  Additionally, neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the

9

Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

3.8     Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

## IV.     MUTUAL FULL COOPERATION

4.1     The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.

## V.     RELEASES

5.1     Upon the Effective Date of this Settlement Agreement, in consideration for the agreements by the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Named Plaintiffs and each and every member of the Proposed Settlement Class, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge the Released Parties (as defined above) from each and every Released Claim (as defined in Paragraph 2.20 above), and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the

Released Parties and their counsel, whether or not the claims of the Proposed Settlement Class Members have been approved, allowed, substantiated or rejected. Unless a Named Plaintiff or Proposed Settlement Class Member opts out of the Settlement pursuant to Paragraph 10.28 below, this Release shall apply whether or not such individual has executed and delivered a Claim Form or otherwise actively participated in the Settlement.

5.2     Every Proposed Settlement Class Member, as defined above (except for those who opt out pursuant to Paragraph 10.28 below), shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

5.3     The Parties and Proposed Settlement Class Members acknowledge that the covenants and promises made by Novartis herein constitute adequate consideration in exchange for the Released Claims.

5.4     Nothing in this Settlement Agreement shall be construed to bar any claims of Proposed Settlement Class Members or the Class Representatives based on or arising out of events occurring after the Preliminary Approval Date by the Court of the Settlement Agreement. Nor shall anything in this Settlement Agreement be construed to bar any claims of Proposed Settlement Class Members or the Class Representatives based on or arising out of claims in any certified class action, other than this Civil Action, of which the individual is already a member either by virtue of opting-in under 29 U.S.C. § 216(b) or because the class is certified under Rule 23(b)(2) and/or Rule 23(b)(3).

## VI.    TOTAL SETTLEMENT AMOUNT

6.1    The "Total Settlement Amount," in full and complete satisfaction of all Released Claims, shall be up to $175,000,000.00 in monetary and non-monetary relief, comprised of a cash payment of up to $152,500,000.00 (the "Settlement Fund") and programmatic non-monetary relief, described in Section VII, valued at $22,500,000.00.

6.2    Subject to Court approval, the Settlement Fund will be provided to the Claims Administrator to be distributed as described in Sections VIII, IX and X of this Agreement.

## VII.    PROGRAMMATIC RELIEF

7.1    The programmatic relief described in this Section will be effective immediately upon the Effective Date and shall remain binding on the Parties and their agents and successors for a three-year period following the Effective Date or until the Court determines that Novartis is in compliance with the programmatic relief in this Section.

7.2    Novartis will substantially comply with the programmatic relief described in this Section within one (1) year of the Effective Date.

7.3    The monitoring period for the relief described in this Section, with reporting to Class Counsel and the Compliance Master as described below in Section VII.H will be three (3) years from the Effective Date, and with the first report due one (1) year following the Effective Date.

7.4    If Novartis's compliance is satisfactory to the Court, Novartis's obligations with respect to the programmatic relief described in this Section will end upon the Court's order.

7.5    The terms of the programmatic relief described in this Section will be subject to good-faith negotiation between the Parties, should there be a legitimate business

reason to modify those terms.  No substantive modification may be made to the terms of this Section absent approval by the Court.

7.6     Nothing in this Section shall be construed to require or permit any party to the Agreement, or agent thereof, to disclose Novartis's confidential personnel information.

7.7     Novartis agrees to take the actions described in this Section with respect to employees who hold positions as Sales Representatives, Sales Consultants, Senior Sales Consultants, Executive Sales Consultants, Sales Associates, Sales Specialists, Senior Sales Specialists, and District Managers I.

     A.     Proactive Equal Employment Opportunity Measures.

7.8     Novartis will take the following actions regarding the following aspects of the field force employment experience:

     (i)     Novartis will include, as part of its bi-annual employee engagement survey (or a separate add-on for employees in jobs covered by this Agreement) conducted anonymously by an outside survey provider, questions about work-life balance, including questions concerning the comfort level that employees have in using pregnancy leave, job share policies and the sexual harassment policy regarding inappropriate sexual behavior or comments by physician customers, as well as the attitudes employees have observed management expressing regarding maternity leave and job share policies.  This survey, which is conducted by a well-known third-party specialist, is next scheduled for the second calendar quarter of 2011.

     (ii)     Sexual Harassment Policy and Training:  Novartis will prepare and circulate a sexual harassment policy that will cover inappropriate conduct by employees and physician customers and will make clear that Novartis does not tolerate inappropriate sexual behavior or comments by physician customers.  Novartis will conduct annual

13

training on this policy, which includes guidance to the field force regarding how to respond if faced with inappropriate sexual behavior, as well as direction to employees to report such conduct for investigation and remedial action.    The bi-annual survey described in Paragraph 7.8(i) will elicit feedback from all Novartis employees regarding whether they understand the policy and would be comfortable reporting inappropriate conduct under this policy.

7.9       Novartis will track the trends in response to the survey described in Paragraph 7.8(i).  With respect to Paragraph 7.8(ii), Novartis will continue its zero tolerance policy of permanently removing any physician who was the subject of a substantiated employee complaint for conduct constituting sexual harassment from both the target calling list and the incentive goals for all sales representatives.

7.10       Novartis will report the results of the bi-annual survey described in Paragraph 7.8(i) to the Compliance Committee (whose membership includes the Vice President of Ethics and Compliance, President of Novartis, and the Heads of several different departments and Business Units) and that Committee will make recommendations, where needed, to remedy as soon as practicable any gender-related problems affecting employees covered by this Agreement and evidenced in the survey.    Those recommendations, along with the survey responses and the trends over the years, will be delivered on a bi-annual basis.  In addition, Novartis will provide a brief summary to Class Counsel of any action taken by the Compliance Committee to remedy the problems discussed above.

   B.  <u>Responses to Complaints of Discrimination.</u>

7.11       Within nine months following the Effective Date of this Agreement, Novartis will increase the size of both the Human Resources Business Partners staff and the

Employee Relations and Human Resources Compliance Group ("Employee Relations" or the "Employee Relations Group"), which is designated to respond to and investigate complaints of discrimination.

(i)     The ratio of each Employee Relations investigator to number of employees can be no less than 1 investigator-to-1000 employees, in line with external best practices benchmarks (2009 Corporate Leadership Council).

(ii)    The ratio of each Human Resources Business Partner to number of employees can be no less than 1 Partner -to-210 employees, in line with external best practices benchmarks (2009 Corporate Leadership Council).

(iii)   The Head of Employee Relations responsible for overseeing all investigations regarding complaints of discrimination must report directly to the Vice President of Human Resources.

7.12     Novartis will revise the policies and processes regarding its investigation into discrimination as follows:

(i)     An additional resource for reporting complaints will be established.  Novartis will institute a new "hotline" specific to Employee Relations complaints that would be directed immediately to Novartis's Head of Employee Relations, with a copy to the Business Practices Officer ("BPO") for tracking and formal assignment of investigative authority.

(ii)    Novartis will communicate to employees its policy that requires all employees to immediately report—to the BPO, Employee Relations Hotline, Alertline, his or her Supervisor, an officer of the Company, or a representative of Human Resources, Ethics and Compliance or Legal—all complaints of misconduct.  Novartis

15

will also communicate to employees its policy that requires managers or upper-level Novartis employees to immediately report—to the BPO, Employee Relations Hotline, AlertLine, his or her Supervisor, an officer of the Company, or a representative of Human Resources, Ethics and Compliance or Legal—all complaints of misconduct made by others, and that management may not exercise its discretion regarding whether or not to report such a complaint.

      (iii)    Novartis will track the date and time that all complaints are received by the BPO and the date that the BPO assigns the complaint to the Employee Relations Group for investigation.  Novartis will also track the date and time that all complaints are received by the Employee Relations hotline and copied to the BPO for tracking and formal assignment of investigative authority.

      (iv)    Novartis will establish a policy that all complaints of discrimination received by the BPO be assigned to the Employee Relations Group for investigation within two (2) business days of the BPO's receipt of the complaint.

      (v)    The Employee Relations Group will reach out to the complaining individual insofar as he or she is known and reachable within two (2) business days of receiving the complaint, and maintain a record of the date that the complaining individual is contacted.

      (vi)    The response time of the Employee Relations Group will be reviewed by the Head of Employee Relations on a quarterly basis.  If the Employee Relations Group fails to meet the two-day requirement in any two (2) consecutive quarters, Novartis will hire one (1) additional Employee Relations investigator.

7.13     As a part of any Employee Relations investigation, the Employee Relations investigator may attempt to conduct a follow-up interview with the complainant where appropriate and necessary to the investigation (including any counter-claims and defenses and the opportunity for the complainant to respond thereto).

(i)     This follow-up interview, if conducted, will take place after the Employee Relations investigator has conducted an investigation into the corroboration of or defenses against the discrimination complaint and has reviewed any relevant documentation.

7.14     At the conclusion of the investigation, the Employee Relations Group will notify the complaining individual that the investigation has been closed, what the result of the investigation was (substantiated, unable to conclude, not substantiated), and the complainant's rights upon conclusion of the investigation.

7.15     Novartis will disseminate to the entire sales field force on an annual basis the following clarifications and explanations regarding the Employee Relations process:

(i)     Novartis will explain clearly and in writing that employees may make complaints on an anonymous basis (and will point out that anonymity might, in some instances, constrain the ability to investigate), and that the information collected during the investigation is kept confidential to the extent possible.

(ii)     Novartis will explain clearly and in writing the process followed by Employee Relations regarding investigations into complaints of discrimination, the possible outcomes where claims are substantiated, that the timeline for an investigation is dependent on the particular facts of the case, the role that a complainant will play in the process, that a complainant may at all times communicate with Employee Relations

17

either orally or in writing, and the level of information provided to the complainant at the close of an investigation.

7.16      Novartis has developed a formalized complaint investigation process, which it will continue to follow, including the practice that all investigative steps taken by the Employee Relations Group either be made in writing or documented after the fact. Novartis will further maintain an electronic database of any complaints—substantiated, unable to conclude or unsubstantiated—and disciplinary action taken (if any), so that decisionmakers have access to disciplinary guidance from similar cases so as to ensure consistent responses across the Company.  One purpose of the database will be to identify trends, and to determine what additional training or policy adjustments are required in areas including gender equity.

(i)      Novartis will ensure that all management-level employees and above are fully trained on this investigation process annually.

(ii)      Novartis will ensure that all Employee Relations and Human Resources Business Partners are fully trained annually on this investigation process.

(iii)      Novartis will explain clearly and in writing that there are several factors for management to consider in making disciplinary decisions, including the type of misconduct, severity, harm to the complainant and whether there have been multiple or sequential substantiated or unable to conclude complaints.  A copy shall be provided to Class Counsel.

(iv)      Novartis will continue to ensure that Field Management does not have full discretion regarding whether a claim is sufficiently substantiated, the appropriate discipline and any appropriate corrective steps when necessary.  To that end,

18

Novartis will continue to empower a Resolution Committee consisting of representatives from Legal, Employee Relations, the Ethics and Compliance Department and Human Resources to review the findings and make recommendations about corrective action (up to and including termination) to the relevant management.   In forming its recommendation, the Resolution Committee will have access to the database described in Paragraph 7.19 below, so as to obtain, among other things, information related to prior substantiated and/or unable to conclude complaints against the subject of the investigation.   If field management disagrees with the recommendation made by the Resolution Committee, the matter is escalated to the Novartis Compliance Officer, Head of the relevant Business Unit and the Resolution Committee for final decision.  The Vice President of Human Resources will review the escalated matter in the event of further disagreement.

           C.       <u>Human Resources' Role in Clarification Meetings.</u>

7.17      Within six months of the Effective Date of the Agreement, Novartis will revise the timing and function of the "clarification meeting" as follows:

(i)      Novartis will provide the employee who is the subject of the complaint the opportunity to provide any evidence to the investigator within two (2) business days after the clarification meeting.  If the employee submits such additional evidence and requests a follow-up meeting, a subsequent clarification meeting or telephone conference will be held before the Resolution Committee makes any determination.

(ii)      The Resolution Committee will consider any evidence presented by the employee in making its recommendations.

D.      Oversight and Implementation.

7.18      Upon the Effective Date of this Agreement, Novartis will immediately commence the process of preparing training for all Employee Relations and Human Resources Business Partner personnel regarding all changes made in accordance with this Agreement.  Novartis anticipates the roll-out of training will commence approximately one (1) year later, and the Company will put forth best efforts to commence training even earlier if it is practicable to do so.

7.19      Novartis currently maintains, and will continue to maintain, a database of all complaints that the Employee Relations Group investigates which includes:

(i)      the date of the complaint,

(ii)      the type of complaint,

(iii)      the complainant (where available),

(iv)      the identity of the subject of the complaint,

(v)      the investigator assigned,

(vi)      the date of the initial contact with the complainant,

(vii)      the outcome of the investigation (unsubstantiated, unable to conclude, or substantiated), and

(viii)      the nature of the corrective action, if any.

7.20      The investigation file contains:

(i)      dates of interviews,

(ii)      date of clarification meeting[s], and

(iii)      date of Resolution Committee meeting.

7.21     Novartis will build into the investigation process identification at the inception of the investigation whether the subject of the complaint has been the subject of any prior complaints.

7.22     The Head of Employee Relations will compile an annual report to be delivered to the Compliance Committee with one copy to the Chairman of the Novartis Pharmaceuticals Corporation Board of Directors.  Each annual report will relay the contents of the databases detailed above, including an assessment of any gender-related trends evidenced in that data, and a summary of the nature and resolution of complaints.

E.     Performance Evaluations.

Novartis agrees to the following actions with respect to its Performance Evaluation Process:

7.23     Clarification and Implementation of the Performance Evaluation

(i)     Novartis will evaluate how to ensure that an employee's leave of absence will not result in negative performance ratings for his/her manager, his/her counterparts in the territory and the employee in question.

(ii)     Novartis will develop and issue specific guidance regarding implementation of the Values and Behaviors evaluation.

a)     Such guidance shall include examples of conduct that represents "1," "2" or "3" in each value and behavior, and descriptors of "not meeting", "meeting" and "exceeding" expectations.

b)     It will also include detailed parameters regarding what each number score means, how to differentiate among the scores, and how to appropriately determine an overall score from the subscores so that employees are assessed consistently.

21

(iii)    Novartis will develop and issue guidance regarding the implementation of the Objective Evaluation.

(iv)    Values and Behaviors Training:  Novartis will conduct training of all managers on how to assess Values and Behaviors in light of the specific guidance described above.

(v)    Objective Training:  Novartis will provide training and written guidance to all managers on defining the factors that will be considered as relevant Key Performance Indicators ("KPIs") and the weight given to each KPI, and how leaves of absence will be handled when evaluating sales results.  In addition, Novartis will instruct managers that consideration and application of mitigating factors will take place at the calibration sessions.

(vi)    Novartis will provide training to employees and managers on completing their self-assessments and the role that multi-raters play in the performance management process.

(vii)    Novartis will retain an external specialist with the input of Class Counsel (who shall first review the qualifications of this individual, including previous analyses and publications).  This specialist will design an annual adverse impact analysis of ratings to determine if there are any significant gender disparities.

a)    Class Counsel shall have an opportunity to meet with the specialist and review his/her proposed methodology as well as the final methodology used for the analysis before the specialist begins the analysis.

b)    Class Counsel shall also have the opportunity to make recommendations to the specialist about the methodology used for the analyses.

22

c)       Novartis agrees to share the results of that analysis, as they pertain to gender, with Class Counsel.  Class Counsel shall have the opportunity to propose recommendations to Novartis on appropriate remedies.  Novartis will remedy, as soon as practicable, any gender-related problems affecting employees covered by this Agreement and evidenced in the analysis.

7.24     Transparency and Training

(i)       Novartis will provide mandatory training for all managers regarding the performance evaluation process, including the specific guidance discussed above.  This same training will be made optional for sales force members and provided on the Novartis intranet.

(ii)      The sales force will receive and have access to all written guidance regarding performance evaluations that are made available to managers.

(iii)     Novartis will continue to circulate to all associates at year-end all written guidance for performance evaluations, including information regarding the appeals process (see Paragraph 7.26 below).  This information will continue to be made available on the Novartis intranet.

7.25     Calibration Sessions

(i)       Novartis will conduct calibration sessions at the District Manager and second-line manager level for representatives (and at the second-line manager and Vice President level for District Managers) to ensure consistency in the evaluation of employees against a uniform understanding of the expectations.

a)       Human Resources will continue to play an active role in the calibration sessions as detailed below.

23

b)      Each second-line manager will meet with all of his or her District Managers along with an Human Resources representative to discuss the uniform expectations for performance at each level, any mitigating circumstances that came into play for any districts in the region, and application of the uniform expectations to the sales representatives across districts.

c)      The Human Resources representative will be primarily responsible for presenting the uniform expectations; the second-line manager will lead the other portions of the discussion.

d)      The Human Resources representative will be tasked with maintaining records on the conversations had during the calibration session and the reasons for any alterations to ratings that are made as a result of the conversation.  Any disputes between a District Manager and a second-line manager must also be documented.

e)      The same process will be followed at one level up for the evaluation of District Managers.

7.26    Human Resources' Role and the Appeals Process

(i)      Novartis will add an appeals process whereby employees who disagree with their performance rating may appeal to their 1 over 1 manager who, in consultation with an Human Resources Business Partner who was not involved in the calibration session, will render a final decision.

(ii)     Any employee who believes that his/her review was improperly tainted by discrimination may file a complaint via the Employee Relations complaint procedure.

24

F.      Compensation.

Novartis agrees to the following actions with respect to its Compensation Policies and Procedures:

7.27      Novartis Compensation and Benefits ("C&B") will work with an external C&B specialist to design a Base Salary pay in range analysis and subsequent adverse impact analysis, as described below.  Novartis will retain the specialist with the input of Class Counsel (who shall first review the qualifications of this individual, including previous analyses and publications).

(i)      Class Counsel shall have an opportunity to meet with the specialist and review his/her proposed methodology as well as the final methodology used for the analyses below before the specialist begins the analysis.

(ii)      Class Counsel shall also have the opportunity to make recommendations to the specialist about the methodology used for the analyses.

7.28      Novartis C&B will work with the specialist to design a base salary pay in range analysis for sales representatives and first-line managers.

(i)      This analysis will include identification of any gender-related discrepancies within the range despite similar tenure, experience, and performance.

(ii)      The analysis will be completed within three months after the agreed analysis design.  In case of discrepancy versus range, Novartis will bring the outliers within range within 18 months according to a phased schedule.

7.29      The specialist will review the Field Force Incentive policy to avoid negative impact on Incentive payout for managers or for sales representatives as a result of approved leaves of absence for other sales representatives in the district.

25

7.30     Novartis has introduced a merit increase grid, which limits a manager's discretion on pay decisions and should be used as a guideline for pay increases.  The grid shows a matrix with Position in Range and Performance Rating and for each position, a range of recommended pay increase (as a percentage).  Managers will be required to document any deviation from the grid.  The C&B manager will review the recommended merit increases against the guidelines and make a final recommendation for approval to senior management.  These recommendations shall be documented in writing.

7.31     Guidelines on how to plan for merit increases will be issued prior to the year-end process.  A manager's merit increase planning will be reviewed by the Supervisor, Human Resources and the C&B team.

7.32     Upon completion of each annual merit planning process, Novartis C&B will perform an adverse impact analysis for discrepancies in annual rate of pay based on gender.

(i)     Novartis will make necessary adjustments based on these findings in the next merit cycle.

a)     Adjustments resulting from the adverse impact analysis will not be taken from the merit increase budget established for that year.

(ii)     For the term of this Agreement, Novartis agrees to share the results of that analysis, as they pertain to gender, with Class Counsel.  Class Counsel shall have the opportunity to propose recommendations to Novartis for compensation adjustments detailed in Paragraph 7.32(i) above.

7.33     Any employee who believes that his/her merit raise or compensation is tainted by discrimination, may file a complaint in accordance with the Employee Relations

complaint process.  Novartis will provide in writing a reminder of the complaint process on an annual basis.

G.    Promotional Opportunities.

Novartis agrees to the following actions with respect to its Policies and Procedures for Promotional Opportunities:

7.34    Formalizing and Articulating Standards

(i)    Novartis has formalized and documented the qualifications necessary to be considered eligible for management, the processes followed for management development, the steps a representative must take to become a manager, and the role that the District Manager and second-line manager play in that process. In instances where employees are assigned to District Manager positions outside the process because the position is filled by external hiring, international hiring, or by a developmental rotation, Novartis will ensure this is done on a non-discriminatory basis.

a)    Novartis will provide written direction and training that specifies that District Managers and second-line managers are not allowed to modify or add any additional requirements, standards, or steps to the Management Development ("MD") process.

b)    On an annual basis, Novartis will provide these policies in written form to the entire sales field force and will make them available year-round on the Novartis intranet.

c)    Novartis will also provide clear written materials regarding the pre-Management Development Program ("MDP") checklist and the MD classes, how each stage progresses, what individuals need to do to move through each stage, and the frequency at which each of the MD classes are offered.

27

d)       Where possible, the calendared dates for each MD class, along with the eligibility requirements and the registration process, should be posted on the intranet well in advance of registration closing for each class.

e)       Employees will be notified of a Sales Training department employee who can answer questions regarding the MD classes and the MDP checklist. Novartis will ensure that this department is sufficiently staffed to answer questions in a timely manner.

(ii)     MDP Training

a)       Novartis will commit that the MDP will not require more than a three-night stay away from home per quarter for training on the MDP, and will not require training to occur over the weekend.

7.35     Enabling More Self-Guided Development

(i)      Novartis has created and will continue to maintain a system that allows interested employees to self-register their interest in management electronically.

a)       In response to a registration of interest for management, Novartis does, and will continue to, automatically provide to the eligible individual information regarding completion of the MDP checklist, along with eligibility requirements and the next steps in proceeding through the MDP process.  These materials will also detail what changes in performance or other circumstances would lead to an employee being removed from the MDP process.

b)       Novartis will also provide a Sales Training contact who can answer questions about the process and can provide advice regarding concerns.

c)      The Sales Training contact will monitor candidates' progress through the program and if concerns are identified either by a candidate or by the Sales Training contact himself/herself, will notify the appropriate Human Resources Business Partner.  The Human Resources Business Partner will intervene as necessary and discuss with the District Manager and/or second-line manager any concerns regarding the support of the District Manager or second-line manager for management.

d)      Any concerns regarding discrimination will be handled pursuant to the Employee Relations complaint process.

(ii)      A second-line manager will be required to monitor the progress of employees who participate in the Management Development system.

(iii)      Novartis will maintain a distribution list of "ready" management candidates, updated after the close of each MD3 class, who have completed the MD process and so are eligible for a District Manager I position.  Unless an available District Manager I position must be filled under exigent circumstances that require an immediate hiring decision or will be filled through external hiring, international hiring, or by a developmental rotation, Novartis will post available District Manager I positions on its internal system.  Candidates may set up a profile which will have the system automatically notify them when such a posting appears.

7.36      Tracking and Monitoring Progress

(i)      Novartis will create and maintain a database that tracks the overall number, identity and gender of individuals who self-nominate, have completed the checklist and have completed each of the MD classes (MD1, MD2 or MD3).

a)     The database will also identify the date at which each step in the process was completed.

b)     The database will also record the number and gender distribution of each individual who became a District Manager I by year and the date and position which each individual filled.

c)     Individuals will remain in the database until they are no longer with the Company, become a District Manager, move into a different Novartis career path (e.g., marketing), no longer satisfy the performance or other requirements for a District Manager I position, or have removed themselves from consideration.

(ii)     Novartis will retain an external specialist to design an adverse impact analysis two years from the Effective Date of this Agreement with respect to the pool of employees qualified for and interested in promotions to first-line manager to determine if there are any significant gender disparities in overall gender representation at the District Manager I level, in new hires into the District Manager I level, and in time to promotion into District Manager I from completion of MD3.  Novartis will retain the specialist with the input of Class Counsel (who shall first review the qualifications of this individual, including the previous analyses and publications).

a)     Class Counsel shall have an opportunity to meet with the specialist and review his/her proposed methodology as well as the final methodology used for the analysis before the specialist begins the analysis.

b)     Class Counsel shall also have the opportunity to make recommendations to the specialist about the methodology used for the analysis.

c)      This analysis will be conducted in accordance with federal affirmative action guidelines.

d)      Novartis agrees to share the related results of that analysis, as they pertain to gender, with Class Counsel.  Class Counsel shall have the opportunity to propose recommendations to Novartis on appropriate remedies.  Novartis will remedy, as soon as practicable, any gender-related problems affecting employees in jobs covered by this Agreement and evidenced in the analysis.

(iii)     Novartis will compile an annual report to be provided to the Head of Human Resources, the Vice President of Diversity and the Executive Committee, with one copy to the Chairman of the Novartis Pharmaceuticals Corporation Board of Directors.  Each annual report will relay the contents of the database detailed above in Paragraph 7.36(i).

7.37      Cultivating Talent

(i)      Novartis will work with Luke Visconti, CEO from DiversityInc, and Joyce Dudley from Dudley Hamilton to work on the overall culture at Novartis and improve the Novartis work environment for all employees and report annually to the Novartis Executive Committee on recommendations and actions taken.

H.      <u>Compliance.</u>

7.38      The Court will appoint, pursuant to Federal Rule of Civil Procedure 53 ("Rule 53"), a Compliance Master to monitor the implementation by Novartis of the terms of Section VII of this Agreement.

7.39      For each of the three (3) years following the Effective Date, Novartis will submit, on the anniversary of the Effective Date, an annual report to Class Counsel detailing

31

its compliance with Section VII of this Agreement and attaching any expert reports generated during the course of the preceding year. Within thirty (30) calendar days of the submission of each annual report, Novartis and Class Counsel will jointly submit to the Compliance Master Novartis's annual report (including attachments), as well as either a joint statement that the Parties agree that Novartis has complied with Section VII of this Agreement, or a statement by Class Counsel identifying areas of Novartis's alleged noncompliance with Section VII of this Agreement and an accompanying response by Novartis.

7.40    If Class Counsel identifies areas of alleged noncompliance, or if the Compliance Master deems it necessary and appropriate notwithstanding the Parties' agreement as to compliance, the Compliance Master shall make written inquiries to the Parties to assess whether there are compliance issues. The Parties will respond in writing to any such inquiries within thirty (30) days of the date of the mailing of the written inquiries, and the Compliance Master shall then, within thirty (30) days of receipt of the Parties' written response, conclude in writing either that Novartis is in compliance with Section VII of this Agreement or inform the Parties of any specific item or items as to which Novartis is not in compliance.

7.41    The Compliance Master shall be responsible only for identifying any noncompliance with the specific terms of Section VII of this Agreement; however, the Compliance Master may make suggestions regarding the means by which Novartis might bring itself into compliance.

(i)    If the Compliance Master determines that Novartis is in compliance with the terms of Section VII of this Agreement for that year, no further

reporting action regarding that year shall be necessary.  However, if the Compliance Master concludes that Novartis is in compliance with Section VII of this Agreement, Class Counsel may file objections to that conclusion with the Court pursuant to Rule 53 no later than twenty (20) days after a copy of the conclusion is served on Class Counsel.

(ii)     If the Compliance Master identifies a specific item or items on which Novartis is not in compliance, Novartis shall promptly take remedial steps to bring itself into compliance.  In the alternative, Novartis may file objections to the Compliance Master's conclusion with the Court pursuant to Rule 53 no later than twenty (20) days after a copy of the Compliance Master's conclusion is served on Novartis.

a)     In the event that Novartis is required to take remedial steps to bring itself into compliance, Novartis shall provide a supplemental report detailing the remedial steps taken and explaining how these steps remedied the identified areas of non-compliance.  This supplemental report shall be provided to the Compliance Master on a timeline to be set by the Compliance Master at the time any instance of noncompliance is identified.

b)     Class Counsel shall have an opportunity to comment no later than twenty (20) days after a copy of Novartis's supplemental report is served on Class Counsel and the Compliance Master.  The Compliance Master shall then either conclude that Novartis is in compliance or that it is not.

7.42     Upon completion of the third annual report cycle, as described above, if the Compliance Master believes that Novartis is in compliance with Section VII of this Agreement, he or she shall recommend to the Court that Novartis's obligations described in this Section be terminated.  If at that time the Compliance Master does not believe that

Novartis is in compliance with Section VII of this Agreement or is not satisfied that Novartis has promptly corrected any specific items of noncompliance, he or she shall make a recommendation to the Court concerning the possible extension of all or some of Novartis's obligations under Section VII of this Agreement.  Pursuant to Rule 53, the Parties may file comments or objections to the Compliance Master's recommendation with the Court no later than twenty (20) days after a copy of the Compliance Master's recommendation is served.

7.43     The fees and costs of the Compliance Master, which shall not exceed $250,000.00 for the three-year period, shall be paid from the Settlement Fund as an administrative expense, as described in Paragraph 9.6 below.

7.44     Any information obtained by the Compliance Master shall be treated as confidential and shall not be used for any purpose other than monitoring the implementation of this Agreement, consistent with the terms of Section VII.  Prior to receiving the Parties' first annual report, the Compliance Master shall execute a confidentiality agreement limited by the restriction in the preceding sentence.

7.45     Nothing in this Provision will limit the right of Class Counsel to participate in the implementation or oversight of the Programmatic Relief as is otherwise detailed in Section VII of this Agreement.

## VIII.   SETTLEMENT FUND

8.1     No later than thirty (30) calendar days after the Effective Date, Novartis shall provide, by wire transfer, to the Claims Administrator $152,500,000.00 (the "Settlement Fund").  The Settlement Fund is calculated based upon the Total Settlement Amount described in Paragraph 6.1 ($175,000,000.00) minus the value of the non-monetary relief portion of the Settlement described in Section VII ($22,500,000.00).

8.2     The Settlement Fund will be placed in an interest bearing account (the "Settlement Fund Account") approved by Class Counsel with a unique Taxpayer Identification Number.  Any interest accrued prior to the distribution of any monetary awards will be divided equally between the Class Award for Backpay and the Maximum Class Award for Compensatory Damages, described in Paragraphs 10.1(iii) and (iv) below, and distributed according to the procedures set forth therein.

8.3     The Settlement Fund Account will constitute a qualified settlement fund pursuant to Internal Revenue Code Section 1.468B-1.  Upon the opening of the account, Novartis shall execute an election statement provided by the Claims Administrator which shall be affixed to the initial tax return of the Settlement Fund Account in order to establish the start date of the Settlement Fund Account.  The Settlement Fund Account will be created, managed and disbursed by the Claims Administrator under the supervision of Class Counsel and Counsel for Novartis.  The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the Settlement Fund Account.  Novartis will have no responsibilities or liabilities with respect to the administration of the Settlement Fund Account, including any distribution therefrom and the reporting for such distribution.

8.4     Upon wiring the Settlement Fund amount, Novartis will have no further monetary obligations with respect to Settlement Class Members, Class Counsel or Named Plaintiffs pursuant to the Settlement and shall have no further responsibility to make any additional payments pursuant to this Settlement, including with respect to attorneys' fees and costs.

8.5     The Claims Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest generated by the Settlement Fund Account) to Novartis within five (5) business days in the event of revocation of this Settlement pursuant to Section XI below, or in the event that this Settlement Agreement is reversed on appeal or is otherwise rendered null and void for any reason.

8.6     The Claims Administrator shall distribute the Settlement Fund (including any interest generated by the Settlement Fund Account) pursuant to the provisions below, and on the time schedule described herein and pursuant to orders of the Court.

8.7     In the event that the Settlement Fund is not completely distributed for any reason, any and all remaining funds shall revert back to Novartis.   The Claims Administrator shall provide, by wire transfer, the amount to be reverted to Novartis no later than ten (10) business days after the distribution of the settlement checks described in Section X.J below.  In addition, within one (1) year and fifteen (15) business days from the date of distribution of the settlement checks described in Section X.J below, the Claims Administrator shall provide to Novartis, by wire transfer, the amount of any settlement checks not paid from the Settlement Fund Account due to Settlement Class Members' failure to cash the check within one (1) year.  The Claims Administrator's determination of the amount to revert back to Novartis pursuant to this provision shall be final and non-appealable.

8.8     $164,500.00 of the Settlement Fund will be set aside in a fund to be distributed to a non-profit organization dedicated to the advancement of women in the workforce.  The choice of such organization will be proposed by Class Counsel to Novartis,

who may reject Class Counsel's choice and require alternative proposals until Class Counsel proposes an organization that meets Novartis's approval.

## IX.   ATTORNEYS' FEES AND EXPENSES, ADMINISTRATIVE EXPENSES AND SERVICE AWARD PAYMENTS

### A.   Attorneys' Fees and Expenses.

9.1      Pursuant to Fed. R. Civ. P. 23(h), Class Counsel, in connection with seeking Court approval of the Settlement, shall apply for reasonable attorneys' fees and expenses incurred by Class Counsel, including the fees and expenses in connection with overseeing the claims process and monitoring the Settlement Agreement.

9.2      Novartis will not object to a motion for attorneys' fees by Class Counsel of up to $38,125,000.00.   Novartis will not object to a motion for expenses by Class Counsel of up to $2,000,000.00.   These amounts include all fees, costs and expenses in connection with the Civil Action and overseeing the claims process and monitoring the Settlement Agreement.

9.3      The Claims Administrator will pay from the Settlement Fund any Class Counsel attorneys' fees and expenses ordered by the Court no later than thirty-five (35) calendar days after the Effective Date.   Prior to the payment of attorneys' fees and expenses, Class Counsel will provide the Claims Administrator with Tax Payer Identification Numbers for Class Counsel and executed Form W-9s.   Form 1099s shall be provided to Class Counsel for the payments made to Class Counsel.   Class Counsel agrees that any allocation of fees between or among Class Counsel shall be the sole responsibility of Class Counsel.

9.4      If the Court awards attorneys' fees in an amount less than $38,125,000.00 and/or expenses in an amount less than $2,000,000.00, the difference will be divided and

allocated in equal parts to the Class Award for Backpay and the Maximum Class Award for Compensatory Damages, described in Paragraphs 10.1(iii) and (iv) below, and distributed according to the procedures set forth therein.   If the Court awards attorneys' fees in an amount greater than $38,125,000.00 and/or expenses in an amount greater than $2,000,000.00, the difference shall be deducted in equal parts from the Class Award for Backpay and the Maximum Class Award for Compensatory Damages, described in Paragraphs 10.1(iii) and (iv) below.

   B. <u>Administrative Expenses.</u>

   9.5 No later than ten (10) business days after the deadline for completion of the entire claims process, the Claims Administrator and Claims Adjudicator shall provide the Court and Counsel for the Parties with a statement detailing their respective fees, costs and expenses incurred in connection with administering the Settlement Fund.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.  The Claims Administrator and Claims Adjudicator will be paid for the above-referenced fees and expenses from the Settlement Fund.

   9.6 $250,000.00 of the Settlement Fund will be set aside to pay the fees and costs of the Compliance Master as set forth in Paragraph 7.43 above.  In the event that the total fees and costs of the Compliance Master are less than $250,000.00, the difference will be distributed to the non-profit organization chosen by the Parties pursuant to Paragraph 8.8 above.  It is the Parties' intention that the costs and expenses incurred in the administration of the Settlement, including the fees and costs of the Compliance Master, not exceed $2,375,000.00.

C.    Service Award Payments and Compensatory Damages to Named Plaintiffs and Testifying Witnesses

9.7    Subject to Court approval, the Claims Administrator will pay from the Settlement Fund prescribed amounts to deponents, testifying witnesses and Named Plaintiffs for the substantial time and energy that they have devoted in litigating this lawsuit, provided they do not opt-out of the Settlement (collectively "Service Award Payments").

(i)    Subject to Court approval, the following amounts shall be distributed to the Testifying Witnesses and Named Plaintiffs to compensate each individual for compensatory damages and for their dedicated service in litigating the matter and bringing about this Settlement:

- Tara Blum (Testifying Witness): $205,000.00;
- Jessica Borsa (Testifying Witness): $425,000.00;
- Kelly Corbett (Testifying Witness and Named Plaintiff): $363,000.00;
- Marta Deyne (Named Plaintiff): $385,000.00;
- Bernice Dezelan (Testifying Witnes): $272,000.00;
- Joan Durkin (Named Plaintiff): $385,000.00;
- Minel Hider Tobertga (Named Plaintiff): $385,000.00;
- Jamie Holland (Named Plaintiff): $385,000.00;
- Lori Horton (Named Plaintiff): $385,000.00;
- Maryanne Jacoby (Named Plaintiff): $385,000.00;
- Terri Kelly (Testifying Witness): $175,000.00;
- Karen Liggins (Named Plaintiff): $385,000.00;
- Simona Lopes (Named Plaintiff): $385,000.00;
- Christine Macarelli (Testifying Witness): $249,000.00;
- Wendy Pinson (Named Plaintiff): $385,000.00;
- Raelene Ryan (Testifying Witness): $425,000.00;
- Marjorie Salame (Testifying Witness): $425,000.00;
- Kelli Shannon (Testifying Witness): $325,000.00;

- Amy Velez (Lead Named Plaintiff):  $410,000.00;
- Roberta Von Lintel (Named Plaintiff):  385,000.00;
- Holly Waters (Testifying Witness and Named Plaintiff):  $425,000.00;
- Jennifer Waxman-Recht (Testifying Witness and Named Plaintiff):  $425,000.00;
- Catherine White (Testifying Witness and Named Plaintiff):  $331,500.00;
- Michelle Williams (Named Plaintiff):  $385,000.00;
- Penni Zelinkoff (Named Plaintiff):  $385,000.00; and
- Amy Zschiesche (Testifying Witness):  $260,000.00.

The amounts above reflect a compensatory damage award for the Testifying Witnesses awarded by the jury (capped at $300,000.00 per statutory mandate), and for the non-testifying Named Plaintiffs based on the average jury award to Named Plaintiffs.  Two modifications to the compensatory damage awards were included for testifying individuals who had additional claims outside the original certified class period that are now included in the settlement period.  Each amount also includes a $125,000.00 Service Award Payment, with Lead Named Plaintiff Amy Velez receiving a $150,000.00 Service Award Payment.

(ii)    Subject to Court approval, a Service Award Payment of $25,000.00 each shall be distributed to the deponents in compensation for their dedicated service in litigating the matter and bringing about this settlement:

- Dana Allen
- Holly Blakeley
- Donna Connally
- Cassandra Covington
- Christine Coyle
- Debora Davis
- Ivette Flower
- Felicia Jordan
- Nicole Joslin
- Michelle Kraft
- Julie Lynch
- Karla Palmer
- Jennifer Peldiak
- Drew Persinger
- Carrie Petermeyer
- Angela Plonczyk
- Theresa Thomas
- Heather Thompson

40

▪ Ryan Tselikis                          ▪ Christine Vaughn

Individuals receiving a Service Award Payment pursuant to this Paragraph must follow the claims procedure set out in Section X.E below.

(iii)    The Claims Administrator will pay the aforementioned Service Award Payments, less applicable withholdings and deductions, if any, within thirty-five (35) calendar days after the Effective Date.  All individuals receiving payments under these paragraphs who are also Settlement Class Members, as defined in Paragraph 2.21 above, are eligible to receive a backpay award pursuant to Paragraph 10.1(iii).

9.8    If the Court awards monies less than those set out above, the difference will be divided and allocated in equal parts to the Class Award for Backpay and the Maximum Class Award for Compensatory Damages described in Paragraphs 10.1(iii) and (iv) below, and distributed according to the procedures set forth therein.   If the Court awards monies more than those set out above, the difference shall be deducted in equal parts from the Class Award for Backpay and the Maximum Class Award for Compensatory Damages described in Paragraphs 10.1(iii) and (iv) below.

X.    **INDIVIDUAL MONETARY PAYMENTS TO SETTLEMENT CLASS MEMBERS AND CLAIMS PROCESS**

A.    Allocation of Individual Monetary Awards

10.1    Individual Awards for Backpay and Compensatory Damages

(i)    Individual monetary awards payable to Proposed Settlement Class Members and Class Representatives will be allocated in settlement of their claims for backpay or lost wages and compensatory damages.  Monetary awards for backpay or lost wages are subject to all applicable tax withholdings.  Monetary awards for compensatory

41

damages and/or Service Award Payments shall not be treated as lost wages and therefore will be subject to reporting on IRS Form 1099.

(ii)     Payments made under this Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; or (2) be considered to apply to, or be applied for purposes of, Novartis's bonus, executive compensation, pension, any 401(k) and/or other retirement, savings or benefit plans or similar programs.

(iii)     *Backpay:*  $60,000,000.00 of the Settlement Fund (which includes the employer's share of federal and state payroll taxes) (and any additional monies, or less any deductions, pursuant to Paragraphs 8.2, 9.4 and/or 9.8 above) will be allocated to the "Class Award for Backpay", apportioned among the Class Representatives and Proposed Settlement Class Members who do not opt out of the settlement as follows:

a)     A fixed monthly amount for backpay ("Backpay Monthly Amount") will be calculated by dividing the Class Award for Backpay by the total months worked by the Class Representatives and Proposed Settlement Class Members in jobs included within the Settlement Class definition in Paragraph 2.21 ("class-eligible job(s)") during the Settlement Class Period.

b)     A Class Representative or Settlement Class Member who does not opt out of the settlement will receive an amount equal to the Backpay Monthly Amount multiplied by the number of months the Settlement Class Member worked in a class-eligible job during the Settlement Class Period, less applicable withholdings and deductions as described below in Paragraph 10.1(iii)(c).

42

c) The Claims Administrator will withhold from each Class Representative and Settlement Class Member's backpay award both the employee's and employer's share of applicable taxes under federal, state and/or local laws. The Claims Administrator will ensure that such monies withheld are paid to the appropriate authorities for each Settlement Class Member and Class Representative and will issue IRS Forms W-2 for the amounts reportable on each Form.

d) Any portion of the Class Award for Backpay that is not awarded or withheld through the process described in Paragraphs 10.1(iii)(a)-(c) will be apportioned to the Class Representatives and Settlement Class Members who do not opt out of the settlement in proportion to the number of months that each such person worked in a class-eligible job during the Settlement Class Period. No portion of the Class Award for Backpay will revert back to Novartis or be allocated to the Maximum Class Award for Compensatory Damages.

(iv) *Compensatory Damages:* The Settlement Fund less distributions pursuant to Paragraph 8.8, Section IX and the Class Award for Backpay (and any additional monies, or less any deductions, pursuant to Paragraphs 8.2, 9.4 and/or 9.8 above) will be allocated to the Maximum Class Award for Compensatory Damages, to be distributed as follows:

a) A fixed monthly amount for compensatory damages ("Compensatory Monthly Amount") will be calculated by dividing the Maximum Class Award for Compensatory Damages (currently estimated at approximately $40,000,000.00) by the total months worked by Proposed Settlement Class Members in class-eligible jobs during the Settlement Class Period.

43

b)      A Proposed Settlement Class Member who is both (1) eligible to receive compensatory damages by submitting a timely and complete Claim Form pursuant to Paragraph 10.13 below ("Eligible Claimant"), and (2) deemed by the Claims Adjudicator to have substantiated her claim for compensatory damages pursuant to Section X.F, will receive an award of compensatory damages in an amount equal to the Compensatory Monthly Amount multiplied by the number of months the Eligible Claimant worked in a class-eligible job during the Settlement Class Period.

c)      In addition, an Eligible Claimant who was treated by a Medical Professional (as defined in Paragraph 2.15 above) during the period July 15, 2002 to the Preliminary Approval Date for pain and suffering resulting from gender discrimination she experienced while working in a class-eligible job, and who timely completes the requirements set forth below in Paragraph 10.15, may be entitled to an increase in her compensatory award above the amount determined pursuant to Paragraph 10.1(iv)(b). The amount of increase, if any, in an Eligible Claimant's compensatory award will be determined by the Claims Adjudicator in his or her discretion and paid out of the Maximum Class Award for Compensatory Damages as defined above. The total of all additional compensatory damages awarded by the Claims Adjudicator pursuant to this provision shall not exceed $5,000,000.00.

d)      No Eligible Claimant may receive a compensatory award in an amount that exceeds the limitation on compensatory and punitive damages provided for by 42 U.S.C. § 1981a(b)(3)(D) (i.e., $300,000.00).

e)      Any portion of the Maximum Class Award for Compensatory Damages that is not awarded as a result of the claims process and

44

monetary distribution procedure described in Section X herein will revert back to Novartis pursuant to the procedure described in Paragraph 8.7 above.

      B.    <u>Claims Administrator's Duties.</u>

10.2    The Claims Administrator shall (1) mail the Notice of Class Action Settlement (the "Notice") and Claim Forms to Proposed Settlement Class Members; (2) respond to questions from Proposed Settlement Class Members; (3) perform backpay and compensatory award distribution calculations as set forth in Paragraph 10.1; (4) maintain a toll-free number for communicating with Proposed Settlement Class Members; (5) mail checks containing payments to Named Plaintiffs, deponents, testifying witnesses, Settlement Class Members, Class Counsel, and the Claims Administrator and Claims Adjudicator; (6) wire any amount from the Settlement Fund which reverts back to Novartis; (7) forward all compensatory damage Claim Forms received from Class Members to the Claims Adjudicator on a rolling basis; and (8) perform any other duties necessary to fulfill its responsibilities described in this Agreement.

      C.    <u>Claims Adjudicator</u>.

10.3    The Court shall appoint at least one Claims Adjudicator to (1) receive and review Claim Forms, any written responses from Novartis and any further information submitted by Class Counsel to evaluate eligibility and make a final determination regarding entitlement to compensatory awards; (2) receive and review the Riders to Claim Forms to evaluate eligibility and make a final determination regarding entitlement to increased compensatory awards and if so, the amount of such increased compensatory award; (3) seek additional information from Claimants or Class Counsel, when appropriate;  and (4) report to the Court, the Claims Administrator and to all Counsel final determinations regarding entitlement to, and amount of, compensatory awards.

D.     Notice and Claim Forms.

10.4     Within twenty (20) business days after the Preliminary Approval Date, the Company shall provide to the Claims Administrator a list of all Proposed Settlement Class Members, including name, employee ID, job title, employment dates, last known address and telephone number.  The Company will provide this information in a format reasonably acceptable to the Claims Administrator.  The Claims Administrator will maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may use it only for purposes of administering this Settlement.  Class Counsel may provide updates on any addresses or contact information provided by the Proposed Settlement Class Members to the Claims Administrator, and such updates shall be incorporated into the list.

10.5     The Company's existing personnel and payroll records shall be presumed to be correct as to any Claimant's gender and dates of employment.  In order to overcome such a presumption, a Claimant must, within twenty (20) calendar days of the mailing of the notice that her claim was denied, submit documentary evidence showing that the Company's records are inaccurate and that corrected information should be used.

10.6     No later than twenty (20) business days after the date that the Company provides the list of all Proposed Settlement Class Members described in Paragraph 10.4, the Claims Administrator shall mail the Notice of Class Action Settlement, in substantively the form attached hereto as Exhibit A, and as approved by the Court, to Proposed Settlement Class Members, by United States first class mail, postage prepaid with a postmark date stamped on the envelope of the Notice.  The Parties intend to provide actual notice to each Proposed Settlement Class Member, to the extent practicable.  The Claims Administrator shall mail a Claim Form, attached hereto as Exhibit B, to each Proposed Settlement Class Member at the same time the Notice is sent.

10.7    In order to provide the best notice practicable, the Claims Administrator will do the following before mailing the Notice and Claim Form: (1) run the list of all Proposed Settlement Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

10.8    If envelopes from the mailing of the Notice and Claim Form are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Form to the new address within three (3) business days of receiving the returned envelope.

10.9    Class Counsel shall provide the Court, at least five (5) calendar days prior to the Final Fairness Hearing, a declaration by the Claims Administrator of due diligence and proof of mailing with regard to the mailing of the Notice of Class Action Settlement and Claim Form to Proposed Settlement Class Members.

10.10    In the event that a Notice of Class Action Settlement and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender", the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Proposed Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Proposed Settlement Class Member, the Notice of Class Action Settlement and Claim Form shall be sent again to the Proposed

Settlement Class Member's last known address.  In either event, the Notice of Class Action Settlement and Claim Form shall be deemed received once it is mailed for the second time unless the Proposed Settlement Class Member can demonstrate good reason why she did not receive it.

10.11    With respect to envelopes marked "Return to Sender", the Claims Administrator will also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Proposed Settlement Class Members to obtain their current addresses.

10.12    The Claims Administrator shall provide to Counsel for Novartis and Class Counsel, at least ten (10) business days prior to the Final Fairness Hearing, a list of Proposed Settlement Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

E.    Submission of Claim Forms After Final Approval.

10.13    All Proposed Settlement Class Members who seek recovery of a monetary award from the Maximum Class Award for Compensatory Damages portion of the Settlement Fund must make such a claim in writing using the Claim Form attached as Exhibit B.  All Claim Forms must be signed by the Claimant under penalties of perjury. Each Proposed Settlement Class Member who seeks to be considered as an "Eligible Claimant" must submit her own timely and complete Claim Form.  All Claim Forms must be mailed to the Claims Administrator and postmarked by the claim filing deadline described in the Notice and Claim Form in order to be considered timely.   In order for a Claim Form to be considered complete, all questions must be answered (except that failure to provide an employee identification number will not in any way be held against the Claimant) and all applicable blanks filled in in a manner legible to the Claims Administrator

48

and Claims Adjudicator.  Failure to file a timely and complete Claim Form by the deadline for submission of all Claim Forms, if not corrected within the remedial period set forth in Paragraph 10.19 below, shall bar the Proposed Settlement Class Member from receiving a monetary award for compensatory damages.

10.14    In the Claim Form, each Eligible Claimant who seeks recovery of a monetary award from the Maximum Class Award for Compensatory Damages portion of the Settlement Fund must declare under penalties of perjury (without a notarized requirement) that during the Settlement Class Period, while in a class-eligible job, she was discriminated against on account of her gender in seeking a promotion, in the level of her pay, and/or on account of pregnancy, and that she experienced physical and/or emotional pain and suffering resulting from that discrimination.  The Eligible Claimant's declaration must be accompanied by a reasonably detailed explanation of the circumstances giving rise to the belief that she experienced gender discrimination during the Settlement Class Period and a reasonably detailed explanation of the nature of the resulting physical and/or emotional pain and suffering.

10.15    In the Rider to the Claim Form, each Eligible Claimant who seeks, pursuant to Paragraph 10.1(iv)(c), an increase in her compensatory award above the amount determined pursuant to Paragraph 10.1(iv)(b) must declare under penalties of perjury (without a notarized requirement) that she received medical treatment from a Medical Professional during the period July 15, 2002 to the Preliminary Approval Date for the physical and/or emotional pain and suffering the Eligible Claimant contends resulted from the gender discrimination alleged in her Claim Form.  The Eligible Claimant's declaration must be accompanied by a reasonable explanation of such medical treatment.  The Eligible

49

Claimant must also attach to the Rider to the Claim Form a declaration executed by the Eligible Claimant's Medical Professional declaring under penalties of perjury (without a notarized requirement): (1) that he or she provided medical treatment to the Eligible Claimant during the period July 15, 2002 to the Preliminary Approval Date for physical and/or emotional pain and suffering resulting from gender discrimination the Eligible Claimant experienced while working in a class-eligible job, and (2) describing the nature of the medical treatment provided to the Eligible Claimant.  Novartis, Counsel for Novartis and Class Counsel shall not have access to any Claimant's Rider to her Claim Form, or any declaration attached thereto.

10.16    The Claims Administrator shall submit, on a weekly basis, a copy of all timely and complete Claim Forms, excluding the Rider, received as of that date to a designated Novartis representative (who shall not be part of Field Management or the Human Resources Department).  If Novartis has information within its possession that is inconsistent with an Eligible Claimant's declarations contained in her Claim Form, Novartis may submit a written response to the Claims Administrator and Claims Adjudicator, with a copy to Class Counsel, within forty-five (45) calendar days of the deadline for submission of all Claim Forms.  No further submission shall be made by Novartis.  If Novartis submits a written response to any Claim Form, Class Counsel may submit additional information to the Claims Administrator and Claims Adjudicator about the Eligible Claimant's declarations in her Claim Form that are the subject of Novartis's written response within fourteen (14) calendar days of the submission of Novartis's written response.

(i)    Novartis's written response may identify only the following categories of inconsistent information: dates of employment; positions held; dates of

50

application for any promotions; dates of completion of any course or training process; reporting relationships; dates of reported contact with Human Resources or Novartis management regarding a Claimant's concerns or complaints; reported national and regional ranking of the individual Claimant; reported annual performance rating; Claimant's compensation; Claimant's leaves of absence, (including, but not limited to pregnancy leave and Family and Medical Leave), and any recorded Human Resources or BPO investigations into Claimant during the time period in which Claimant alleges discrimination.

(ii)     The designated Novartis representative will not respond with counter-allegations regarding: the substance or content of conversations between a Claimant and any Novartis employee; any assessment of the relative performance of any of Claimant's peers; or any other assessment of the Claimant's performance, reliability, or the merit of Claimant's claims.

(iii)    The designated Novartis representative will prepare and provide any written responses to the Claim Forms submitted by Settlement Class Members. Field Management, including line-managers and one-over managers, will not be informed of any Claimant's filing or involved in any way with the preparation of the response.

(iv)    Claim Forms shall be used only for the purpose of filing a claim for compensatory damages under this Agreement, and shall not be used by Settlement Class Members, Class Counsel or any other person for any other reason. Claim Forms may not be used by Novartis to conduct internal investigations in to the substance of the allegations contained therein. Accordingly, any Proposed Settlement Class Member who believes that she or anyone else is subject to ongoing discrimination or misconduct must

report their allegations separately to the Novartis Business Practices Officer ("BPO") or to the Employee Relations hotline, AlertLine, her Supervisor, an officer of the Company, or a representative of Human Resources, Ethics and Compliance or Legal for investigation and resolution.

(v)     Claim Forms will be used only to administer the Settlement, and will not be admissible in a court or other legal proceeding for any other purpose.

10.17    Proposed Settlement Class Members who file a Claim Form must notify the Claims Administrator of any change of address.  A failure to notify the Claims Administrator of a change of address may result in the forfeiture of a monetary award for compensatory damages.  The Claims Administrator shall be available through the toll-free line to respond to requests from Proposed Settlement Class Members for assistance in completing and filing Claim Forms.  Class Counsel shall also be available to consult with and provide assistance to Proposed Settlement Class Members who request assistance in completing their Claim Forms.

10.18    No untimely filed and/or incomplete Claim Forms may be accepted by the Claims Administrator, except that (1) the Claims Administrator may extend the deadline for receipt of Claim Forms by up to ten (10) additional calendar days (but no more) where error or delay by United States Postal Service is established; and/or (2) the Claims Administrator may provide a one-time extension of the deadline for receipt of Claim Forms of up to sixty (60) additional calendar days upon good cause shown.

F.     Administrative Review of All Claims.

10.19    The Claims Administrator shall conduct a review of all Claim Forms, as well as data provided by Novartis and Class Counsel concerning the time period each

Claimant was employed by Novartis, to determine whether the Claim Form is sufficiently complete, as provided for in Paragraph 10.13.

        (i)      If the Claims Administrator or Claims Adjudicator rejects a Claim Form as not meeting the terms or provisions of the Settlement Agreement, the Claims Adjudicator or Claims Adjudicator shall so notify the Claimant and Class Counsel in writing and specify the eligibility and/or entitlement criteria that the Claimant failed to satisfy. The Claims Adjudicator or Claims Adjudicator shall provide a one-time twenty (20) calendar day remedial period, which commences from the date of mailing of the written notification by the Claims Adjudicator, in which a Claimant can rectify any errors in the Claim Form.

10.20     The Claims Adjudicator shall review all timely and complete Claim Forms and any responses submitted by Novartis pursuant to Paragraph 10.16 to determine: (1) whether each Eligible Claimant has substantiated her claim for a compensatory award and is thus entitled to payment from the Maximum Class Award for Compensatory Damages calculated pursuant to Paragraphs 10.1(iv)(a) and (b), and (2) which, if any, such Eligible Claimants are entitled to an increased compensatory award pursuant to Paragraphs 10.1(iv)(c) and 10.15, and the amount of any increase to be awarded from the Maximum Class Award for Compensatory Damages.

10.21     The Claims Adjudicator shall complete its review and issue a final determination as to which, if any, Eligible Claimants are entitled to a compensatory award, and the amount to which each such Eligible Claimant is entitled, within one hundred and twenty (120) calendar days of the deadline for submission of Claim Forms or, if applicable, the extended deadline for submission of Claim Forms pursuant to Paragraph 10.18. Eligible

Claimants determined to be entitled to a compensatory award will receive payment pursuant to the monetary distribution procedure described below in Section X.J.

10.22    Decisions by the Claims Adjudicator granting or denying claims for compensatory awards, as well as determinations of the amount of increase, if any, in compensatory awards pursuant to Paragraphs 10.1(iv)(c) and 10.15, will be final and non-appealable.

10.23    If the Claims Adjudicator rejects a Claim Form as not meeting the terms or provisions of the Settlement Agreement, after a one-time opportunity to remedy pursuant to Paragraph 10.19 has been afforded, or rejects a claim for a compensatory award as unsubstantiated, the Claims Adjudicator shall so notify the Claimant in writing and specify the eligibility and/or entitlement criteria that the Claimant failed to satisfy.

G.    Objections.

10.24    Proposed Settlement Class Member objections to this Settlement Agreement must be submitted in writing, and must include a detailed description of the basis of the objection.

10.25    Objections must be filed with the Court, with copies served on the Claims Administrator, Claims Adjudicator, Class Counsel and Counsel for Novartis, within forty-five (45) calendar days after the Notice is mailed by the Claims Administrator.  Proposed Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

10.26    No one may appear at the Final Fairness Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing within forty-five (45) calendar days after the Notice was mailed to Proposed

54

Settlement Class Members.  Any lawyer representing a Proposed Settlement Class Member for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties by the objection deadline set forth above.

      10.27    An objector may withdraw her objection at any time.

      H.    <u>Exclusions.</u>

      10.28    Proposed Settlement Class Members may exclude themselves, or opt out, of the Settlement.  Any Proposed Settlement Class Member who wants to opt out of the Settlement Class may file a timely request for exclusion pursuant to the provisions described in the Notice of Class Action Settlement.  Such written request for exclusion must contain the name, address and telephone number of the person requesting exclusion.  The opt-out must be personally signed by the Proposed Settlement Class Member who seeks to opt out.  No opt-out request may be made on behalf of a group of Proposed Settlement Class Members.  The request for exclusion must contain the statements described in the Notice of Class Action Settlement, and must be sent by mail or courier to the Claims Administrator so that it is actually postmarked (or received, if by courier) within thirty-five (35) calendar days after Notice was mailed by the Claims Administrator.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request mailed for exclusion (opt-out) has been timely submitted.  Any person who timely submits such a request for exclusion shall be barred from participation in the Settlement, and shall receive no benefit from the Settlement.  The Claims Administrator shall provide Class Counsel and Counsel for Novartis with a copy of all opt-out statements on a weekly basis.

      10.29    Class Counsel shall file with the Court all timely opt-out statements.  The Court must approve and order the exclusion of Proposed Settlement Class Members seeking

to opt out from the injunctive relief portion of this Agreement in order for the requested exclusion to be effective.  Individuals who file and serve a timely opt-out statement are not entitled to any monetary award under this Settlement Agreement.

        I.      Determination —Final and Binding.

10.30     All final determinations of the Claims Adjudicator shall be binding and non-appealable.

10.31     The Claims Administrator and Claims Adjudicator shall keep the Claim Forms and its determinations confidential and shall not disclose the number and/or identity of the Eligible Claimants or the value of their claims except as provided for in this Settlement Agreement.

        J.      Class Monetary Distribution Procedure.

10.32     No later than ten (10) calendar days after the deadline for completion of the entire claims process described in Paragraph 10.21, the Claims Administrator shall provide Novartis and Class Counsel with (1) a list of names and social security numbers of Settlement Class Members to whom a backpay award is due and the amount each Settlement Class Member is to be paid under Paragraph 10.1(iii), and (2) a list of the names and social security numbers of the Settlement Class Members to whom a compensatory award is due and the amount each Settlement Class Member is to be paid under Paragraph 10.1(iv).

10.33     No later than forty (40) calendar days after the deadline for completion of the claims determination process described in Paragraph 10.21, the Claims Administrator shall cause to be mailed, via certified mail, return receipt requested, payment checks and any appropriate 1099 forms to the Settlement Class Members to whom a payment is due.

10.34    If a Settlement Class Member to whom a payment is due is deceased at the time of such distribution hereunder, the amount payable to such deceased Settlement Class Member shall be paid to her estate, provided that the estate provides an appropriate certification to the Claims Administrator.

10.35    The face of each check sent pursuant to Paragraphs 10.32 to 10.34 to Settlement Class Members to whom a payment is due shall clearly state that the check must be cashed within one (1) year.  All payment checks distributed by the Claims Administrator must be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed within one (1) year or it will become void."  The back of each check will contain a legend stating:  "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this matter. This Release is effective as of the Effective Date."

## XI.    NOVARTIS'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT

11.1    If a total of ten percent (10%) or more Proposed Settlement Class Members submit timely and complete requests for exclusion, Novartis shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel.  If Novartis does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Novartis is entitled to withdraw from the Agreement and has validly done so.

11.2     The Claims Administrator shall each calendar week notify Counsel for Novartis and Class Counsel by fax or e-mail of the number of individuals who have to that date submitted timely and complete requests for exclusion, and at the same time shall send to said Counsel by fax, e-mail or by overnight delivery copies of all the timely and complete requests for exclusion which Class Counsel has received.  Novartis shall have thirty (30) calendar days after the expiration of all Proposed Settlement Class Members' deadlines in Section X.E above to withdraw from (or modify through negotiation) this Agreement on the basis that a total of ten percent (10%) or more Proposed Settlement Class Members have submitted timely and complete requests for exclusion.

## XII.   DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

12.1     Promptly upon execution of this Agreement, but by no later than ten (10) calendar days thereafter, Class Counsel shall apply to the Court for the entry of an order (the "Preliminary Approval Order"):

(i)     Preliminarily approving the Agreement, as well as the payment of attorneys' fees, costs, and Service Award Payments described in this Agreement;

(ii)    Approving as to form and content the proposed Notice of Class Action Settlement;

(iii)   Approving as to form and content the proposed Claim Form;

(iv)    Directing the mailing of the Notice and Claim Form by first class mail to the Proposed Settlement Class Members;

(v)     Certifying the Settlement Class; and

(vi)    Scheduling a Final Fairness Hearing as soon as practicable on the question of whether the proposed settlement should be finally

58

approved as fair, reasonable and adequate as to the Settlement Class Members.

12.2     In applying for the entry of the Preliminary Approval Order, Class Counsel and Counsel for Novartis will jointly submit to the Court for its approval this Settlement Agreement, exhibits, and supporting papers, which shall describe the terms of this settlement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

12.3     In computing any period of time prescribed or allowed by this Settlement Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a).

## XIII.   DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

13.1     In connection with the Final Approval by the Court of the Agreement, Class Counsel and Counsel for Defendant will submit a proposed final order and judgment:

(i)      Granting final approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(ii)     Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representatives from prosecuting against any Released Parties any of the Released Claims; and

(iii)    Ordering that all materials containing Confidential or Highly Confidential Information pursuant to the Protective Order entered in the Civil Action shall be returned to the producing party or destroyed by the party to whom those materials were produced within one-hundred eighty (180) calendar days after the Effective Date, with the exception that the Parties may retain copies of their work

product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); and materials necessary to oversee compliance with this Agreement, except that all documents and materials designated Highly Confidential shall be returned to Novartis or Novartis's Counsel, who shall retain and maintain that information in the form in which it is returned during the term of this Settlement Agreement.

## XIV.   PARTIES' AUTHORITY

14.1     The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Proposed Settlement Class Members to the terms and conditions hereof.

14.2     All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Proposed Settlement Class Members are being advised that they may consult an attorney regarding their participation in this Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Counsel who have jointly prepared this Agreement.

14.3     All of the Parties and Proposed Settlement Class Members acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein.  The Parties and Proposed Settlement Class Members further acknowledge that they were provided with a reasonable period of time within which to consider this Agreement.

## XV.    NOTICES

15.1      Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Class Representatives or to any Proposed Settlement Class Member:

> **SANFORD WITTELS & HEISLER, LLP**
> David Sanford, Esq.
> Katherine Kimpel, Esq.
> 1666 Connecticut Avenue, Suite 310
> Washington, D.C. 20009

To the Defendant:

> **CRAVATH, SWAINE & MOORE LLP**
> Evan R. Chesler, Esq.
> Darin P. McAtee, Esq.
> 825 Eighth Avenue
> New York, NY 10019

## XVI.    CONFIDENTIALITY AND PUBLIC COMMENT

16.1      Nothing in this Agreement shall be construed to permit anyone (including Class Counsel or any consultant pursuant to this Agreement) to make public Novartis's confidential personnel information.  Nor will any provision require Novartis to make public such information.

16.2      Other than necessary disclosures made to the Court, the content of the Parties' settlement negotiations shall be held confidential by Counsel for Novartis, Novartis, Class Counsel and the Class Representatives.

16.3      Counsel for Novartis, Novartis, Class Counsel, and the Class Representatives shall not disclose to any third party, including but not limited to

61

communications on the internet (e.g., postings on personal or public websites such as social networking sites and blogs) or by means of any electronic or print media, any information about any aspect of the settlement, including the content of the settlement negotiations, subject to the following exceptions:

(i)       Nothing in the above shall limit Class Counsel's right to communicate with Proposed Settlement Class Members.   Class Counsel may communicate about the content of the settlement negotiations with Proposed Settlement Class Members for purposes of implementing, administering and enforcing the Settlement, and Class Counsel may respond to inquiries they respectively receive from Proposed Settlement Class Members.   In addition, the Class Representatives may communicate about the content of the settlement negotiations with Proposed Settlement Class Members for purposes of implementing, administering and enforcing the Settlement as provided herein;

(ii)      Proposed Settlement Class Members and Class Representatives may share the details of their receipt of monetary relief for compensatory damages and backpay with their tax advisor for the purpose of preparing income tax returns;

(iii)     Novartis may communicate with those persons, including Novartis employees, necessary for the administration, implementation, and enforcement of the Settlement, and may inform its employees of the Settlement;

(iv)     Novartis may make public disclosures in accordance with securities law or for other regulatory purposes and may communicate with those persons necessary for the preparation and dissemination of such public disclosures; and

      (v)     The Parties will agree upon language for a joint press release (attached hereto as Exhibit C) announcing the Settlement upon an agreed date not before the filing of the request for Preliminary Approval with the Court; neither Party will separately issue its own press release or separately communicate with members of the press about any aspect of the Settlement at any time.

16.4     Class Counsel agrees to use the contact information for Proposed Settlement Class Members that is provided to it by the Claims Administrator and Counsel for Novartis solely for purposes of communicating regarding this action and implementing this Agreement and for no other purpose, at any time, or for any reason.

16.5     Any Settlement Class Member that receives a compensatory award agrees to be bound by a confidentiality provision separate and apart from any other confidentiality provision in this agreement.  Specifically, she shall agree and promise that she has not communicated or disclosed, and will not hereafter communicate or disclose in the future, the sum of any payment made to her under this Agreement to any persons other than members of her immediate family, her present attorneys, accountants and/or tax or financial consultants, state and federal tax authorities or other persons as may be required by law provided, however, that any such person or entity to whom disclosure is made shall be instructed in advance by each Claimant that the information is strictly confidential pursuant to this Agreement.  For all other purposes, Claimant shall indicate only that her lawsuit has been "resolved."

## XVII.  MODIFICATION

17.1     This Agreement and its attachments may not be terminated or substantively changed, altered or modified, except as approved by the Court.

**XVIII. ENTIRE AGREEMENT**

18.1     This Agreement and its exhibits and attachments constitute the entire agreement between the Parties and Proposed Settlement Class Members concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement.  In the event of any conflict between this Agreement and any other Settlement-related document, the Parties and Proposed Settlement Class Members intend that this Agreement shall be controlling.

**XIX.     INTERPRETATION**

19.1     This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

**XX.     CHOICE OF LAW AND JURISDICTION**

20.1     This Agreement and the exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to this Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, without giving effect to that State's choice-of-law principles.

20.2     The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction of the implementation and enforcement of the terms of this Agreement, and all Parties hereto and their counsel shall submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

64

## XXI.   COUNTERPARTS

21.1     This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and Proposed Settlement Class Members.

## XXII.  VOIDING THE AGREEMENT

22.1     In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.  In the event this Agreement becomes null and void for any reason, Novartis, Counsel for Novartis, the Class Representatives, and Class Counsel agree that they shall from that date forward keep strictly confidential the terms of the Agreement, the existence of the Agreement, any information concerning the Agreement, or any of the discussions and or negotiations regarding the Agreement.


IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: July 14, 2010                    SANFORD WITTELS & HEISLER, LLP

                                        By:

                                        David Sanford, Esq.
                                        Katherine Kimpel, Esq.
                                        Steven Wittels, Esq.
                                        Grant Morris, Esq. Of Counsel
                                        1666 Connecticut Ave., NW, Suite 310

65

Washington, D.C. 20009
Tel. (202) 742-7780
Fax (202) 742-7776

Counsel for Plaintiffs and the Settlement Class

Dated: July 14, 2010                    **CRAVATH, SWAINE & MOORE LLP**

By:_____

Evan R. Chesler, Esq.
Darin P. McAtee, Esq.
825 Eighth Avenue
New York, NY 10019
Tel.: (212) 474-1243
Fax: (212) 474-3700

Counsel for Defendant Novartis Pharmaceuticals
Corporation

66